# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------------

NORMA J. FIORENTINO, CRAIG SAUTNER and JULIA
SAUTNER, Individually, and as the Parents and Natural Guardians
of ████████████ and ████████████, MICHAEL ELY
and ANDREA ELY, Individually, and as the Parents and Natural
Guardians of ████████████ and ████████████, RAY HUBERT
and VICTORIA HUBERT, Individually, and as the Parents and
Natural Guardians of ████████████ and ████████████,
RONALD CARTER, SR. and JEAN CARTER, WILLIAM T.
ELY and SHEILA A. ELY, SAMANTHA SEBJAN, Individually,
and as the Parent and Natural Guardian of ████████████,
JIMMY LEE SWITZER and VICTORIA SWITZER, NOLEN
SCOTT ELY and MONICA LAURA MARTA-ELY, Individually,
and as the Parents and Natural Guardians of ████████████,
JESSICA ELY and JUSTIN ELY, NOLEN SCOTT ELY as the
Executor of the Estate of KENNETH RAY ELY, RICHARD
SEYMOUR and WENDY SEYMOUR, TODD CARTER and
JEANNETTE CARTER, PATRICIA FARNELLI, Individually,
and as Parent and Natural Guardian of ████████████,
████████████, ████████████,
████████████ and ████████████ ERIK B.J. ROOS and
SUSAN M. ROOS, FRANK NOBLE and KAREN NOBLE,
Individually, and as the Parents and Natural Guardians of ████
████, RAYMOND KEMBLE, and EMMAGENE E. SAMOY-
ELY,

<div style="margin-left:60%">Hon.<br>Civil Action No.</div>

Plaintiffs,

-against-

CABOT OIL & GAS CORPORATION and GAS SEARCH
DRILLING SERVICES CORPORATION,

Defendants.

------------------------------------------------------------------------

Plaintiffs, through their undersigned attorneys, for their Complaint allege the following:

## INTRODUCTION

1.    Plaintiffs complain, *inter alia*, of environmental contamination and polluting

events caused by the conduct and activities of the Defendants herein, who caused the releases,

spills, and discharges of combustible gases, hazardous chemicals, and industrial wastes from its various oil and gas drilling facilities. These releases, spills and discharges caused the Plaintiffs and their property to be exposed to such hazardous gases, chemicals, and industrial wastes and caused damage to the natural resources of the environment in and around the Plaintiffs' properties, causing Plaintiffs to incur health injuries, loss of use and enjoyment of their property, loss of quality of life, emotional distress, and other damages. Moreover, the Defendants failed to fulfill their contractual obligations with the Plaintiffs and engaged in fraudulent conduct, as more fully set forth herein.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Jurisdiction is proper in that the amount in controversy with respect to each Plaintiff individually exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

3.    Venue in this District is proper under 28 U.S.C. §1391.

## PARTIES

4.    At all times mentioned herein, Plaintiff, NORMA J. FIORENTINO, was and is a citizen of the State of Pennsylvania, residing at RR 6, Box 6212, Montrose, PA 18801.

5.    At all times mentioned herein, Plaintiffs, CRAIG SAUTNER and JULIA SAUTNER, were and are citizens of the State of Pennsylvania, residing at RR 6, Box 6147, Montrose, PA 18801. These Plaintiffs reside with their minor children, ████████████ and ████████████, and bring this action individually and on their behalf as parents and natural guardians.

2

6.     At all times mentioned herein, Plaintiffs, MICHAEL ELY and ANDREA ELY, were and are citizens of the State of Pennsylvania, residing at RR, 6 Box 3176, Montrose, PA 18801. These Plaintiffs reside with their minor children, ████████ and ████████, and bring this action individually and on their behalf as parents and natural guardians.

7.     At all times mentioned herein, Plaintiffs, RAY HUBERT and VICTORIA HUBERT, were and are citizens of the State of Pennsylvania, residing at P.O. Box 111, Carter Road, Dimock, PA 18816.  These Plaintiffs reside with their minor children, ████████ and ████████, and bring this action individually and on their behalf as parents and natural guardians.

8.     At all times mentioned herein, Plaintiffs, RONALD CARTER, SR. and JEAN CARTER, were and are citizens of the State of Pennsylvania, residing at P.O. Box 82, Dimock, PA 18816.

9.     At all times mentioned herein, Plaintiffs, WILLIAM T. ELY and SHEILA A. ELY, were and are citizens of the State of Pennsylvania, residing at RR 6, Box 6176, Montrose, PA 18801.

10.     At all times mentioned herein, Plaintiff, SAMANTHA SEBJAN, was and is a citizen of the State of Pennsylvania, residing at RR 6, Box 6176, Montrose, PA 18801. This Plaintiff resides with her minor child, ████████, and brings this action individually and on his behalf as parent and natural guardian.

11.     At all times mentioned herein, Plaintiffs, JIMMY LEE SWITZER and VICTORIA SWITZER, were and are citizens of the State of Pennsylvania, residing at P.O. Box 113, Dimock, PA 18801.

12. At all times mentioned herein, Plaintiffs, NOLEN SCOTT ELY and MONICA LAURA MARTA-ELY, were and are citizens of the State of Pennsylvania, residing at P.O. Box 39, Carter Road, Dimock, PA 18816. These Plaintiffs reside with their minor children, ███████; ███████, ███████ and ███████, and bring this action individually and on their behalf as parents and natural guardians.

13. At all times mentioned herein, Plaintiff, KENNETH RAY ELY, was a citizen of the State of Pennsylvania, residing at P.O. Box 23, Meshoppen Creek Road, Dimock, PA 18816. KENNETH RAY ELY died on May 20, 2009. On May 29, 2009, his son, NOLEN SCOTT ELY, was appointed the Executor of KENNETH RAY ELY's estate, for which Plaintiff NOLEN SCOTT ELY brings this action, including heirs and next of kin deriving rights therefrom.

14. At all times mentioned herein, Plaintiffs, RICHARD SEYMOUR and WENDY SEYMOUR, were and are citizens of the State of Pennsylvania, residing at RR 6, Box 6177-A, Montrose, PA 18801.

15. At all times mentioned herein, Plaintiffs, TODD CARTER and JEANNETTE CARTER, were and are citizens of the State of Pennsylvania, residing at P.O. Box 185, Dimock, PA 18816.

16. At all times mentioned herein, Plaintiff, PATRICIA FARNIELLI, was and is a citizen of the State of Pennsylvania, residing at RR 6, Box 6151, Montrose, PA 18801. This Plaintiff resides with her minor children, ███████, ███████, ███████, ███████ and ███████ and brings this action individually and on their behalf as parent and natural guardian.

4

17. At all times mentioned herein, Plaintiffs, ERIC B.J. ROOS and SUSAN M. ROOS, were and are citizens of the State of Pennsylvania, residing at RR 6, Box 6194, Montrose, PA 18801.

18. At all times mentioned herein, Plaintiffs, FRANK NOBLE and KAREN NOBLE, were and are citizens of the State of Pennsylvania, residing at RR1 Box 489, Hop Bottom, PA 18824. These Plaintiffs reside with their minor child, ███████████, and bring this action individually and on her behalf as parents and natural guardians.

19. At all times mentioned herein, Plaintiff, RAYMOND KEMBLE, was and is a citizen of the State of Pennsylvania, residing at RR 6, Box 6177, Montrose, PA 18801.

20. At all times mentioned herein, Plaintiff, EMMAGENE E. SAMOY-ELY, was and is a citizen of the State of Pennsylvania, residing at P.O. Box 23, Meshoppen Creek Road, Dimock, PA 18816.

21. The aforementioned Plaintiffs are hereinafter collectively referred to as "Plaintiffs".

22. At all times mentioned herein, Defendant, CABOT OIL & GAS CORPORATION ("Cabot"), was and is a Delaware Corporation, with its headquarters and principal place of business located at 1200 Enclave Parkway, Houston, TX. This Defendant engages in various oil and gas exploration and production activities in the State of Pennsylvania.

23. At all times mentioned herein, Defendant, GAS SEARCH DRILLING SERVICES CORPORATION ("Gas Search"), was and is a wholly owned, operated, and controlled subsidiary of Defendant, CABOT OIL & GAS CORPORATION. Defendant, GAS SEARCH DRILLING SERVICES CORPORATION, engages in the drilling and servicing of oil

and gas wells, and has a mailing address at 466 Airport Industrial Park, Parkersburg, WV. Defendants, Cabot and Gas Search, are hereinafter collectively referred to as "Defendants".

## GENERAL ALLEGATIONS

24.     At all times mentioned herein, Defendants engaged in drilling activities, and owned and operated gas wells, at least sixty-two (62) such gas wells at the present time, within a nine-square mile tract (the "Dimock Gas Well Area") in Dimock Township, Susquehanna County, Pennsylvania wherein Plaintiffs own property and/or reside.

25.     In order to obtain the legal right to drill on Plaintiffs' property, and extract natural gas from Plaintiffs' property, Cabot obtained from each of the Plaintiffs an executed oil and gas lease agreement and addendum thereto (hereinafter referred to as "gas lease").

26.     Each gas lease was solicited by a representative of Cabot who came to each of the Plaintiffs' homes, unannounced, commencing in 2006.

27.     The gas leases were not negotiated at "arm's length".

28.     In the process of obtaining the gas leases, Cabot expressly warranted to each of the Plaintiffs the following, upon which Plaintiffs relied, to their detriment, as the basis for the bargain:

        a.     That Cabot would reasonably and thoroughly test Plaintiffs' domestic water supply prior to and following commencement of drilling operations in order to ensure that the water supply will not be adversely affected by said operations;

        b.     That Cabot would timely and fully disclose in all instances the results of such reasonable and thorough water tests to Plaintiffs;

6

c.     That Plaintiffs' person, property, and land resources would remain for themselves and future generations substantially preserved and undisturbed in the face of said operations;

d.     That Plaintiffs' quality of life, and use and enjoyment of their properties would not be disrupted or adversely affected for themselves and future generations by said operations;

e.     That in the unlikely event that it was determined that Cabot's operations had adversely affected Plaintiffs' water supply, Cabot would immediately disclose that information and, at its expense, take all steps necessary to return the Plaintiffs' water supply to pre-drilling conditions;

f.     That Cabot would remain at all times in substantial compliance with all state and federal laws and regulations governing safe oil and gas drilling practices; and

g.     That Plaintiffs would receive from Cabot timely and regular payments of monetary compensation commensurate with the amount of natural gas extracted from Plaintiffs' property, which payments would be calculated according to a transparent formula with verifying data.

29.     At all times mentioned herein, the gas wells drilled, owned and operated by Defendants in the Dimock Gas Well Area did and do include the following (collectively referred to hereinafter as "Defendants' Gas Wells"):

a.     Baker 1 Well

b.     Gesford 3 Well

c.     Costello 1 and 2 Wells

7

    d.      Gesford 9 Well

    e.      Gesford 2 Well

    f.      Lewis 2 Well

    g.      Ratzel 3V Well

    h.      Ratzel 1H Well

    i.      Ely 2, 4 and 6 Wells, and

    j.      Black 2H Well.

30.    At all times mentioned herein, in order to extract natural gas from the Defendants' Gas Wells, Defendants used a drilling process known as hydraulic fracturing. Hydraulic fracturing requires the discharge of enormous volumes of hydraulic fracturing fluids otherwise known as "fracking fluid" or "drilling mud" into the ground under extreme pressure in order to dislodge and discharge the gas contained under the ground.

31.    The composition of fracking fluid and/or drilling mud includes hazardous chemicals that are carcinogenic and toxic.

32.    Diesel fuel and lubricating materials, also consisting of hazardous chemicals, are utilized during drilling and well operations.

33.    Defendants located Defendants' Gas Wells within the following proximities to Plaintiffs' property, home and water supply wells:

    a.      Plaintiff NORMA FIORENTINO's property, home and water supply are within 1300 feet of Baker 1 Well.

    b.      Plaintiffs CRAIG SAUTNER and JULIA SAUTNER's property, home and water supply are within 1000 feet of Baker 1 Well.

8

c.     Plaintiffs MICHAEL ELY and ANDREA ELY's property, home  and water supply are within 1300 feet of Gesford 3 Well, Costello 1 Well, and Gesford 9 Well.

d.     Plaintiffs RAY HUBERT and VICTORIA HUBERT's property, home and water supply are within 1000 feet of Gesford 3 Well and Gesford 9 Well.

e.     Plaintiffs RONALD CARTER, SR. and JEAN CARTER's property, home and water supply are within 1000 feet of Gesford 2 Well.

f.     Plaintiffs WILLIAM ELY and SHEILA ELY's property, home and water supply are within 1000 feet of Costello 1 Well.

g.     Plaintiff SAMANTHA SEBJAN's residence and water supply are within 1000 feet of Costello 1 Well.

h.     Plaintiffs JIMMY LEE SWITZER and VICTORIA SWITZER's property, home and water supply are within 1000 feet of Lewis 2 Well.

i.     Plaintiffs NOLEN SCOTT ELY and MONICA LAURA MARTA-ELY's property, home and water supply are within 1000 feet of Gesford 3 Well and Gesford 9 Well.

j.     Plaintiff-decedent KENNETH RAY ELY's property has upon it Ely 2, 4, and 6 Wells are within 1000 feet of the Plaintiff-decedent's home, spring water supply and rock quarry.

k.     Plaintiffs RICHARD SEYMOUR and WENDY SEYMOUR's property, home, agricultural business and water supply are within 1000 feet of Costello 1 Well.

9

l.      Plaintiffs ERIC ROOS and SUSAN ROOS's property, home and water supply are within 1000 feet of Ratzel 3V Well, and Ratzel 1H Well.

m.      Plaintiffs TODD CARTER and JEANNETTE CARTER's residence and water supply are within 1000 feet of Gesford 2 Well.

n.      Plaintiff PATRICIA FARNELLI's property, home and water supply are within 1000 feet of Gesford 2 and 3 Wells.

o.      Plaintiffs FRANK NOBLE and KAREN NOBLE's property, home and water supply are within 1000 feet of Black 2H Well.

p.      Plaintiff RAYMOND KEMBLE's property, home and water supply are within 1000 feet of Costello 2 Well.

q.      Plaintiff EMMAGENE E. SAMOY-ELY's residence and spring water supply are within 1000 feet of Ely 2 Well.

34.     At all times mentioned herein, Plaintiffs rely on ground water wells for drinking, bathing, cooking, washing and other daily residential and business uses.

35.     At all times mentioned herein, and upon information and belief, Defendants were otherwise negligent and/or grossly negligent in their drilling, construction and operation of Defendants' Gas Wells such that:

a.      Combustible gas was caused to be released into the headspaces of the water wells that provide water to Plaintiffs;

b.      Elevated levels of dissolved methane were caused to be present in wells that provide water to Plaintiffs;

c.      Natural gas was caused to be discharged into and caused to enter Plaintiffs' fresh groundwater;

10

d.     Excessive pressures were caused to be present within the gas wells near Plaintiffs' homes and water wells;

e.     Pollutants and industrial and/or residual waste was caused to be discharged into the ground or into the waters near Plaintiffs' homes and water wells;

f.     Diesel fuel was caused to be spilled onto the ground near Plaintiffs' homes and water wells;

g.     Drilling mud was caused or allowed to be discharged into diversion ditches near Plaintiffs' homes and water wells;

h.     An explosion was caused to occur in an outside, below-grade water well pit on or about January 1, 2009 on the property of Plaintiff, NORMA FIORENTINO, causally related to accumulation of evaporated methane gas in her wellhead; and

i.     A fire in the well vent was caused to occur on the property of Plaintiffs, MICHAEL ELY and ANDREA ELY, which was causally related to the accumulation and re-accumulation of evaporated methane gas in their wellhead.

j.     Three significant spills of pollutants were caused to occur within the Dimock Gas Well Area within a ten day period.

k.     On September 24, 2009, the Pennsylvania Department of Environmental Protection issued an Order to Cabot requiring that Cabot cease all fracturing/well stimulation activities within Susquehanna County, Pennsylvania, and near the Dimock Gas Well Area, which prohibition lasted for approximately three weeks.

11

l.    Following many of the aforementioned spills, discharges, releases and other activities, Defendants failed to inform Plaintiffs, other nearby residents, emergency response personnel, and public officials, or take other reasonable measures to protect Plaintiffs, the public, and the environment.

36.    Upon information and belief, at all times mentioned herein the release and discharges of gas, presence of excessive well pressures as well, explosion and fire were the result of improper or insufficient cement casing of Defendants' Gas Wells located near Plaintiffs' homes, and discharges and spills of industrial and/or residual waste, diesel fuel and other pollutants and hazardous substances were the result of Defendants' negligence, including its negligent planning, training and supervision of staff, employees and/or agents.

37.    Upon information and belief, these aforementioned spills, discharges, releases and other activities include, but are not limited to, various hazardous chemicals, including 1,2,4-trimethylbenzen exceeding state wide health standards for saturated soil, the discharge into surface water of aluminum in amounts exceeding the Pennsylvania Department of Environmental Protection's Water Quality Criteria, the discharge of iron exceeding the Pennsylvania State Department of Environmental Protection's Water Quality Criteria, and the discharge of N-propylbenzene, and P-isopropyl toluene.

38.    Upon information and belief, Defendants have maintained their activities in such a negligent and improper manner as to violate various Pennsylvania state laws and the Rules and Regulations promulgated there under, including but not limited to the Pennsylvania Clean Streams Law, 35 P.S. §§691.1, *et seq.*, the Pennsylvania Solid Waste Management Act, 35 P.S. §§ 6018.101, *et seq.*, the Pennsylvania Oil and Gas Act, 58 P.S. §§ 601.101, *et seq.*, the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. §§ 6020.101, *et seq.*; the Federal

12

Solid Waste Disposal Act, 42 USC §§ 6901, *et seq.*; the Federal Comprehensive Environmental Response, Compensation, and Liability Act, 42 USC §§ 9601, *et seq.*; and the Federal Water Pollution Control Act, 33 USC §§ 1251, *et seq.*

39. Despite the language of the gas leases that requires Cabot to test Plaintiffs' domestic water supplies prior to and following commencement of drilling operations in order to ensure that the water supplies have not be adversely affected by said operations, Cabot failed to fully engage in such testing activities in violation of the gas leases.

40. Cabot has failed to fulfill its responsibility under the gas leases to take all steps necessary to return the Plaintiffs' water supplies to pre-drilling condition.

41. As a result of the aforementioned releases, spills, discharges, and non-performance attributed to and caused solely by Defendants' negligent and/or grossly negligent drilling and production activities and fraudulent solicitation of the gas leases, Plaintiffs and their properties have been seriously harmed, to wit:

    a. Plaintiffs' water supplies are contaminated.

    b. Plaintiffs have been and continue to be exposed to combustible gases, hazardous chemicals, threats of explosions and fires.

    c. Plaintiffs' property has been harmed and diminished in value.

    d. Plaintiffs have lost the use and enjoyment of their property, and the quality of life they otherwise enjoyed.

    e. Plaintiffs have been caused to become physically sick and ill, manifesting neurological, gastrointestinal and dermatological symptoms, as well demonstrating blood study results consistent with toxic exposure to, for example, heavy metals.

13

f.      Plaintiffs live in constant fear of future physical illness, particularly with respect to the health of their minor children and grandchildren.

g.      Plaintiffs live in a constant state of severe emotional distress consistent with post traumatic stress syndrome.

42.    As a result of the foregoing and following allegations and Causes of Action, Plaintiffs seek, *inter alia*, a preliminary and permanent injunction barring Defendants from engaging in the acts complained of and requiring Defendants to abate the nuisances, unlawful conduct, violations and damages created by them, and an order requiring Defendants to pay compensatory damages, punitive damages, the cost of future health monitoring, litigation fees and costs, and to provide any further relief that the Court may find appropriate.

## CAUSES OF ACTION

### First Cause of Action: Hazardous Sites Cleanup Act

43.    Plaintiffs repeat and reallege the allegations of paragraph "1" through "42" of this Complaint, as though set forth in this paragraph at length.

44.    The locations of the releases of hazardous substances as set forth above constitute "sites" as defined by the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. §§ 6020.101, *et. seq.*

45.    The spills, releases, and discharges set forth above constitute "releases" of hazardous substances and contaminants under HSCA.

46.    At all relevant times, Defendants owned and/or operated the sites, and/or Defendants owned or possessed and arranged for the disposal, treatment or transport for disposal or treatment of the hazardous substances, under the HSCA.

14

47.     Defendants are "responsible persons" responsible for the release or threatened release of hazardous substances, under HSCA.

48.     As set forth above, Defendants have caused, and continue to cause, releases or substantial threats of releases, of hazardous substances or contaminants which present a substantial danger to the public health or safety or the environment, under HSCA.

49.     Pursuant to Section 507, 702 and 1101 of HSCA, 35 P.S. §§ 6020.507, 6020.507 and 6020.1101, Defendants are strictly liable for costs incurred by Plaintiffs to respond to Defendants' releases or threatened releases of hazardous substances and contaminants, including but not limited to the cost of a health assessment or health effects study, medical monitoring, and interest.

50.     The above releases and threats of releases of hazardous substances and contaminants by Defendants constitute public nuisances under Section 1101 of HSCA, 35 P.S. § 6020.1101.

51.     The above releases and threats of releases of hazardous substances by Defendants constitute unlawful conduct under Section 1108 of HSCA, 35 P.S. §6020.1108.

52.     The above releases and threats of releases of hazardous substances and contaminants by Defendants have caused and threaten to cause personal injury and property damage to Plaintiffs.

53.     Defendants, by reason of these releases and threats of releases, are liable for all the damages and injuries to Plaintiffs proximately caused by the releases and threats of releases, and to remediate the releases, threats of releases, and resultant contamination.

15

## Second Cause of Action: Negligence

54.     Plaintiffs repeat and reallege the allegations of paragraph "1" through "53" of this Complaint, as though set forth in this paragraph at length.

55.     Defendants, by violating the various laws indicated herein, engaged in negligence *per se*.

56.     Defendants owed a duty of care to Plaintiffs to responsibly drill, own and operate Defendants' Gas Wells, respond to spills and releases of hazardous chemicals, and prevent such releases and spills, and take all measures reasonably necessary to inform and protect the public, including Plaintiffs, from the contamination of their water supply and exposure to hazardous chemicals and combustible gases.

57.     Defendants, including their officers, agents, and/or employees knew, or in the exercise of reasonable care should have known, their operations would result in the release or the threat of release of combustible gases and hazardous chemicals.

58.     Defendants, including their officers, agents, and/or employees knew, or in the exercise of reasonable care should have known, of the dangerous, offensive, hazardous or toxic nature of their operations.

59.     Defendants, including their officers, agents, and/or employees knew, or in the exercise of reasonable care should have known, of the dangerous, offensive, hazardous or toxic nature of the combustible gases and hazardous chemicals released by Defendants, and that they were capable of causing serious personal injury to persons coming into contact with them, polluting the water supplies of the Plaintiffs, damaging property and causing natural resource damage.

16

60.     Defendants, including their officers, agents, and/or employees, should have taken reasonable precautions and measures to prevent or mitigate the releases and spills, including the design and operation of process systems so that such releases and spills did not occur, as well as adequate planning for such spills or releases or other emergencies.

61.     Defendants, including their officers, agents, and/or employees knew, or in the exercise of reasonable care should have known, that once a spill or release occurred, they should take reasonable measures to protect the public, including by issuing immediate and adequate warnings to nearby residents, including Plaintiffs, to emergency personnel and to public officials.

62.     Defendants, including their officers, agents, and/or employees knew, or in the exercise of reasonable care should have known, that the spills and releases caused by Defendants' negligent conduct, and the resultant harm to Plaintiffs and their property, were foreseeable and inevitable consequences of Defendants' acts and/or omissions in the manner in which they engaged in their gas drilling and production activities.

63.     Defendants, including their officers, agents, and/or employees, acted unreasonably and negligently in causing the releases and spills and the contamination of Plaintiffs' water supplies and property, and failed to take reasonable measures and precautions necessary to avoid and/or respond to the spills and releases of hazardous chemicals, and to protect the public, including the Plaintiffs, from exposure to these combustible gases and hazardous chemicals.

64.     Defendants' acts and/or omissions mentioned herein were the direct and proximate cause of the damages and injuries to Plaintiffs alleged herein.

65.     Contamination resulting from the Defendants' negligence continues to this day, and is likely to continue into the future, unless injunctive relief is awarded by this Court abating

17

the nuisances and enjoining Defendants from engaging in their drilling and production activities in the Dimock Gas Well area.

66.     Some or all of the acts and/or omissions of Defendants were grossly, recklessly and wantonly negligent, and were done with utter disregard for the consequences to Plaintiffs and other persons, and therefore Plaintiffs are entitled to an award of punitive damages.

67.     Plaintiffs in no way contributed to the damages and injuries they have sustained.

68.     Defendants, by reason of their negligence, are liable for all the damages and injuries to Plaintiffs proximately caused by the spills and releases of hazardous chemicals indicated herein, and to remediate the contamination caused by such spills and releases.

**Third Cause of Action: Private Nuisance**

69.     Plaintiffs repeat and reallege the allegations of paragraph "1" through "68" of this Complaint, as though set forth in this paragraph at length.

70.     Defendants, by their acts and/or omissions, including those of their officers, agents, and/or employees, have caused an unreasonable and substantial interference with Plaintiffs' right to use and enjoy Plaintiffs' property.

71.     Defendants, including their officers, agents and/or employees, have created and maintained a continuing nuisance in the Dimock gas well area, by allowing the gas wells to exist and operate in a dangerous and hazardous condition, allowing the spills and releases, and/or the threats of spills and releases, of hazardous chemicals, and allowing the spills and releases to continue to spread to surrounding areas, including Plaintiffs' properties and drinking water supplies, resulting in injuries to Plaintiffs' health, well being and property.

72. This nuisance continues to this day, and is likely to continue into the future.

73. Defendants, by reason of this private nuisance, are liable for all the damages and injuries to Plaintiffs proximately caused by the spills, releases and contamination, and to remediate the contamination.

### Fourth Cause of Action: Strict Liability

74. Plaintiffs repeat and reallege the allegations of paragraph "1" through "73" of this Complaint, as though set forth in this paragraph at length.

75. The hazardous chemicals and combustible gases used, processed, and stored by Defendants are of a toxic and hazardous nature capable of causing severe personal injuries and damages to persons and property coming in contact with them, and therefore are ultra hazardous and abnormally dangerous.

76. The use, processing, and storage of hydro-fracturing fluid at Defendants' Gas Wells, adjacent to or on residential properties, was and continues to be an abnormally dangerous and ultra hazardous activity, subjecting persons coming into contact with the hazardous chemicals and combustible gases to severe personal injuries, regardless of the degree of caution Defendants might have exercised.

77. Defendants , by engaging in abnormally dangerous and ultra hazardous activities, are strictly liable with regard to fault for all the damages and injuries to Plaintiffs proximately caused by the spills, releases and contamination caused byDefendants, and to remediate the contamination.

### Fifth Cause of Action: Breach of Contract

78. Plaintiffs repeat and reallege the allegations of paragraph "1" through "77" of this Complaint, as though set forth in this paragraph at length.

19

79.    As previously indicated, the gas leases required Cabot to test the Plaintiffs' water supply following commencement of drilling operations on the premises in order to ensure that the water supplies would not be adversely affected by Cabot's operations.

80.    Under the gas leases, in the event it is determined that said operations adversely affected Plaintiffs' water supply, then Cabot is required to immediately, at its own expense, take all steps necessary to return the water supply to pre-drilling conditions.

81.    Cabot has failed to perform its obligations as required by the gas leases, in that Cabot has not fully tested Plaintiffs' water supplies for various substances including but not limited to combustible gases, methane gas, and hazardous chemicals used in the hydro-fracturing process, once it was suspected that such drilling operations had caused spills or leaks into Plaintiffs' domestic water supplies.

82.    Furthermore, Cabot has failed to perform as required by the gas leases by immediately, at its own expense, taking all steps necessary to return Plaintiffs' water supplies to pre-drilling conditions.

83.    In addition, as previously indicated, Cabot expressly warranted to Plaintiffs that they would receive timely, certain and regular compensation in the form of royalty checks representing a certain percentage of the value of natural gas extracted from Plaintiffs' property.

84.    Cabot' payments to Plaintiffs have been untimely, irregular and declining, without opportunity or mechanism to verify their correctness and accuracy.

85.    Finally, as previously indicated, Cabot expressly warranted to Plaintiffs that their land, person and environs would remain safe and undisturbed despite its drilling activities.

86.     Cabot proximately caused spills and releases onto Plaintiffs' property, has contaminated Plaintiffs' water, cause physical harm to Plaintiffs and reduced Plaintiffs' quality of life.

87.     As such, Cabot is in breach of the gas leases.

88.     Cabot, by reason of this breach of contract, is liable for all damages and injuries to Plaintiffs caused by such breaches of contract, and is required to make Plaintiffs whole, put Plaintiffs back into the same condition they would have been if the contract was not breached, and remediate the contamination.

### Sixth Cause of Action: Fraudulent Misrepresentation

89.     Plaintiffs repeat and reallege the allegations of paragraph "1" through "88" of this Complaint, as though set forth in this paragraph at length.

90.     In order to induce Plaintiffs to lease their natural gas rights, Cabot, through its officers, agents and/or employees, misstated certain material facts and omitted other material facts, including the amount, timing and regularity of monetary compensation, or "royalties" Plaintiffs would receive as a result of drilling, and risks to Plaintiffs' person and property as a result of the well drilling process, including the fact that fluids containing pollutants and hazardous substances used in the hydraulic fracturing process, as well as gas and gas components, could escape into their ground water wells to their harm and detriment.

91.     These statements and omissions were made for the purpose of inducing reliance on the part of Plaintiffs.

92.     These statements and omissions were material to the transaction, *to wit*, obtaining Plaintiffs' agreement to lease their gas rights.

93.     Plaintiffs justifiably relied on these statements and omissions, to their detriment.

21

94.    Cabot, by reason of fraudulent misrepresentation, is liable for all damages and injuries to Plaintiffs caused by their justifiable reliance, as well as punitive damages.

### Seventh Cause of Action: Medical Monitoring Trust Funds

95.    Plaintiffs repeat and reallege the allegations of paragraph "1" through "94" of this Complaint, as though set forth in this paragraph at length.

96.    As set forth above, as a result of Defendants' negligent acts and/or omissions, plaintiffs have been exposed to hazardous substances.

97.    The levels of hazardous substances to which plaintiffs have been exposed are greater than normal background levels.

98.    As a proximate result of their exposure to such hazardous substances, Plaintiffs have a significantly increased risk of contracting a serious latent disease.

99.    A monitoring procedure exists that makes the early detection of the disease possible.

100.    Such early detection will help to ameliorate the severity of the disease. The prescribed monitoring regime is different from that normally recommended in the absence of the exposure.

101.    The prescribed monitoring regime is reasonably necessary according to contemporary medical opinion.

### Eighth Cause of Action: Gross Negligence

102.    Plaintiffs repeat and reallege the allegations of paragraph "1" through "101" of this Complaint, as though set forth in this paragraph at length.

22

103. The actions of Defendants, including their officers, agents and/or employees, were grossly, recklessly and wantonly negligent, and were done with utter disregard for the consequences to Plaintiffs and other persons.

104. Defendants, by reason of their gross negligence, are liable for all the damages and injuries to Plaintiffs proximately caused by the spills, releases and contamination, to remediate the contamination, and for punitive damages.

**WHEREFORE, upon the aforesaid Causes of Action, Plaintiffs seek the following relief:**

i. The reasonable and necessary costs of remediation of the hazardous substances and contaminants;

ii. A preliminary and permanent injunction barring Defendants from engaging in the acts complained of and requiring Defendants to abate the aforesaid nuisances, wrongful acts, violations and damages created by them within the Dimock Gas Well Area;

iii. The cost of future health monitoring;

iv. Compensatory damages for the loss of property value, damage to the natural resources of the environment in and around the Plaintiffs' properties, medical costs, loss of use and enjoyment of their property, loss of quality of life, emotional distress, personal injury and such other reasonable damages incidental to the claims.

v. Punitive damages for Defendants' for fraudulent misrepresentation and gross negligence;

vi. Plaintiffs' litigation costs and fees; and

vii. any further relief that the Court may find appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand that the trial of all issues be heard by a Judge sitting with jury in accordance with the Federal Rules of Civil Procedure.

RESPECTFULLY SUBMITTED,

THE JACOB D. FUCHSBERG LAW FIRM, LLP
500 Fifth Avenue, 45th Floor
New York, New York 10110-0393
212 869 3500

BY LESLIE L. LEWIS, ESQ.
ALAN L. FUCHSBERG, ESQ.

ZARWIN BAUM DEVITO KAPLAN SCHAER
TODDY, P.C.
1818 Market Street, 13th Floor
Philadelphia, Pennsylvania 19103
215 569 2900

BY PAUL M. SCHMIDT, ESQ.

RICHARD J. LIPPES AND ASSOCIATES
11089 Delaware Avenue
Buffalo, New York 14209
716 884 4800

DATED: November 19, 2009

24