## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORMA J. FIORENTINO, et al. | ) Case No. 3:09-cv-02284-TIV |
| | ) |
| Plaintiffs, | ) Originally: |
| | )(The Honorable Thomas I. Vanaskie) |
| v. | ) Transferred to: |
| | )(The Honorable John E. Jones III) |
| CABOT OIL & GAS CORPORATION, | ) |
| et al., | ) Electronically Filed |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs, by and through their undersigned counsel, hereby file this Memorandum of Law in opposition to Defendants', Cabot Oil & Gas Corporation ("Cabot") and Gas Search Drilling Services Corporation ("Gas Search") (collectively "Defendants"), Motion to Dismiss certain allegations contained in their Complaint.

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT...................................................1

II.  FACTUAL AND LEGAL HISTORY...........................................1

III. STATEMENT OF QUESTIONS INVOLVED.............................2

IV.  ARGUMENT

    **A. The legal standard applicable to motions to dismiss for failure to state a claim**.................................................................3

    **B. This Court should deny Defendants' Motion to Dismiss Plaintiffs' Pennylvania Hazardous Sites Cleanup Act ("HSCA") claim because: (1) claims specifically brought under Section 702 of HSCA do not require pre-suit notice, and (2) Pennsylvania Department of Environmental Protection ("PADEP") diligent prosecution does not preclude the claim**..........................................................4

    **C. This Court should deny Defendants' Motion to Dismiss Plaintiffs' Strict Liability claim because Plaintiffs have pled sufficient facts to satisfy the relevant predicates on which this Court cannot rule until after taking evidence**.............................................8

    **D. This Court should deny Defendants' Motion to Dismiss Plaintiffs' Medical Monitoring claim because Plaintiffs have supported the claim with sufficient allegations**........................................13

    **E. This Court should deny Defendants' Motion to Dismiss Plaintiffs' Gross Negligence claim because Plaintiffs' have withdrawn the claim**...............................................................17

V.   CONCLUSION...............................................................18

# TABLE OF AUTHORITIES

**Page**

## <u>Cases</u>

*Banks v. Ashland Oil Co.*, 127 F.Supp. 2d 679, 681 (E.D.Pa. 2001) ........................ 9

*Bell Atlantic Corp. v. Tombly*, 550 U.S. 544, 27 S. Ct. 1955 (2007).............. 3, 4, 16

*Black v. Metso Paper USA, Inc.*, 240 F.R.D. 155, 161 (M.D.Pa. 2006) ................... 7

*Connley v. Gibson*, 355 U.S. 41 (1957) .................................................................... 3

*Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197 (2007) ........................................ 4

*In re Pressure Sensitive Labelstock Antitrust Litigation*, 566 F. Supp.2d 363 (M.D. Pa. 2008) ........................................................................................................ 4

*Lutz v. Chromatex, Inc.*, 718 F.Supp. 413, 430 (M.D.Pa.1989) ................................ 9

*Redman Soccer Club v. Department of the Army*, 548 Pa. 178, 696 A.2d 137 (1997) ...................................................................................................................... 13

*Williams v. Amoco Prod. Co.*, 241 Kan. 102, 734 P.2d 1113 (1987) ............... 11, 12

## <u>Statutes</u>

Hazardous Site Cleanup Act 35 P.S.§§ 602.101, et seq. ("HSCA").....2, 4-8, 10, 12

## Federal Rules

Fed. R. Civ. P. 7.1 ................................................................................................ 1

Fed. R. Civ. P. 8(a)(2) ......................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 3

## Secondary Sources

Restatement (Second) of Torts, Section 520 .......................................................... 10

# I.  PRELIMINARY STATEMENT

Plaintiffs submit this brief in opposition to Defendants', Cabot Oil & Gas Corporation ("Cabot") and Gas Search Drilling Services Corporation's ("Gas Search") (collectively "Defendants"), Motion to Dismiss various causes of actions in Plaintiffs' Complaint upon the grounds that the allegations of the Complaint afford no legally cognizable basis for relief concerning those causes of action.  As will be further explained in this brief, the bases for Defendants' Motion are either legally incorrect in their analysis of the statutes upon which the particular cause of action may arise, or the Defendants otherwise failed to analyze Plaintiffs' Complaint as a whole.

# II.  FACTUAL AND LEGAL HISTORY

For purposes of this Motion, Defendants have set forth a generally accurate procedural and factual history, and Plaintiffs do not present any counter-statement of facts.[1]

---

[1] Plaintiffs take issue with Defendants' Local Rule 7.1 Certification.  While Plaintiffs discussed with the Defendants an extension of time for the Defendants to answer or otherwise move, and agreed to such an extension, the issues raised in this Motion to Dismiss were never discussed, and no attempt to obtain concurrence for the Motion or any part thereof was ever attempted.  Therefore, this Motion is technically premature without such discussions.

## III.   STATEMENT OF QUESTIONS INVOLVED

A. Should this Court deny Defendants' Motion to dismiss Plaintiffs' HSCA claims because: (1) claims specifically brought under Section 702 of HSCA do not require pre-suit notice, and (2) PADEP diligent prosecution does not preclude the claim?

   Suggested answer:        Yes.


B. Should this Court deny Defendants' Motion to Dismiss Plaintiffs' Strict Liability claim because Plaintiffs have pled sufficient facts to satisfy the relevant factual predicates upon which this Court cannot rule until after taking evidence?

   Suggested answer:        Yes.


C. Should this Court deny Defendants' Motion to Dismiss Plaintiffs' Medical Monitoring claim because Plaintiffs have supported the claim with sufficient allegations?

   Suggested answer:        Yes.


D. Should this Court deny Defendants' Motion to Dismiss Plaintiffs' Gross Negligence claim because Plaintiffs' have withdrawn the claim?

   Suggested answer:        Yes.

## E. **ARGUMENT**

### A.   **The legal standard applicable to motions to dismiss for failure to state a claim.**

It is well settled that a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must be denied "unless it appears beyond doubt that [plaintiff] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Connley v. Gibson*, 355 U.S. 41 (1957). That standard of review, or at least the language indicating the standard, was changed in 2007 with the Supreme Court's decision in *Bell Atlantic Corp. v. Tombly*, 550 U.S. 544, 27 S. Ct. 1955 (2007). While the court in *Bell Atlantic* continued to recognize the notice pleading requirement as set forth in Fed. R. Civ. P. 8(a), and therefore continued to hold that specific facts need not be pled in the complaint, *Bell Atlantic* set a standard requiring that a plaintiff need only have a "plausible" right to recovery, and that the causes of action alleged must rise above mere speculation.

While the language that the Supreme Court used to explain the standard of review on a motion to dismiss changed in the *Bell Atlantic* case, it is unclear to what extent such change in language substantively changed the way lower courts must view a motion to dismiss. Indeed, in a case decided only a month after the *Bell Atlantic* case, the Supreme Court indicated that "specific facts are not necessary", and that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *See*

*Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S. Ct. 2197 (2007). The Court in *Erickson* went on to quote from the *Bell Atlantic* decision, holding that a complaint merely has to "'give the defendant fair notice of what the ... claim is and the grounds upon it which it rests'" 551 U.S. at 93.

As will be demonstrated more fully herein, the problem with Defendants' Motion to Dismiss is that it considers only the language contained under Plaintiffs' specific paragraphs dealing with the each cause of action, thereby ignoring and failing to analyze the Complaint as a whole. *See, In re Pressure Sensitive Labelstock Antitrust Litigation*, 566 F. Supp.2d 363 (M.D. Pa. 2008). As the Court will see while looking at the Complaint as a whole, each of Plaintiffs' allegations provide Defendants with "a short and plain statement of the claims showing that the pleader is entitled to relief" Fed. R. Civ. P. 8(a)(2), and that Plaintiffs' claims are not speculative, but in fact meet the plausibility requirement as set forth in *Bell Atlantic*.

## B. This Court should deny Defendants' Motion to Dismiss Plaintiffs' HSCA claim.

### a. Section 702 of HSCA under which Plaintiffs specifically brought the claim does not require pre-suit notice

Defendants ask this Court to dismiss Plaintiffs' First Cause of Action pursuant to the Pennsylvania Hazardous Sites Cleanup Act, ("HSCA"), 35 P.S. §§

602.101, *et seq.*, arguing that Plaintiffs failed to give required notice before commencing this action. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Brf.") at iii, 8, and 11. In making this argument, Defendants misrepresent Plaintiffs' First Cause of Action. Plaintiffs' HSCA claim does not require any pre-suit notice, because it is expressly brought under Section 702 of HSCA. *See* Second Amended Complaint ("Compl.") attached to Defendants' Memorandum of Law as Exhibit A ("Ex. A"), at ¶59. Defendants concede, as they must, that an action brought under Section 702 does not require 60 days notice before filing. *See* Def. Brf. at 9, n.7. This admission obviates the remainder of Defendants' arguments concerning Plaintiffs' HSCA claim.[2]

Treating Defendants motion generously, it might be interpreted as arguing that Plaintiffs have not pled facts falling within Section 702 of HSCA. This argument, however, is equally erroneous. The Complaint expressly states that Plaintiffs are employing Section 702 to hold Defendants liable "to respond to Defendants' releases or threatened releases of hazardous substances and contaminants, including but not limited to the costs of a health assessment or health effects study, medical monitoring and interest." Compl (Ex. A) at ¶59

---

[2] The bulk of Defendants' brief related to the HSCA claim presents arguments concerning Section 1115. However, Plaintiffs' Complaint makes no mention of Section 1115. In effect, Defendants are arguing that a Section 1115 claim should be dismissed where none was raised. Therefore, those arguments by Defendants are wholly irrelevant.

(emphasis added).[3] The Complaint indicates that the need for this relief includes "substantial danger to the public health." *See* Compl. (Ex. A) at ¶¶58 and 126-132. The Complaint also explains that the need for this relief includes a host of other reasons consistently recognized by courts as satisfying a claim for medical monitoring. *See* Compl. (Ex. A) at ¶¶58 and 126-132; *see, also,* Plaintiffs' discussion of its medical monitoring claim *infra.*

Defendants cannot argue that medical monitoring costs are not a response cost. On the contrary, the costs of a health assessment or health effects study and medical monitoring are expressly "response costs" recoverable under Section 702 of HSCA. Section 702(a) of HSCA expressly authorizes the following forms of damages for private plaintiffs:

> 3. Other reasonable and necessary or appropriate costs of response incurred by any other person;
> \*\*\*
> 5. The cost of a health assessment or health effects study.

---

[3] Plaintiffs note that in the course of preparing the Second Amended Complaint, the final sentence of paragraph 43, enumerated as 43.h, was inadvertently omitted. That sentence averred: "Plaintiffs have incurred costs, including for water samples and alternative water." Although the clear language of the Second Amended Complaint infers incurred response costs sufficient to satisfy federal notice pleading, to the extent the Court deems this inadvertent omission material, Plaintiffs respectfully request that the Court deem it alleged. Defense counsel has been contacted and concurs with this request. Alternatively, we ask the Court to allow Plaintiffs to produce proof during discovery.

35 Pa.C.S. § 6020.702(a)(3),(5). The Pennsylvania District Court recently rejected arguments identical to Defendants' in a motion to dismiss under circumstances very similar to those in the instant motion. The Middle District Court held:

> Section 702 expressly authorizes Plaintiffs to seek the costs of a health assessment or health effects study. Therefore, reading the complaint in the light most favorable to Plaintiffs, I find that Plaintiffs have adequately placed Defendants on notice of their claims and are entitled to seek the costs of health assessments or health effects studies under Section 702 of the HSCA.

*Black v. Metso Paper USA, Inc.*, 240 F.R.D. 155, 161 (M.D.Pa. 2006) (internal citation omitted).

When the Complaint is properly examined *with* the language in Paragraph 49, which Defendants failed to cite ("including but not limited to the costs of a health assessment or health effects study, medical monitoring"), it becomes clear that Plaintiffs are properly seeking response costs available under Section 702, which does not require advance notice of suit.[4] Therefore, this Court should deny Defendants' motion to dismiss Plaintiffs' HSCA claim.

b.  PADEP Diligent Prosecution does not preclude Plaintiffs' HSCA claim

Defendants also ask this Court to dismiss Plaintiffs' First Cause of Action pursuant to HSCA because Defendants purport that the Department of

---

[4] To bolster their motion, Defendants cite to numerous other damages and relief Plaintiffs aver in the Complaint. Defendants' averments are misplaced. These averments support Plaintiffs' other counts; they do nothing to weaken Plaintiffs' Section 702 HSCA claim.

Environmental Protection is "diligently prosecuting the alleged violations." *See* Def. Brf. at iii, 12, and 14. This argument suffers from the same fatal misrepresentations as Defendants' preceding argument that lack of notice precludes Plaintiffs' HSCA claim because Plaintiffs' claim is founded on Section 702 of HSCA (under which it seeks response costs and damages), not Section 1115 (which pertains to compelling compliance).[5] Section 702 contains no such language precluding private suits. Therefore, this Court should deny Defendants' motion to dismiss Plaintiffs' HSCA claim.

## C. **This Court should deny Defendants' Motion to Dismiss Plaintiffs' Strict Liability claim because Plaintiffs have pled sufficient facts to satisfy the relevant factual predicates upon which this Court can rule only after evidence is taken.**

Defendants argue that Plaintiffs' strict liability claim should be dismissed because petroleum and natural gas-related activities are purportedly not subject to strict liability.

Defendants' argument is fundamentally flawed, as they ask this Court to make a premature legal determination which itself requires detailed factual findings. On motions to dismiss, the Pennsylvania District Courts have held that

---

[5] Even from a factual standpoint, Defendants are wrong. The Amended Complaint seeks response costs and other damages at 27 homes, while the COA instead compels compliance at 14 homes. *Compare* Ex. A to COA (Def. Brf. Ex. C) to Compl. at paras. 43.a to 43.aa.

they typically lack a "sufficiently developed record to evaluate whether the Section 520 factors warrant a finding that [the defendant] was engaged in an abnormally dangerous activity." *Banks v. Ashland Oil Co.*, 127 F.Supp. 2d 679, 681 (E.D.Pa. 2001) (citing *Lutz v. Chromatex, Inc.*, 718 F.Supp. 413, 430 (M.D.Pa.1989). Because this Court lacks sufficient facts concerning the factors relevant to evaluating a strict liability claim, this Court should similarly deny Defendants' motion to dismiss the claim.

Defendants suggest that the facts already at hand enable this Court to make a legal determination that a strict liability claim cannot exist. However, Defendants are mistaken: not a single Pennsylvania case that Defendants cite pertains to the drilling and operation of gas wells. Rather, Defendants cite to Pennsylvania case law pertaining to transmission and storage of natural gas and petroleum. *See* Def. Brf. at 16, 17. Tellingly, Defendants note the distinction between storage and transmission practices and the practices of gas well drilling and operation. *See* Def. Brf. at 16, n.10. The distinction is a significant one, as discussed *infra*. While courts have concluded that storing and transmitting gas and petroleum products are not abnormally dangerous activities, the Complaint sets forth that gas well drilling and operations have caused extensive harm to the environment, the drinking water

aquifer, Plaintiffs' supply wells, and Plaintiffs themselves.[6]  In short, both in

practice and impacts, the instant activities are nothing like those considered in the

Pennsylvania cases Defendants cite.

The cases cited by Defendants are inapposite and, accordingly, their motion

lacks any legal support for the proposition that the facts as pled do not satisfy the

numerous factual predicates relevant to a strict liability claim.  *See* Restatement

(Second) of Torts, Section 520.  For example, Defendants provide no legal support

for their position that strict liability cannot apply to the activities they are

conducting in residential areas within 1000 feet of homes and domestic supply

wells, *to wit*,  the construction of deep horizontal wells passing through drinking

water aquifers, the extraction of gas from those wells, the mixing and use of

hydraulic fracturing fluids, the subsequent processing of gas, and the collection,

storage and transport of millions of gallons of hazardous chemicals and waste.

Defendants' attempt to buttress their motion with factual arguments lacks

merit.  Their arguments include that "natural gas extraction and associated storage

and processing activities are commonplace in today's industrial society and the

societal value of such activities ... is enormous." *See* Def. Brf. at 18.  Defendants

---

[6] Defendants begin to suggest they have a basis to discount the distinction between
storage and transmission processes and the practices of gas extraction and
processing, but in mid-sentence they apparently abandon this attempt and instead
go on to analogize the transmission of natural gas with the transmission of
petroleum products. *See id.*

continue that "clearly, these activities were carried on in an appropriate place." *Id.* Defendants also argue that the probability and magnitude of harm posed by such operations are clearly outweighed by the benefits." *Id.* These factual arguments are both unsupported and misplaced in a motion to dismiss.

The closest Defendants come to making a relevant legal argument is with their citation to one case in Kansas; however, that case is not controlling, and its facts contradict Defendants' arguments. Defendants cite to *Williams v. Amoco Prod. Co.*, 241 Kan. 102, 734 P.2d 1113 (1987) as an example of a Court finding that the drilling and operation of natural gas well was not an abnormally dangerous activity. *See* Def. Brf. at 18. In *Williams*, both the Court and defendant Amoco distinguished the subject natural gas from other substances, including "salt water" and "chemical discharge." *See Williams* at 115, 734 P.2d 1123. The Court also distinguished the negligible impacts in that case with damage to soil, crops, livestock, and water quality. *Id.* Additionally, the Court noted that the natural gas at issue in that case had not caused an explosion. *Id.* Finally, the Court compared that case to an earlier case where the Court determined that salt water, which escaped from oil wells was not naturally there, was therefore an unnatural, harmful agent when it reached neighboring property. *See id.*[7]

---

[7] Not surprisingly, the Court noted that whether an activity is abnormally dangerous requires a factual determination of the activity's "relation to the type of harm sustained." Id. at 116, 734 P.2d 1123. Thus, it appears that on a motion to dismiss

11

The substances, activities, and harms in the instant case are unlike those at issue in *Williams*. Instead, they are more like the substances, activities, and harms that the *Williams* Court indicated *would* support a strict liability claim. *See id.* In the instant case, Plaintiffs have alleged that Defendants' activities have caused explosions and fires. Compl. (Ex.A) at ¶¶45.h and 35.i. Plaintiffs have also alleged Defendants released hazardous substances, including 1,2,4-tremethylbenzene, industrial and/or residual waste, diesel fuel, and other pollutants into the environment, causing injury to water aquifers and drinking wells and resulting in physical harm and long-term risk of disease. *See, e.g.*, Compl. (Ex.A) at ¶¶ 35 to 37, 41, 48-49, 52. This is a result of, *inter alia*, Defendants' use of hydrofracturing fluid containing hazardous chemicals forced into the ground under extreme pressure. *See* Compl. (Ex.A) at ¶¶ 39-42. On these facts, Plaintiffs have properly pled a claim of strict liability sufficient to withstand Defendants' Motion to Dismiss. Therefore, this Court should deny Defendants' motion to dismiss Plaintiffs' strict liability claim.

---

even the *Williams* court would be loath to dismiss a strict liability claim arising out of drilling and operating natural gas wells.

**D. The Court should deny Defendants' Motion to Dismiss Plaintiffs' medical monitoring claim because Plaintiffs have supported the claim with sufficient allegations.**

Defendants move to dismiss Plaintiffs' seventh cause of action for a medical monitoring trust fund because Defendants allege that "Plaintiffs do not plead facts that demonstrate they are entitled to the medical monitoring trust funds that they seek. Instead, Plaintiffs again just boldly contend that they satisfy the required elements by reciting the necessary elements in conclusory fashion." *See* Def. Brf. p. 20. However, as indicated in the section of this brief dealing with the standard of review of a motion to dismiss, the problem with Defendants' position is that they do not analyze the Complaint as a whole, but rather, essentially review the allegations as stated in the seventh cause of action as standing alone, without reference to the general facts incorporated therein.

Plaintiffs' seventh cause of action sufficiently alleges the elements of a medical monitoring trust fund cause of action as described by the Pennsylvania Supreme Court in *Redman Soccer Club v. Department of the Arm*, 548 Pa. 178, 696 A.2d 137 (1997). A true analysis of whether or not the Rule 8 pleading requirement has been met concerning this cause of action requires a full analysis of the Complaint. Therefore, in support of this, and every, cause of action, Plaintiffs included a general allegation section in their Complaint, which allegations are incorporated by reference in every cause of action. Included among these general

allegations are the following: that Defendants have drilled wells in close proximity to each of the Plaintiffs' homes and water supply (*See* Compl. (Ex. A) ¶43), and that Defendants engaged in hydraulic fracturing that requires the use of "fracking fluid [that] includes hazardous chemicals that are carcinogenic and toxic." *Id.* ¶40.

Furthermore, Plaintiffs allege: that elevated levels of dissolved methane are present in their well water(*Id.* ¶45(b)); that pollutants and industrial and/or residual waste were discharged into the ground and waters near the Plaintiffs' homes and water wells (*Id.* ¶45(e)); that diesel fuel was spilled onto the ground near Plaintiffs' homes and water wells (*Id.* ¶45(f)); that drilling mud was caused to be discharged into diversion ditches near Plaintiffs' homes and water wells (*Id.* ¶45(g)); and that three significant spills of pollutants were caused to occur within the Dimock gas well area within a ten-day period. These three spills caused the Pennsylvania Department of Environmental Protection, on September 24, 2009 to issue an order requiring that Cabot cease all well stimulation activities within Susquehanna County, which prohibition lasted for approximately three weeks. *Id.* ¶45(j),(k).

Plaintiffs also allege that the spills, discharges, and releases included, but were not limited to, various hazardous chemicals including 1,2,4-trimethybenzen exceeding Pennsylvania State health standards for saturated soil, the discharge into surface water of aluminum in amounts exceeding the Pennsylvania Department of Environmental Protection Water Quality Criteria, the discharge of iron exceeding

the Pennsylvania State Department of Environmental Protection Water Quality Criteria, and the discharge of n-propylbenzene and p-isopropyl toluene. *Id.* ¶47. Finally, Plaintiffs allege that as a result of the releases, spill and discharges, that their water supplies are contaminated (*Id.* ¶51(a)) that they have been and continue to be exposed to combustible gases and hazardous chemicals (*Id.* ¶51(b)), and that they have already been caused to become physically sick and ill, manifesting neurological, gastrointestinal, and dermatological symptoms, as well as demonstrating blood study results consistent with toxic exposure to, for example, heavy metals. *Id.* ¶51(e).

As previously indicated, Defendants fail to analyze or even mention the facts pled, as indicated, in the general allegations section of the Complaint, all of which support the various elements required in a medical monitoring cause of action.

Naturally, the medical monitoring cause of action is very fact specific. The appropriate regimen of medical monitoring depends upon the materials to which an individual has been exposed, the epidemiological evidence of associations between potential diseases to which that individual is placed at greater risk than the general public, and whether those illnesses or diseases can be detected early so that the disease might be ameliorated. Of course, the purpose of the medical monitoring trust fund is to assure that the Plaintiffs are reimbursed for the cost they incur for tests that need to be taken as a result of such exposure and their increased risk of

disease that is not present in the general population. Defendants would require Plaintiffs to plead specific facts supporting all elements of the cause of action, and therefore, be essentially trial ready on these issues at the time they file the complaint, or have this cause of action dismissed.

However, the facts necessary to support this cause of action require information that will be obtained in discovery that is exclusively within the control of the Defendants. For example, the specific chemicals to which Plaintiffs may have been exposed cannot be fully determined until such time as Plaintiffs learn the chemicals that were contained in the fracturing fluid and drilling muds, at which point these chemicals will be appropriately tested for. Without this information, Plaintiffs do not know all of the chemicals to test for. All the other elements of the cause of action build upon the specific exposures that took place.

As the Court can see, the allegations of the Complaint certainly put Defendants on notice concerning the medical monitoring cause of action, provide facts available to Plaintiffs at this preliminary stage of the litigation, which are non-speculative and certainly go far beyond the plausibility requirement of *Bell Atlantic*.

**E. The Court should deny Defendants' Motion to Dismiss Plaintiffs' gross negligence claim because Plaintiffs have amended the Complaint to withdraw that claim.**

As previously indicated, Plaintiffs recognize the merit to Defendants' contention that Pennsylvania does not recognize a cause of action for gross negligence. As such, Plaintiffs have agreed to withdraw this cause of action in the Complaint. However, it should be pointed out that while Pennsylvania does not recognize a separate cause of action for gross negligence, the fact that Defendants may have acted in a grossly negligence fashion can in fact be alleged in the Complaint to support Plaintiffs' claim for punitive damages, and therefore, the allegation of gross negligence, as opposed to a cause of action for gross negligence, should be allowed to remain in Plaintiffs' Amended Complaint.

**F. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request this Court deny Defendants' Motion to Dismiss in its entirety.

Dated: June 29, 2010

Respectfully submitted,

THE JACOB D. FUCHSBERG LAW FIRM, LLP

Leslie L. Lewis, Esq.
*Pro Hac Vice* (NY Bar ID 4002036)

17

Alan Fuchsberg, Esq.
500 Fifth Avenue, 45th Floor
New York, New York 10110-0393
(212) 869-3500

ZARWIN BAUM DEVITO KAPLAN SCHAER
 TODDY, P.C.

Paul M. Schmidt, Esq.
1818 Market Street, 13th Floor
Philadelphia, Pennsylvania 19103
(215) 569-2800

RICHARD J. LIPPES AND ASSOCIATES
Richard J. Lippes, Esq.
11089 Delaware Avenue
Buffalo, New York 14209
(716) 884-4800

***Attorneys for Plaintiffs***

## WORD COUNT CERTIFICATION

I hereby certify, pursuant to Local Rule 7.8(d)(2), that the total word count of the foregoing Memorandum of Law in Opposition to Defendants' Motion to Dismiss is 4160 words.

_Leslie L. Lewis_
Leslie L. Lewis, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum of Law in Opposition to Defendants' Motion to Dismiss and Amended Complaint was electronically served on Defendants' counsel and all counsel of record on June 29, 2010 via the Court's electronic filing system.

_Leslie L. Lewis_
Leslie L. Lewis, Esq.