
IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NORMA FIORENTINO, *et al.*,   )   CASE NO. 3:09-CV-02284
                              )
            Plaintiffs,       )   District Judge John E. Jones III
v.                            )
CABOT OIL AND GAS             )
CORPORATION, *et al.*,        )
                              )
            Defendants.       )

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO COMPEL ENTRY UPON LAND**

*Counsel for Plaintiffs*

W. Steven Berman, Esq. (PA #45927)
*admission pending*
Leslie L. Lewis, Esq. (NY4002036)
Tate J. Kunkle, Esq. (NY4468542)
*PHV admission pending*
Napoli Bern Ripka & Associates, LLP
Attorneys for Plaintiff
One Greentree Center, Suite 201
Marlton, NJ 08053
(888) 529-4669

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORMA FIORENTINO, *et al.*, )<br>)<br>Plaintiffs, )<br>v. )<br>CABOT OIL AND GAS )<br>CORPORATION, *et al.*, )<br>)<br>Defendants. ) | CASE NO. 3:09-CV-02284<br><br>District Judge John E. Jones III |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ENTRY UPON LAND**

I. PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Memorandum of Law in Opposition to Defendants' Emergency Motion to Compel Entry Upon Land.

This is an action brought on behalf of twenty property owners and their families to recover for property damage and/or injuries, including *inter alia*, contamination of their drinking water, resulting from the performance of natural gas leasing, construction, exploration and extraction operations by Defendant Cabot Oil & Gas Corporation ("Cabot") and its subsidiary, GasSearch Drilling Services Corporation ("Defendants") in Dimock and Springfield Townships, in Susquehanna County, Pennsylvania[1].

---

[1] Defendant Cabot has been subject to three (3) Consent Orders and numerous Notices of Violation from the Pennsylvania Department of Environmental

2

Only five (5) of the properties involve plaintiffs claiming current personal injuries. Fact discovery has only recently commenced due to several amended pleadings. Plaintiffs are in the middle of substituting counsel. Plaintiffs' new counsel is not even in possession of the files. Written discovery is ongoing and no plaintiff depositions have been taken.

Despite all of this, defendants insist upon immediate "expert" inspections of "every inch" of *all* twenty (20) properties, including inside homes, lands and businesses, pursuant to Fed. R. Civ. P. 34(a)(2) "to identify possible sources of contamination that may have caused or may continue to caused plaintiffs' alleged

---

Protection ("PA DEP") for their negligent and careless drilling practices and the environmental contamination it has caused. The Consent Orders were applicable to eleven (11) Plaintiffs' properties. In a November 4, 2009 Consent Order, the PA DEP determined that Cabot's activities had caused natural gas to contaminate the groundwater and that Cabot's wells were defectively cemented and defectively cased. (The November 4, 2009 Consent Order and Agreement is publicly available at http://s3.amazonaws.com/propublica/assets/natural_gas/final_cabot_co-a.pdf.) The two subsequent Consent Orders were issued due to Cabot's failure to abide by the terms of the November 4, 2009 Consent Order. *See, e.g*, PR Newswire, *PA DEP Takes Aggressive Action Against Cabot Oil & Gas Corp. to Enforce Environmental Laws, Protect Public in Susquehanna County* (April 15, 2010), available at http://www.prnewswire.com/news-releases/dep-gives-cabot-oil--gas-60-days-to-implement-permanent-fix-to-impacted-water-supplies-in-susquehanna-county-township-98929369.html annexed hereto as Exhibit "A". In addition to causing subsurface contamination of Plaintiffs' water supplies, Defendants have exacerbated the environmental catastrophe through their surface releases of petroleum products and toxic drilling mud. On September 30, 2010, the PA DEP Secretary, John Hanger announced the state was forced to install a centrally-sourced water system to the residences of affected plaintiff-owners, as well as others, and was looking to defendant Cabot to cover the costs of the system based on the persistent contamination of the potable water supply.

illnesses." Plaintiffs object to the scope, timing and rationale for such intrusive inspections that seek to identify possible causes *other* than their own contamination for the injuries now claimed by certain plaintiffs.

As more fully described below, defendants' demands for these "expert" inspections are untimely, overly broad, unduly intrusive and invasive. Defendants have failed to provide adequate notice to plaintiffs, their new counsel and experts as to the scope and methodology of sampling and testing - no sampling or analysis protocol has been provided to plaintiffs' counsel and defendants' counsel has vocally refused to even provide data and sampling results to the plaintiffs. As evidenced by the vague terms of their proposed Stipulation, these "fishing-expedition" inspections will distract from the true issues in this case and are only sought at *this* time to permit defendants an unfettered opportunity to forage for alternative sources of contamination without even any factual foundation for their necessity. Despite Plaintiffs' efforts to avoid motion practice and work with Defendants' counsel to reasonably tailor the scope and adjourn the schedule of the inspections, Defendants have made the instant "emergency" application, where no true emergency exists.

## II. PROCEDURAL HISTORY AND STATEMENT OF FACTS

The Complaint in this matter was filed on November 19, 2009. An Amended Complaint was filed on March 15, 2010. The Second Amended Complaint was

filed on May 17, 2010. Defendants have not served an Answer, instead filing a Motion to Dismiss and Motion to Strike that are pending before the Court. Plaintiffs have served most of their Rule 26 disclosures, except for a handful of Plaintiffs added in the Amended and Second Amended Complaints. Some preliminary discovery has proceeded under a Case Management Order dated February 8, 2010, including the depositions of two defendant employees.

On August 18, 2010, defendants served a R. 34 request to enter upon each plaintiff's property and/or premises to inspect, measure, etc., commencing on September 28, 2010, on Plaintiffs' previous counsel, The Fuchsberg Law Firm, Zarwin Baum firm and Richard Lippes & Associates. This R.34 Request did not contain any specificity and did not advise of the intended scope of the inspections, omitting the details contained, for the first time, in a telephonic conference last week or in the proposed Order attached to the defendants' motion papers[2].

On September 24, 2010, a letter was filed with the Court by Leslie Lewis, Esq., formerly with the Fuchsberg firm, and now co-counsel with Napoli Bern Ripka & Associates, memorializing the discharge of the aforementioned original law firms by plaintiffs and Ms. Lewis' substitution (for what ended up being a

---

[2] Defendants also served their First Set of Interrogatories and Requests for Production of Documents on August 18, 2010.

brief period) as sole counsel[3]. Later that same day, Ms. Lewis spoke with Defendants' counsel, Amy Barrette, requesting a reasonable adjournment of all discovery in order to accomplish transfer of the files and full substitution of counsel. At this time, Ms. Lewis specifically advised Ms. Barrette that plaintiffs were objecting to the scope, timing and rationale of the proposed property inspections, the parameters of which were reportedly informally discussed by outgoing counsel in her absence.

As a result of the September 24th conversation between Ms. Lewis and Ms. Barrette, defendants' counsel filed an "emergency" letter with the Court that prompted a telephonic conference on September 27, 2010. As the result of the representations to the Court by counsel for all parties, including incoming counsel retained by the plaintiffs, the Court adjourned the property inspections and directed the parties to engage in efforts to work out an acceptable inspection plan.

Plaintiffs expressed their concerns about the newly revealed details of the defendants' intended inspections in two written letters and during the course of an extended meet-and-confer. The parties were in the middle of negotiating the terms of the inspections when, regrettably and through no fault of plaintiffs, defendants elected to make the instant "emergency" application.

---

[3] Although attorney Leslie Lewis previously represented plaintiffs as an employee of the outgoing Fuchsberg firm, she only came under the employ of incoming counsel, Napoli Bern Ripka & Associates, as of Thursday, October 7, 2010.

Plaintiffs question defendants' Certificate of Non-Concurrence submitted to this Court because in plaintiffs view the meet and confer was still continuing when this unnecessary motion was brought before this Court. Significantly, many of the terms for the inspections on defendants' proposed Order are being identified *for the very first time*. Nevertheless, it is outlandish that defendants are moving this Court for an Order permitting unfettered access to all areas of plaintiffs' homes and properties so that destructive testing and deep drilling by groups of persons riding ATVs and escorted by armed guards to search for alternative causes of personal injuries that most of the plaintiffs do not now claim, based entirely upon hearsay and without any factual foundation, particularly at this point in the litigation.

### III. STATEMENT OF QUESTIONS INVOLVED

A.      Is Defendants' request for immediate site inspections with experts untimely?
Suggested Answer: Yes

B.      Do the burdens and dangers of defendants' proposed site inspections outweigh the degree to which proposed inspections will aid discovery in this matter?
Suggested Answer: Yes

C.      Have Defendants provided inadequate notice and improper provisions with respect to their proposed site inspections?
Suggested Answer: Yes

7

## IV. ARGUMENT

### A. DEFENDANTS' REQUEST FOR IMMEDIATE SITE INSPECTIONS IS UNTIMELY EXPERT DISCOVERY AND THEREFORE SHOULD BE DENIED.

Even a most perfunctory overview of the status of discovery reveals that defendants' demand is premature. Quite simply, defendants' seek expert inspections, examinations, testing and sampling of plaintiffs' properties prior to any necessary fact discovery that will disclose the details of each individual plaintiff's allegations of negligence and injuries, permitting particularized parameters of required property inspections. For example, only five (5) properties have plaintiffs claiming damages for existing personal injuries at this time.[4] Given defendants' current rationale for the inspections, the inspections of fifteen (15) plaintiffs' residence are, on its face, unnecessary and an undue invasion of privacy.

Defendants' motion identifies eight (8) experts planning to attend the inspections. The *expert* affidavit submitted by Dr. James Pinta in support of defendants' emergency motion, claims the inspections are necessary to "identify, quantify, and delineate the alleged contamination. . . ." *See* Affidavit of Dr. James Pinto annexed to Defendants' Emergency Motion as Exhibit 7, ¶13. Without even

---

[4] Those plaintiffs are: Norma Fiorentino, Craig and Julie Sautner family, Nolen and Monica Ely family, Pat Farnelli family, Ronald and Jean Carter, Sr.

addressing the problems with such a vague, conclusory and factually baseless statement, it is clear that this is expert discovery.[5]

Defendants argue that because plaintiffs have alleged pollution of their private water supplies and discharges of industrial waste and other toxic substances onto their properties, defendants have the right to immediately inspect "every inch" of every plaintiff's property. This argument is unpersuasive. Plaintiffs' initial Complaint was filed on November 19, 2009 and defendants have been on notice of most plaintiffs' allegations of defendants' negligent acts and associated harm. Yet, the defendants have taken no steps to monitor pollution levels in the preceding eight months, nor do they provide any factual or reasonable bases for their sheer conjecture that potential contamination on plaintiffs properties might "[disperse] in the environment with the passage of time, and [become] more diffuse, making it more difficult to identify, quantify, and delineate" or that "the passage of time could also lead to the degradation of the alleged contaminants, making them even more difficult to identify, quantify, and delineate."

This is factual nonsense and contradicted by the actions recently undertaken by the Commonwealth to provide safe drinking water to the plaintiffs at

---

[5] Dr. Pinta and defendants' counsel fail to identify how Dr. Pinta intends to define the horizontal and vertical extent of the contamination plume during a one-day inspection. While reluctant to educate the defendants and their experts, such a delineation is only possible with the installation of several monitoring wells drilled into the aquifer and screened at multiple depths.

considerable expense to the taxpayers of Pennsylvania.[6] Defendants' false contention simply cannot support their claim for emergent relief[7].

### B. THE BURDENS AND DANGERS OF DEFENDANTS' PROPOSED SITE INSPECTIONS OUTWEIGH THE DEGREE TO WHICH PROPOSED INSPECTIONS WILL AID IN SEARCH FOR TRUTH, AND THEREFORE THEIR REQUEST FOR SUCH INSPECTIONS SHOULD BE DENIED.

Defendants demand an unfettered right of access to plaintiffs' homes and properties to "discover," primarily, possible alternative sources for plaintiffs' purportedly alleged medical conditions. Defendants seek extensive intrusions into Plaintiffs' privacy and, perhaps with the exception of certain body searches, no greater intrusion can be imagined then the proposed home inspections.

Fed. R. Civ. P. 34 provides that, among other things, parties may be compelled by to permit the inspection of premises. Rule 26, however, imposes limits on discovery that apply to Rule 34 inspections. For instance, a court must limit discovery, even of relevant matter, if it determines that:

(i) the discovery sought is unreasonably cumulative or

---

[6] Many of defendants' contaminants cannot biodegrade and given the slow rate at which groundwater flows, unfortunately the aquifers from which plaintiffs' draw their water will remain in their contaminated state for many years.
[7] Further, plaintiffs respectfully submit that based on the discharge of the original three law firms who provided representation in this matter until September 24, 2010, there should be a reasonable adjournment of all discovery, including consideration of defendants' proposed expert inspection of plaintiffs' properties, until such time as new counsel has at least had the opportunity to obtain and review the files, which has yet to occur and which defendants have been made well aware.

duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Rule 26(b)(2)(C). Additionally, under Rule 26(c), a court may limit discovery to "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Whether a discovery request imposes an undue burden "is a specific inquiry that turns on the facts of each case." *Beinin v. Center for Study of Popular Culture*, 2007 WL 832962, *5 (N.D. Cal. 2007)(dealing with subpoenas); *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)(same). An "evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).

Whether a document subpoena imposes an undue burden "depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996); A subpoena that is facially

overbroad imposes an undue burden. *Williams*, 178 F.R.D. at 109 ; *In re Biovail Corporation Securities*, 247 F.R.D. 72, 75 (S.D.N.Y. 2007).

Because entry upon a party's premises "may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection" is warranted. *Belcher v. Bassett Furniture Ind., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978) (Rule 34 inspection subpoena). Therefore, under Rule 26, "the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." *Id.*; *Arkansas Game & Fish Comm. v. United States*, 74 Fed.Cl. 426, 432 (2006)[8].

The facts pertinent to the instant motion are: (1) defendants have not served an Answer and the parties are only at the <u>outset</u> of fact discovery; (2) allegations of current personal injuries have only been made by a small percent of plaintiffs; (3) defendants seek unfettered access to the homes and properties of *all* plaintiffs without regard to individual claims, including entry "into each room of the residence" and to "open sink cabinets" and "open closet doors," (4) the manner and methods of the inspections have only partly been disclosed; (5) the defendants'

---

[8] Although *Arkansas Game* is a Court of Claims case, the text of R. 34 therein considered is identical to Fed. R. Civ. P. 34.

proposed methods, including the unfettered use of ATVs, drilling into bedrock[9] and armed guards, are unduly burdensome on their face.

In addition, defendants insist on performing these inspections without benefit of advance notice to plaintiffs, on a property-by-property basis, of the identify of specific individuals who will participate in the individual inspections and the functions each individual will provide while on individual plaintiff's premises. While counsel in their Memorandum identify a group of eight individuals who "will all participate at some point [during unspecified inspections]", the same is not included in their (proposed) Order, where instead reference is made to "at least three [unnamed] employees [of CEC]" and "at least three [unnamed] employees [of URS]," specific functions on specific properties unspecified. Further, Defendants insist on performing these untimely inspections in the absence of sufficient descriptive detail or specificity on a property-by-property basis. Simply put, we still do not know what they specifically intend nor when they intend to do it.

---

[9] Defendants desire to take soil, noise, mold, asbestos and air samples on all properties and in all residences. During the meet-and-confer, plaintiffs' counsel inquired as to how many borings they wished to take and defendants' counsel responded by saying "as many as they want and wherever they want." It is respectfully submitted that the proposed use of a six and one quarter inch (6 ¼") auger to drill holes six inches across and 125 feet down into someone's property, and then using an "air hammer" to take a core sample into 6" of bedrock falls, is impermissibly broad and unduly burdensome, as well as expert discovery.

In addition, no sampling or analysis protocol has been provided to plaintiffs' counsel and defendants insist on a "Timing of Inspections" that is imprecise, open-ended, unreasonable and onerous. Defendants' proposed Order leaves themselves carte blanche to "alter and/or extend the dates [and presumably times] of inspections"; arrive on the property near sun up, leave the property after sun down; arbitrarily vary the time spent on plaintiffs' properties based on "home/acreage/buildings and the [unnoticed, unspecified] nature of testing required; and have the run of every inch of the house continuously from 8:00 in the morning until 5:00 at night. Similarly, defendants' intention to have their contractors take "soil borings" on any property they choose is the type of reckless drilling is what gave rise to this action in the first place.[10]

Defendants rely on *Versatile Metals, Inc. v. Union Corp.*, No. 85-4085, 1986 WL 8720 (E.D.Pa. Aug. 8, 1986) and *U.S. v. Acquest Wehrle, LLC*, No. 09-CV-637C(F), 2010 WL 1708528 (W.D.N.Y. April 27, 2010) to support their proposition that under Rule 34, they should be permitted a "broad sweep of access" and that they are entitled to inspect the plaintiffs' properties this Fall. To the extent these cases are at all applicable, they only support plaintiffs' position that

---

[10] Plaintiffs' submit that not only should the PA DEP and local utilities be notified of the drilling, there are other issues with the types of sampling, sample analysis protocol, and cross-contamination of the aquifers which need to be addressed.

the inspections are expert discovery and therefore untimely, as well as need to be carried out in reasonable and safe manner.

In *Versatile Metals, Inc. v. Union Corp.*, No. 85-4085, 1986 WL 8720 (E.D.Pa. Aug. 8, 1986), the plaintiffs moved to compel a request to take soil samples from an industrial site which was allegedly contaminated with polychlorinated biphenyls or PCBs. The defendants were concerned that the sampling would cause the release of PCBs into the environment. Although the court granted the motion finding the soil samples directly relevant to the claims, the court made "adequate provision for safety precautions." 1986 WL 8720, at *2. This included ordering the plaintiffs "that before any testing or drilling occurs that plaintiffs give adequate and proper notice to the following three public agencies: the U.S. Environmental Protection Agency, the Pennsylvania Department of Environmental Resources and the City of Philadelphia." 1986 WL 8720, at *2.

Defendants also cite to *U.S. v. Acquest Wehrle, LLC*, No. 09-CV-637C(F), 2010 WL 1708528 (W.D.N.Y. April 27, 2010). *U.S. v. Acquest Wehrle, LLC* was an enforcement action brought under the Clean Water Act. There, the plaintiff sought to conduct its inspection and sampling of undeveloped land during the wet season. This was done for the "development of expert testimony" and with the specific goal of determining whether the waterway on defendant's property had a

15

significant nexus to navigable waters so that it could be determined if is was covered by the Clean Water Act. 2010 WL 1708528, at *1-2.

Defendants' "emergency" in conducting these inspections prior to snow-fall this Autumn is not analogous to the situation in *Acquest Wehrle*, when the inspections had to be done at a certain time of year. Here, the defendants' only served their discovery demands a month and a half ago. Fact discovery is barely underway. There is no urgency to complete the inspections this autumn and defendants' careless rush is illustrated by their proposed joint stipulations.

The foregoing demonstrates that defendants' request to conduct immediate inspections of each and every plaintiff's property without distinction or benefit of fact discovery as to the individual claims of negligence and injury, under unsupervised and unwise conditions, is dangerous, overly broad, unduly burdensome, and an ill-timed, ill-conceived plan to harass plaintiffs and force plaintiffs' to expend unnecessary resources and therefore should be denied.

## V. COSTS

Finally, Defendants demand for alleged and undocumented costs due to cancellation of site inspections set to commence on September 28, 2010 must be denied. The Court need look no further than its own directive and Order on September 27, 2010, adjourning those scheduled inspections in contemplation of plaintiffs' change in counsel and anticipated mutual efforts by parties to work out

16

an acceptable scope of work and schedule governing future property inspections. Respectfully, through no fault of plaintiffs, those efforts failed. Moreover, defendants have made no effort to address Local Rules 37.1 or 83. Plaintiffs respectfully submit that they have acted in good faith at all times and with the Court's consent.

## VI. CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny defendants' Emergency Motion to Compel Entry Upon Land in its entirety, and further deny defendants' request for reimbursement of costs allegedly incurred as a result of Court permitted cancellation of site inspections.

Date: October 14, 2010

                                            NAPOLI BERN RIPKA & ASSOCIATES, LLP
                                            *Attorneys for Plaintiff*

                                            _____
                                            W. Steven Berman, Esq. (PA#45927)
                                                       *Admission pending*
                                            Leslie L. Lewis, Esq. (NY4002036)
                                            Tate J. Kunkle, Esq. (NY4468542)
                                                    *PHV admission pending*
                                            *Attorneys for Plaintiff*
                                            One Greentree Center, Suite 201
                                            Marlton, NJ 08053
                                            (888) 529- 4669

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2010, I electronically filed the foregoing

**BRIEF IN OPPOSITION TO DEFENDANTS EMERGENCY MOTION TO COMPEL ENTRY UPON LAND**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered users. I further certify that a copy of this **BRIEF IN OPPOSITION** was sent to the following via electronic mail:

Walter A. Bunt, Jr., Esq. (PA 36738)
walter.bunt@klgates.com
Mark D. Feczko, Esq. (PA 73827)
mark.feczko@klgates.com
Amy L. Barrette, Esq. (PA 87318)
amy.barrette@klgates.com
Jeremy A. Mercer, Esq. (PA 86480)
jeremy.mercer@klgates.com

                                            Tate J. Kunkle, Esq.
                                            NAPOLI BERN RIPKA &
                                            ASSOCIATES, LLP
                                            350 Fifth Avenue, Suite 7413
                                            New York, NY 10119
                                            (212) 267-3700
                                            LLewis@NBRLawFirm.com