# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NORMA J. FIORENTINO, *et al.*,     :        09-cv-2284
:
            Plaintiffs,    :        Hon. John E. Jones III
:
           v.           :
:
CABOT OIL & GAS CORPORATION  :
and GAS SEARCH DRILLING      :
SERVICES CORPORATION,       :
:
          Defendants.

## MEMORANDUM and ORDER

### November 15, 2010

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

This action commenced on November 19, 2009, with the filing of a

complaint by several property owners to recover damages allegedly arising from

Defendants Cabot Oil and Gas Corporation ("Cabot") and Gas Search Drilling

Services Corporation's ("Gas Search") (collectively, "Defendants") operation of

natural gas wells in Dimock Township, Susquehanna County, Pennsylvania. In

the controlling Second Amended Complaint, filed on May 17, 2010, Plaintiffs

Norma J. Fiorentino, *et al.* (collectively, "Plaintiffs") assert the following causes

of action: (I) a claim pursuant to the Hazardous Sites Cleanup Act, 35 P.S. §§

1

6020.101-6020.1305 ("HSCA"); (II) negligence; (III) private nuisance; (IV) strict

liability; (V) breach of contract;  (VI) fraudulent misrepresentation; (VII) medical

monitoring trust funds; and (VIII) gross negligence.  We have diversity

jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in

controversy with respect to each Plaintiff exceeds $75,000 and is between citizens

of separate states.  Presently before the Court are Defendants' Motion to Strike

certain allegations contained in the Second Amended Complaint (Doc. 26,

"Motion to Strike") and Motion to Dismiss the Second Amended Complaint, in

part (Doc. 28, "Motion to Dismiss").  Both Motions were filed on June 1, 2010

and have been fully briefed.  (Docs. 27, 29, 31-34.)  We will dispose of both

Motions in this Memorandum and Order.

## I.      STANDARDS OF REVIEW

### A.     Motion to Dismiss

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept

all factual allegations as true, construe the complaint in the light most favorable to

the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief."  *Phillips v. County of Allegheny*,

515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292

F.3d 361, 374 n.7 (3d Cir. 2002)).  In resolving a motion to dismiss pursuant to

Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate

that defendant's liability is more than "a sheer possibility." *Iqbal*, 129 S.Ct. At

1949. "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility

of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later

formalized in *Iqbal*, a district court must first identify all factual allegations that

constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*,

550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of

truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to

dismiss. *Iqbal*, 129 S.Ct. at 1950. Next, the district court must identify "the 'nub'

of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.*

Taking these allegations as true, the district judge must then determine whether the

complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears

unlikely that the plaintiff can prove those facts or will ultimately prevail on the

merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 127 S. Ct. 1964-65, 1969 n.8).

Rule 8 "does not impose a probability requirement at the pleading stage, but

instead simply calls for enough facts to raise a reasonable expectation that

discovery will reveal evidence of the necessary element." *Id.* at 234.

**B.	Motion to Strike**

Pursuant to Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Natale v. Winthrop Resources Corp*., 2008 U.S. Dist. LEXIS 54358, 2008 WL 2758238 (E.D. Pa. July 9, 2008).  Relief under Federal Rule of Civil Procedure 12(f) is generally disfavored, and will be denied unless the allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Id.*

**II.	FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs agree that Defendants "set out a generally accurate factual and procedural history" (Doc. 32), and thus we will derive the following background information from the Defendants' Brief in Support of the Motion to Dismiss. (*See* Doc. 29 pp. 1-6.)  We note that, in accordance with the Standard of Review, we view all facts and reasonable inferences in the light most favorable to Plaintiffs as the non-moving party.

Plaintiffs are sixty-three individuals who reside, or have resided, in the towns of Dimock and Montrose, Pennsylvania.  Plaintiffs allege they executed

leases with Cabot, giving Cabot the right to extract natural gas from their properties. Plaintiffs allege that Defendants improperly conducted hydrofracturing[1] and other natural gas production activities that allowed the release of methane, natural gas, and other toxins onto Plaintiffs' land and into their groundwater. In support of the eight counts alleged in the Second Amended Complaint, Plaintiffs maintain that they have experienced property damage and physical illness, that they live in constant fear of future illness, and that they suffer severe emotional distress. Thus, Plaintiffs request an injunction prohibiting future natural gas operations, and seek compensatory and punitive damages, the cost of future health monitoring, attorneys' fees and costs, and any other appropriate relief.

In their Motion to Dismiss, Defendants allege that Counts One (HSCA), Four (strict liability), Seven (medical monitoring trust fund), and Eight (gross negligence) must be dismissed for failures to state claims upon which relief could be granted. (*See* Doc. 29 p. 4.) Defendants also seek to strike from the Second Amended Complaint the following allegations: (1) Plaintiffs' alleged injuries and damages based on "fear of future physical illness" in subparagraph 51.f; (2)

---

[1]Hydrofracturing is a process in which pressurized fluids are used to dislodge and release natural gas from deep underground formations.

Plaintiffs' allegations relating to emotional distress damages in paragraphs 1, 51, and on page 54 paragraph iv; (3) Plaintiffs' punitive damages allegations in paragraphs 52, 76, 125, 135, and on page 54 paragraph v; (4) Plaintiffs' allegations relating to recovery of attorneys' fees and litigation costs in paragraph 52 and on page 54 paragraph vi; and (5) Plaintiffs' allegations of "negligence *per se*" in paragraph 65.  (*See* Doc. 27 pp. 1-2.)

## III.  DISCUSSION

For the purposes of efficiency, we will first address Defendants' Motion to Dismiss (Doc. 28), and then resolve any undisposed of allegations remaining within Defendants' Motion to Strike (Doc. 26).

### A.  Motion to Dismiss

To reiterate, Defendants assert that Plaintiffs have failed to state a claim in each of Counts One, Four, Seven, and Eight, and thus seek dismissal of those Counts from the Second Amended Complaint.  We will address each Count in turn.

#### 1.  Count One – HSCA

Defendants argue that Plaintiffs' cause of action asserted under the HSCA must be dismissed because Plaintiffs have failed to plead the two following requirements: (1) that they gave sixty days' notice before commencing suit and (2)

the Pennsylvania Department of Environmental Protection ("DEP") is not diligently prosecuting the alleged violations. (Doc. 29 p. 8.)

First, Defendants assert that Plaintiffs' cause of action under the HSCA arises solely from allegations of personal injury and property damage, and that all other allegations under Sections 507, 702, and 1101 of the HSCA regarding incurrence of response costs are bald, legal conclusions that the Court need not credit. Therefore, because Plaintiffs failed to provide notice sixty days before suing, their claims must fail under the HSCA. Plaintiffs respond that Defendants misrepresent Plaintiffs' cause of action under the HSCA because their claim was brought under Section 702 of the HSCA and thus pre-suit notice was not required.

Section 1115 of the HSCA provides that "[a] person who has experienced or is threatened with personal injury or property damage as a result of a release of a hazardous substance may file a civil action against any person to prevent or abate a violation of this act or of any order, regulation, standard or approval listed under this act." 35 P.S. § 602.1115(a). A plaintiff may not, however, initiate an action either prior to 60 days after giving notice of suit to the department, to the host municipality, and to the violator, or if an agency is diligently prosecuting the alleged violations. *See* 35 P.S. § 6020.1115(b). Although such notice is required in citizen suits for property damage and actual or potential bodily injury, our

colleague, the Honorable William Caldwell, held in *Two Rivers Terminal, L.P. v. Chevron USA, Inc.* that Section 1115(b)'s requirements do not apply to claims asserted under Sections 507 and 702 for response costs. 96 F. Supp. 2d 426, 429 (M.D. Pa. 2000)("In opposing CUSA's notice argument, Two Rivers asserts that CUSA misconstrues its PaHSCA claim. It is not seeking redress under 35 P.S. § 6020.1115, which requires notice before suing for personal injury or property damage. Instead, it is suing under 35 P.S. §§ 6020.702 and 6020.1101 to recover Two Rivers' past and future response costs."). Section 702 likewise lacks a requirement that a separate agency is not diligently prosecuting the alleged violation.

Section 702 of the HSCA provides that a defendant who is responsible for releasing hazardous substances is strictly liable for response costs for, among others, "(3) Other reasonable and necessary or appropriate costs of response incurred by any other person . . . (5) The cost of a health assessment or health effects study." 35 P.S. § 6020.702(a). We find that Plaintiffs have, at this stage, sufficiently alleged a claim for response costs under Section 702. The Second Amended Complaint specifically asserts that "Pursuant to Section 507, 702 and 1101 of the HSCA . . . Defendants are strictly liable for costs incurred by Plaintiffs to respond to Defendants' releases . . . of hazardous substances and contaminants,

including but not limited to the cost of a health assessment or health effects study, medical monitoring, and interest." (Doc. 25 ¶ 59.) We are aware that a court "need not credit . . . when deciding a motion to dismiss" a bare legal conclusion. (Doc. 29 p. 10 (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 606 (3d Cir. 1997))). However, the "General Allegations" section of the Second Amended Complaint alleges in detail that Defendants were responsible for causing to release hazardous substances (*see* ¶ 45), that Defendants failed to take necessary steps to remedy contaminated water supplies (*see, e.g.* ¶ 50), and that Plaintiffs have become physically sick and ill in a manner that could continue (*see, e.g.* ¶ 51). We find that Plaintiffs have pleaded facts that state a "plausible claim for relief" under Section 702's response cost provisions, and thus neither the lack of notice nor prosecution by DEP is fatal to Plaintiffs' HSCA claim. Accordingly, we shall not dismiss Count One.

## 2. Count Four – Strict Liability

Defendants maintain that Count Four must be dismissed because "Pennsylvania law holds that petroleum and natural-gas related activities are ***not*** 'abnormally dangerous' or 'ultra-hazardous' and, therefore, not subject to strict liability. (Doc. 29 p. 14 (emphasis in original).) Although no Pennsylvania decision directly and affirmatively supports that proposition, Defendants have

directed us to a few cases that they allege support such an inference. *See Smith v. Weaver*, 445 Pa. Super. 461, 471, 665 A.2d 1215, 1220 (Pa. Super. 1995) (operation of underground storage tanks at a gasoline station is not an abnormally dangerous activity); *Melso v. Sun Pipe Line Co.*, 394 Pa. Super. 578, 576 A.2d 999 (Pa. Super. 1990) (reversing a lower court determination and holding that the operation of a petroleum pipeline is not an abnormally dangerous activity subject to strict liability); *Williams v. Amoco Prod. Co.*, 241 Kan. 102, 116, 734 P.2d 1113, 1123 (Kan. 1987) (holding that drilling and operation of natural-gas wells are not abnormally dangerous activities). Plaintiffs respond that, because Pennsylvania has not decided the precise issues, a decision regarding the nature of natural-gas drilling is untimely because such a determination requires detailed factual findings. Plaintiffs highlight that Pennsylvania courts have only affirmatively concluded that *storage and transmission* of gas and petroleum products are not abnormally dangerous activities, and have not decided whether gas-well *drilling and operation* are the same.

A reviewing "court must determine as a matter of law whether an activity is abnormally dangerous so that strict liability will be imposed." *Melso*, 576 A.2d at 1003. Pennsylvania courts have adopted Sections 519 and 520 of the Restatement (Second) of Torts regarding strict liability for abnormally dangerous and ultra-

hazardous activities. *See Banks v. Ashland Oil Company*, 127 F. Supp. 2d 679,

680 (E.D. Pa. January 18, 2001) ("While the common law doctrine of absolute

liability is 'less than fully settled' in Pennsylvania, the Superior Court of

Pennsylvania, in several cases, has adopted Sections 519 and 520. . . ."); *Smith v.

Weaver*, 445 Pa. Super. 461, 470-71, 665 A.2d 1215, 1219-20 (Pa. Super. 1990).

Section 519 mandates the imposition of strict liability for abnormally dangerous

activities and provides:

> § 519.  General Principle
>
> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of anyone resulting from the activity, although he has exercised the utmost care to prevent the harm.
> (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

RESTATEMENT (SECOND) OF TORTS § 519.  Section 520 sets out the factors a

court should consider in determining whether an activity is abnormally dangerous

as follows:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

RESTATEMENT (SECOND) OF TORTS § 520.

As noted by both parties, Pennsylvania courts have yet to address whether the conduct at issue *sub judice*, gas-well drilling, is an abnormally dangerous activity that is subject to strict liability under Pennsylvania law. While we understand that there is case law that suggests that other activities, such as the operation of a pipeline, are not subject strict liability, we believe it improvident to automatically extend this reasoning to drilling activities without more thorough consideration. Plainly, the record at this early juncture is insufficiently developed for the Court to render an informed decision as to whether this line of cases and the logic expressed therein should apply to the gas-well drilling activities at bar. Therefore, we will deny Defendants' Motion to Dismiss with respect to Count IV. If warranted, Defendants may reassert their argument with respect to strict liability in a motion for summary judgment, based upon what we assume will be a more fully developed record on this point, when appropriate.

### 3. Count Seven – Medical Monitoring Trust Fund

Defendants argue that Count Seven of the Second Amended Complaint must be dismissed because Plaintiffs have failed to allege the narrow

circumstances in which Pennsylvania recognizes a claim for a medical monitoring trust fund. In support, Defendants maintain that Plaintiffs merely recite the elements of such a claim in a conclusory fashion, rather than asserting facts that would satisfy the plausibility standard for a motion to dismiss.

As Defendants highlight, the Pennsylvania Supreme Court has articulated seven elements a plaintiff must establish to prevail on a claim for medical monitoring:

> (1) exposure greater than normal background levels;
> (2) to a proven hazardous substance;
> (3) caused by defendant's negligence;
> (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease;
> (5) a monitoring procedure exists that makes the early detection of the disease possible;
> (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and
> (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Redland Soccer Club, Inc. v. Dept. of the Army*, 548 Pa. 178, 696 A.2d 137, 145-46 (Pa. 1997). The Pennsylvania Supreme Court went on to note that "[p]roof of these elements will naturally require expert testimony." *Id.*

Viewing the Second Amended Complaint as a whole, an approach that Plaintiffs urge and Defendants overlook, we find that Plaintiffs have sufficiently stated a plausible common-law claim for medical monitoring. Plaintiffs have

alleged that Defendants negligently drilled wells and engaged in hydraulic fracturing that uses "fracking fluid", the composition of which "includes hazardous chemicals that are carcinogenic and toxic." (Doc. 25 ¶ 40.) Further, Plaintiffs allege that Defendants utilized other materials, such as diesel fuel, lubricating agents, and defoaming agents that likewise consist of hazardous chemicals. (*See* Doc. 25 ¶ 41.) Plaintiffs maintain that these operations were performed within close proximity to their homes, thus exposing Plaintiffs to these hazardous substances. Plaintiffs also allege:

> that elevated levels of dissolved methane are present in their well water (*Id.* ¶ 45(b)); that pollutants and industrial and/or residual waste were discharged into the ground and waters near the Plaintiffs' homes and water wells (*Id.* ¶ 45(e)); that diesel fuel was spilled on the ground near Plaintiffs' homes and water wells (*Id.* ¶ 45(f)); that drilling mud was caused to be discharged into diversion ditches near Plaintiffs' homes and water wells (*Id.* ¶ 45(g)); and three significant spills of pollutants were caused to occur within the Dimock gas well area within a ten-day period.

(Doc. 31 p. 14.) Plaintiffs aver that parties have manifested neurological, gastrointestinal, and dermatological symptoms and blood study results consistent with toxic exposure. Although a much greater showing is required to actually prove this claim, including expert testimony, we find that, at this stage in the litigation, Plaintiffs have sufficiently alleged plausible facts necessary to support a

claim for medical monitoring.  We will thus deny Defendants' Motion to Dismiss with respect to Count Seven.

### 4.    Count Eight – Gross Negligence

Plaintiffs do not dispute that any cause of action for gross negligence should be dismissed because that cause of action is not recognized under Pennsylvania law.  (*See* Doc. 31 p. 17; Doc. 29 p. 21.)  Nonetheless, Plaintiffs assert that the underlying allegations supporting its now abandoned gross negligence claim should remain as support for Plaintiffs' claim for punitive damages.  We perceive no basis upon which to disallow Plaintiffs' request.  Therefore, to the extent that the Second Amended Complaint can be construed to assert a *cause of action* for gross negligence we shall dismiss Count Eight as a cause of action.  However, for the reasons discussed in Section III.B.1, below, we shall allow Plaintiffs to retain the pertinent allegations within Count Eight to support their claim for punitive damages.

### B.    Motion to Strike

In addition to the claims that Defendants seek to dismiss, they also seek to strike from the Second Amended Complaint any allegations regarding entitlement to the following forms of relief: damages for fear of future illness; damages for emotional distress; punitive damages; and attorneys' fees and litigation costs.  (*See*

16

Doc. 27.)  Defendants further request that the Court strike Plaintiffs' allegations regarding negligence *per se*.  (*See id.*)  We will address each of these areas in turn.

## 1.      Damage Allegations

First, Defendants assert that Plaintiffs' allegations regarding fear of future illness and emotional distress are immaterial and impertinent because Pennsylvania law does not allow recovery of these damages without some manifestation of actual physical injury.[2]  Therefore, Defendants maintain that subparagraph 51.f, paragraph 1, subparagraph 51.g, and paragraph iv on page 54 must all be stricken from the Second Amended Complaint.

Subparagraph 51.f alleges that "Plaintiffs live in constant fear of future physical illness, particularly with respect to the health of their minor children and grandchildren."  (Doc. 25 ¶ 51.f.)  Subparagraph 51.g further provides that "Plaintiffs live in a constant state of severe emotional distress consistent with post traumatic stress syndrome."  (Doc. 25 ¶ 51.g.)  We find that these allegations are neither impertinent nor immaterial.  It is beyond peradventure that Pennsylvania law requires a physical manifestation of an injury to recover damages for fear of future illness, *see Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232, 237-38 (Pa.

---

[2]Because the underlying objections to the inclusion of these two, separate allegations are identical, we will address both allegations with the same analysis.

1996); however, Plaintiffs have indeed expressly alleged such physical injury. For example, in the immediately preceding subparagraph, Plaintiffs assert that they "have been caused to become physically sick and ill, manifesting neurological, gastrointestinal and dermatological symptoms, as well as demonstrating blood study results consistent with toxic exposure. . . ." (Doc. 25 ¶ 51.e.) As we found in Section III.A.3 above, the Second Amended Complaint as a whole demonstrates that some, even if not all,[3] Plaintiffs have suffered actual, physical injury that could plausibly be the proximate result of Defendants' action. Thus, damages for fear of future illness and for emotional distress should not be stricken for a lack of allegations regarding physical injury, and we will deny Defendants' Motion to Strike with respect to those allegations.

Second, Defendants assert that Plaintiffs have failed to plead facts to support an award of punitive damages, and therefore all allegations regarding such damages must be stricken as a matter of law. Pennsylvania has adopted the

---

[3]We are cognizant of Defendants' argument that Plaintiffs have failed to identify which individual Plaintiff suffers from which exact symptoms and note that, if the Second Amended Complaint was elsewhere deficient, these somewhat imprecise allegations might have been insufficient to demonstrate any entitlement to relief. However, viewing the well-pleaded allegations of the Second Amended Complaint as a whole, we find that physical illnesses of Plaintiffs have been pleaded with sufficient particularity to put Defendants on notice of the relevant claims. Defendants will have the opportunity to fully develop the record in this regard via discovery, and after they do so will be free to reassert any legal arguments related to a failure by any Plaintiff to show a physical manifestation of his or her injury.

Restatement (Second) of Torts with respect to punitive damages. As such, in Pennsylvania, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." RESTATEMENT (SECOND) OF TORTS § 908(2). Defendants assert that "engaging in a legitimate business can hardly be viewed as evil, outrageous, or indifferent" (because Defendants were engaging in the lawful activity of extracting natural gas pursuant to leases). However, we find this argument to be entirely disingenuous because the crux of the action involves Defendants' alleged negligent performance of that lawful activity. While the Second Amended Complaint may not contain facts that would demonstrate an evil intent or motive on behalf of the Defendants, it does allege that Defendants were grossly negligent in the operation and drilling thus subjecting Plaintiffs to many harms. Therefore, we will not strike from the Second Amended Complaint Plaintiffs' allegations regarding punitive damages.

Finally, Defendants challenge Plaintiffs' pleadings regarding attorneys' fees and costs. While it is "well-settled under Pennsylvania law that 'a plaintiff generally may not recover attorneys' fees in a tort action[]'" (Doc. 27 p. 11 (quoting *Holland v. Hardee's Food Sys., Inc.*, 853 F. Supp. 848, 851 (E.D. Pa. 1994))); at such an early stage in the proceedings is impossible to determine that

there are no circumstances where an award of fees or litigation costs would be appropriate. We therefore will not strike such allegations from the Second Amended Complaint.

## 2. Negligence *Per Se*

Defendants maintain that all allegations regarding negligence *per se* must be stricken from the Second Amended Complaint because Plaintiffs merely, (and thus inadequately), allege a violation of a statute and fail to allege other, required elements of such a claim.

Negligence *per se* is a tool with which a plaintiff establishes two of the four required elements of a negligence claim: duty and breach. *See J.E.J. v. Tri-County Big Brothers/Big Sisters*, 692 A.2d 585 (Pa. Super. 1997). In Pennsylvania, negligence *per se* is defined as:

> conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances. Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence *per se*. . . . In order to prove a claim based on negligence *per se*, the following four requirements must be met: (1) the purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally; (2) The statute or regulation must clearly apply to the conduct of the defendant; (3) The defendant must violate the statute or regulation; (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Wagner v. Anzon, Inc.*, 453 Pa. Super. 619, 684 A.2d 570, 574 (Pa. Super. 1996)

(internal citations omitted).  Defendants assert that Plaintiffs have solely alleged a

"laundry list" of statutory violations and fail to assert that the relevant statutes

were intended to protect Plaintiffs or that the alleged violations proximately

caused Plaintiffs' injuries.  Defendants do not, however, dispute that the relevant

statutes were directed at Defendants' conduct, namely the operation of gas-well

drilling activities.

We find that Plaintiffs' allegations regarding negligence *per se* are neither

impertinent nor immaterial to the Second Amended Complaint.  Rather than

having "no possible relation to the controversy", *see Natale v. Winthrop Resources*

*Corp.*, 2008 U.S. Dist. LEXIS 54358, 2008 WL 2758238 (E.D. Pa. July 9, 2008),

the allegations of negligence *per se* are well-pleaded and, if proven, entirely

relevant to Plaintiffs' negligence claim.  Thus, we will deny Defendants' Motion

to Strike in this final respect.

## IV.    CONCLUSION

For the reasons articulated above, we find that Plaintiffs have sufficiently

stated a claim upon which relief could be granted in Counts One, Four, and Seven

of the Complaint.  We will therefore deny the Motion to Dismiss (Doc. 28) with

respect to those claims.  We further find that Plaintiffs' cannot assert a cause of

action for gross negligence; but the relevant allegations are material to a claim for punitive damages and thus will not fall away along with the that dismissed claim. Finally, we find no grounds to strike the portions of the Second Amended Complaint that Defendants contest, and will therefore deny Defendants' Motion to Strike (Doc. 26) in its entirety.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. Defendants' Motion to Strike (Doc. 26) is **DENIED**;

2. Defendants' Motion to Dismiss (Doc. 28) is **GRANTED IN PART** and **DENIED IN PART** to the following extent:

    a. Count Eight of the Second Amended Complaint (Doc. 25) for gross negligence is **DISMISSED** as a separate cause of action;

    b. Defendants' Motion to Dismiss is denied in all other respects.

<u>/s/ John E. Jones III</u>
John E. Jones III
United States District Judge