## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMA J. FIORENTINO, *et al.*, | : | 3:09-CV-2284 |
| | : | |
| Plaintiffs | : | Hon. John E. Jones III |
| | : | |
| v. | : | Special Master |
| | : | Jennifer Walsh Clark |
| CABOT OIL & GAS CORPORATION | : | |
| and GAS SEARCH DRILLING | : | |
| SERVICES CORPORATION, | : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM AND ORDER</u>

Ripe for disposition is the (second) motion of non-party Deborah Maye filed on January 31, 2012 for a protective order and/or to quash a subpoena issued to her by Plaintiffs' counsel commanding her appearance at a deposition on February 8, 2012.  (Doc. 264).   That deposition was postponed pending resolution of the instant motion.  Pursuant to an expedited briefing schedule, Counsel for Mrs. Maye submitted a brief in support of the motion on February 7, 2012 (Doc. 266), and Defendants supported the motion with a brief on that same date[1] (Doc. 265). Plaintiffs opposed the motion on February 17, 2012 (Doc. 276), and Mrs. Maye

---

[1] Defendants requested to participate in the briefing in support of Mrs. Maye's motion, ostensibly to bring to the Court's attention any resultant prejudice particular to defendants should Mrs. Maye's motion be denied. However, the arguments raised by Defendants' submission mirror those raised by counsel for Mrs. Maye, and need not be addressed independently here.

replied to Plaintiffs' opposition on February 24, 2012 (Doc. 278).  For the reasons that follow, Mrs. Maye's motion will be granted.

By way of background, this civil action was commenced in 2009 by multiple plaintiffs who assert various claims against Defendants premised upon alleged water contamination resulting from Defendants' Marcellus Shale gas well drilling activities in or around Dimock, Pennsylvania.  According to the parties, Mrs. Maye lives in Dimock ("Maye property"), and her property neighbors that of the Sautners, who are included among the plaintiffs in this action.

Plaintiffs' submissions allege that the Maye property suffered contamination as a result of Defendants' drilling activities, that the Maye property was included among a number of other properties involved in a proceeding before the Pennsylvania Department of Environmental Protection, and that Mrs. Maye had a number of interactions with defendants relating to alleged water contamination. Consequently, Plaintiffs seek (and have sought for some months) to compel Mrs. Maye's attendance at a deposition by virtue of a subpoena ad testificandum.

In the context of discovery, Plaintiffs caused one such aforementioned subpoena ad testificandum to be "served" upon Mrs. Maye on September 26, 2011. Due to lack of proper service, I granted Mrs. Maye's first motion for a protective order and/or to quash the subpoena on January 5, 2012 (docketed on January 6 as Doc. 246), without prejudice to Plaintiffs to properly serve Mrs. Maye "pursuant to

2

applicable Federal and Local Rules of Court and the Court's scheduling order then in effect."   Doc. 246, p. 12.

Plaintiffs then caused a second subpoena to be "served" upon Mrs. Maye on January 19, 2012 by having a process server deliver it to her home, where it was handed to her son along with the required witness fee, but only part of the required mileage fee (apparently Plaintiffs provided Mrs. Maye with only one way mileage rather than round trip mileage).   Doc. 266, p.3.   That subpoena commanded Mrs. Maye's appearance at a deposition on February 8, 2012 ("second subpoena").

At that time, the Court's scheduling order closed the fact discovery period on January 16, 2012.  Mrs. Maye argues, in part, that because fact discovery had closed at the time the second subpoena was delivered to Mrs. Maye's home and prior to the scheduled deposition date, the subpoena should be quashed.  However, on February 13, 2012, Defendants and Plaintiffs filed a joint motion to extend the fact discovery deadline (Doc. 270), which the Court granted on February 14, 2012. (Doc. 271).  Fact discovery is now scheduled to conclude on May 31, 2012, with expert discovery also being extended as reflected in the Order. Id.

In Mrs. Maye's motion, she argues that the second subpoena should be quashed and/or a protective order issued on the following grounds: (1) the subpoena is invalid because it was not delivered to her personally, but handed to her son; (2) the subpoena was 'served' and commanded Mrs. Maye's appearance at

a deposition after the close of fact discovery; (3) the subpoena was not 'served' with the requisite mileage fee; and (4) the deposition commanded by the subpoena is not "intended to lead to the discovery of admissible evidence," but rather to harass Mrs. Maye and her family.  Doc. 266, p. 4.

Plaintiffs counter that discovery deadlines have been extended by the Court, mooting one of Mrs. Maye's arguments, and that, in any event, Mrs. Maye is intentionally evading proper service, frustrating as many as six attempts to personally deliver a subpoena to her at her home.  Doc. 276, p.3.  Finally, Plaintiffs dispute that the deposition is designed to harass Mrs. Maye, asserting that, as the Sautners' neighbor, Mrs. Maye has relevant information relating to the condition of the water on her property prior to Cabot's drilling activities, the effectiveness of a "whole house gas treatment system" installed on her property intending to mitigate water contamination, and her various interactions with representatives of Cabot Oil & Gas, among other areas of purported inquiry.  Doc, 276, pp. 3, 7-8.

<u>Analysis</u>

Federal Rule of Civil Procedure 45 governs subpoena practice in federal court, while Rule 26 governs the duty to disclose and general provisions relating to discovery.   As is relevant here, Rule 45(b)(1) provides that "[a]ny person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that

person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law."

As noted above, this is Mrs. Maye's second motion for a protective order/to quash a subpoena issued by Plaintiffs' counsel commanding her attendance at a deposition.  In the first such motion, Mrs. Maye argued that the subpoena was not served in accordance with applicable rules because it was not personally delivered to her, lacked payment of the mileage fee, and was "issued as part of an ongoing campaign of harassment against the Maye Family by certain Plaintiffs, the Sautner Family, and [was] not intended to lead to the discovery of admissible evidence." Doc. 186, para. 4.  The January 5 Order (docketed on January 6, 2012, Doc. 246) granted Mrs. Maye's motion on the basis that Rule 45(b)(1) requires delivery to the person named in the subpoena, along with payment of the appropriate witness and mileage fees.  Doc. 246.  Having concluded that the subpoena was invalid due to improper service, the issue of alleged harassment was not addressed in detail in the January 5 decision.

For the very same reasons cited in the Order granting Mrs. Maye's first motion to quash or for protective order, Mrs. Maye's second motion must also be granted, without prejudice to Plaintiffs to effectuate proper service of a subpoena in accordance with applicable rules and the Court's scheduling order.  However, Plaintiffs' claim that Mrs. Maye has evaded no fewer than six attempts at proper

service in an effort to frustrate Plaintiffs' ability to serve the subpoena in accordance with applicable Federal Rules warrants treatment here, as does Mrs. Maye's argument that the deposition is intended as a means of harassment, and not for the purposes of legitimate discovery in the litigation context.

At this juncture, there is not sufficient evidence in the record to support a conclusion that Mrs. Maye is actively and intentionally evading service of the subpoena issued by Plaintiffs.  However, the repeated unsuccessful attempts to serve Mrs. Maye with a subpoena at her home, coupled with Mrs. Maye's counsel's representation that certain Plaintiffs and the Maye family have a "tense" relationship (for lack of a better description), certainly raise questions about the legitimacy of her repeated absences at the very moment service has been attempted – six times.  Nevertheless, Mrs. Maye has retained able counsel to represent her in these proceedings.  The Court's expectation is that Plaintiffs' counsel and Mrs. Maye's counsel will promptly and professionally communicate regarding any service issues to avoid wasting any further time or resources, should Plaintiffs choose to move forward with commanding Mrs. Maye's appearance at a deposition by a properly crafted and served subpoena and under the circumstances outlined herein.

Federal Rule of Civil Procedure 26(b)(1) provides that "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain

discovery regarding any non-privileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." Fed.R.Civ.P. 26(b)(1).

As for Mrs. Maye's assertion that the deposition desired by Plaintiffs is solely intended to harass her rather than to seek discoverable information, the parties' submissions indicate that Mrs. Maye possesses information relating both to the parties' claims as well as their defenses and, consequently, her deposition cannot be characterized as wholly without purpose authorized by applicable discovery rules.

More specifically, and by way of example only, Mrs. Maye is a neighbor of certain Plaintiffs in the case, and the Maye's property was included among those properties allegedly impacted by drilling activities, which properties were the subject of proceedings before the Pennsylvania Department of Environmental Protection.  Plaintiffs claim that the Mayes accepted a "whole-house gas treatment

system" designed to mitigate water contamination issues, which Plaintiffs maintain plays a role in the litigation.  The characteristics of Mrs. Maye's water based on her personal observations, as a property neighboring Sautners, may also be relevant to Defendants' position that naturally occurring methane in the water in Dimock predated any drilling activities by Cabot Oil & Gas Corporation.

In sum, deposing Mrs. Maye meets the stated requirements in Rule 26 that the discovery sought be non-privileged and relevant to the parties' respective claims and defenses.  In any event, Mrs. Maye is in possession of information relevant to the subject matter of the litigation – a separate metric of permissible discovery pursuant to Rule 26.

The inquiry, however, does not end here, in light of Mrs. Maye's request for a protective order limiting the discovery sought as unreasonably duplicative/cumulative and unduly harassing.  Rule 26(b)(2)(C) authorizes the Court to limit discovery if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties'

resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

Further, Rule 26(c)(1) states that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending --or . . . in the court for the district where the deposition will be taken. *The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action*". Fed.R.Civ.P. 26(c)(1)(emphasis added).  This requirement to conduct a good faith conference, italicized above for emphasis, will be addressed in more detail *infra.*

Rule 26(c)(1) further provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial

information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs."

Lastly, Rule 26(c)(2) states that "[i]f a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery."

In such cases, for good cause, the Court may issue a protective order that limits the scope of the discovery sought against third parties by subpoena. See Wedgewood Vill. Pharmacy, Inc. v. United States, 421 F.3d 263, 268 n.5 (3d Cir. 2005); Duffy v. Kent County Levy Court, 2011 U.S. Dist. LEXIS 57825, *14-15 (D. Del. May 31, 2011) (citing Royal Surplus Lines Ins. Co. v. Sofamor Danek Gp., 190 F.RD. 463, 467 (W.D. Tenn. 1999) ("[C]ourts have been inclined to limit the scope of discovery directed to non-parties in order to protect the non-party from harassment, inconvenience, or disclosure of confidential documents."), and Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct. S. Dist. Iowa,482 U.S. 522, 566, 107 S. Ct. 2542, 96 L. Ed. 2d 461 (1987) (under Rule 26, "[a] court may make any order which justice requires to limit discovery, including an order permitting discovery only on specified terms and conditions, by a particular discovery method, or with limitation in scope to certain matters")).

While Mrs. Maye seeks to quash the deposition entirely because the information Plaintiffs intend to request is purportedly available from Plaintiffs themselves or from Defendants, this characterization misses the mark. In essence, Mrs. Maye aims to force Plaintiffs to accept as the full universe of discoverable information only that which Plaintiffs experienced and Defendants represented and produced to them during discovery thus far.

However, when assessing a motion to quash, courts must consider the fact that "Rule 26(b)(1) provides that discovery need not be confined to matters of admissible evidence but may encompass that which 'appears reasonably calculated to lead to the discovery of admissible evidence.' Fed.R.Civ.P.26(b)(1). Relevancy is to be broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). Rather, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action." Lefta Assocs. v. Hurley, 2011 U.S. Dist. LEXIS 50683 (M.D. Pa. May 11, 2011).

While the scope of 'relevance' in the context of discovery "is far broader than that allowed for evidentiary purposes, . . . it is not without limits." The determination of relevance is within the discretion of the district court. See Louisiana Wholesale Drug Co. v. Becton Dickinson & Co. (In re Hypodermic

11

Prod. Direct Purchaser Antitrust Litig.), 2006 U.S. Dist. LEXIS 89353, 11-12 (D.N.J. Sept. 7, 2006) (internal citations omitted).

Here, the general topics of inquiry subject to discovery by virtue of Mrs. Maye's deposition have been presumed by her to overlap with a portion of the information already sought and perhaps exchanged as between Defendants and others with Plaintiffs. Yet, the Court is in no position to positively determine that such is the case, since the record provides no basis upon which such a conclusion may comfortably rest. Not to mention that, even so, recollections by and between two parties may, and often can, differ. Relevant documentation may exist, or communications may have been made which Defendants do not possess or of which Defendants were not aware. In short, to pidgeon-hole the information potentially possessed by Mrs. Maye which is relevant to the subject matter of the litigation into that narrow trench of information already shared or discovered during the litigation of this action is a presumption lacking a sufficient evidentiary basis in the record at this time.

Additionally, while Mrs. Maye asserts that she is "not qualified or trained to offer testimony interpreting" water test results, the Federal Rules of Evidence clearly permit a lay witness to testify in the form of an opinion that is "rationally based on the witness's perception." Fed.R.Evid. 701. Moreover, on this point, Mrs. Maye may be juxtaposing "admissibility" with "relevance" and "weight of

the evidence" analyses – which inquiries will happen at trial, not during discovery. Therefore, questions eliciting opinion testimony based upon her personal perceptions rather than, for example, requesting a scientific methodological or substantive interpretation of hydrogeological or chemical data, would be permissible.

Finally, Mrs. Maye states that she has not yet been identified in this case as a person with information relevant to the claims or defenses of the parties, and more specifically has never once been identified in "a single interrogatory response" or "during depositions" as a person having information relevant to this case.  This, according to Mrs. Maye, supports the conclusion that Plaintiffs' motivation for commanding her appearance at a deposition is transparently illegitimate.

While the tumultuous relationship between the Maye Family and the Sautner Family may, in fact, amount to good cause to limit the discovery sought from Mrs. Maye in this action (although the record on this point is unverified by her), it would be difficult, if not impossible, to conceive of designing acceptable topics of inquiry for the deposition in advance and in black and white given the breadth of the issues in this case and the fluidity with which depositions must, by virtue of their very nature, proceed.  It is an equally Herculean task to attempt to codify "off-limits" topics given the alleged range of issues between the deponent and the Sautners, then hone the topics/questions to the point that potential harassment can

be avoided with any certainty, all while weighing the potential need to explore any possible bias on the part of the deponent.

At this juncture, it is fitting to point out that Rule 26(c)(1) relating to protective orders requires (for excellent reasons) that the movant certify that he has, "in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." The reason for this rule seems quite plain, yet without the parties having done so –as is the case here - the Court is left without sufficient information to evaluate and, if necessary, craft specifically tailored discovery parameters to avoid any purported inappropriate harassment of the deponent.

Nonetheless, at the risk of stating the obvious, the Court takes allegations of harassing conduct extremely seriously. Any established conduct constituting harassment or improper contact with a witness resulting from or in relation to this litigation – as against any affected party/person - shall be met, no doubt, with an appropriately meaningful consequence.

Both Plaintiffs and Mrs. Maye are represented by counsel. Members of the bar of this Court, and those with special permission to practice before it, are required to adhere to controlling ethical obligations and professional standards when and while representing their respective clients. This Court has every expectation that counsel for Mrs. Maye will ably represent her during any

deposition, and that Plaintiffs' counsel will conduct the deposition professionally. Of course, although this too goes without saying, failure of any counsel to do so will not be met lightly given the record on this issue thus far.

Finally, Mrs. Maye has requested that the Special Master attend her deposition, should it go forward, to ensure that proper boundaries, i.e., applicable rules of civil procedure and evidence, are applied consistently, and that any planned or spontaneous harassment is kept in check. Although not generally a typical resolution to a protective order motion, this is not a typical situation. I have, in this case, attended and been scheduled to attend certain depositions of an unusual or uncommon nature in order to promptly resolve any objections with an eye toward effectuating a more timely progression of the discovery process and, ultimately, to conserve resources. Therefore, should Plaintiffs properly serve Mrs. Maye with a subpoena ad testificandum, counsel for Mrs. Maye, Plaintiffs and Defendants shall immediately confer in good faith as to any possible limitations on the scope of her deposition. In such a case, counsel shall promptly report as to whether an agreement acceptable to all parties can be reached. In the event that the good faith conference yields no such agreement, I will attend any future deposition of Mrs. Maye to facilitate the prompt resolution of any objections raised.

IN LIGHT OF THE FOREGOING, IT IS HEREBY ORDERED THAT Mrs. Maye's Motion for Protective Order and/or to Quash Subpoena (Doc. 262) is GRANTED without prejudice to Plaintiffs to reissue and properly serve said subpoena ad testificandum pursuant to applicable Federal and Local Rules as well as the Court's Scheduling Order currently in effect, and under the conditions described in the foregoing Memorandum and Order.


March 20, 2012                                    /s Jennifer Walsh Clark
Date                                              Jennifer Walsh Clark
                                                  Special Master