DEP Violation & COAS.

**EXHIBIT 10**

 Pennsylvania Department of Environmental Protection

**230 Chestnut Street**
**Meadville, PA 16335-3481**
February 27, 2009

**Northwest Regional Office**

814-332-6860
Fax: 814-332-6121

### NOTICE OF VIOLATION

**CERTIFIED MAIL NO. 7008 1830 0000 6962 9595**

Mr. Thomas Liberatore
Vice President
Cabot Oil & Gas Corporation
900 Lee Street, Suite 500
Charleston, WV 25301

Re:   Gas Migration Investigation
Dimock Township, Susquehanna County

Dear Mr. Liberatore:

As you are aware, the Department has been conducting a gas migration investigation in the vicinity of your drilling activities in Dimock Township, Susquehanna County. During the course of our investigation, the Department has documented that Cabot Oil and Gas Corporation is responsible for the following violations of the Clean Streams Law, 35 P.S. §691.1, *et seq.*; the Oil and Gas Act, 58 P.S. §601.101, *et seq.*; and the rules and regulations promulgated under these statutes:

1.   **Unpermitted discharge of polluting substances.**

   Our investigation revealed that Cabot has caused or allowed the unpermitted discharge of natural gas, a polluting substance, to waters of the Commonwealth. This is a violation of Section 401 of the Clean Streams Law, 35 P.S. §691.401, which provides:

   "It shall be unlawful for any person or municipality to put or place into any of the waters of the Commonwealth, or allow or permit to be discharged from property owned or occupied by such person into any waters of the Commonwealth, any substance of any kind or character resulting in pollution as herein defined."

2.   **Failure to prevent gas from entering fresh groundwater.**

   Our investigation revealed that Cabot had caused or allowed gas from lower formations to enter fresh groundwater. This is a violation of 25 Pa. Code §78.73, which provides:

   "The operator shall prevent gas and other fluids from lower formations from entering fresh groundwater."

Mr. Thomas Liberatore                          -2-                        February 27, 2009

3.      **Failure to submit well record and completion reports**.

An in-office review of our records documented that Cabot had failed to submit well records and/or completion reports to the Department within 30 days of cessation of drilling for the following wells:

Not submitted within 30 days:

| | | | |
|---|---|---|---|
| 115-20026 | Baker 1 | 115-20019 | Gesford 3S |
| 115-20048 | Black 1H | 115-20019 | Gesford 3 |
| 115-20056 | Black 2H | 115-20008 | Greenwood 1 |
| 115-20051 | Brooks 1H | 115-20050 | Heitsman 1H |
| 115-20036 | Costello 1 | 115-20039 | Hubbard 1 |
| 115-20043 | Costello 2 | 115-20035 | Lewis 1 |
| 115-20049 | Ely 1H | 115-20030 | Lewis 2 |
| 115-20015 | Ely 2 | 115-20007 | Teel 1 |
| 115-20034 | Ely 4 | 115-20010 | Teel 2 |
| 115-20041 | Ely 6H | 115-20024 | Teel 5 |
| 115-20033 | Gesford 2 | 115-20011 | Teel 6 |
| 115-20023 | Teel 7 | | |

Not yet submitted:
115-20029    Ely 1

Cabot's failure to submit well records and/or completion reports for the above-listed wells within 30 days of cessation of drilling is in violation of 25 Pa. Code §78.122.

4.      **Failure to submit plugging certificate**.

An in-office review of our records documented that Cabot had failed to submit the certificate of plugging within 30 days for the following well:

115-20019    Gesford 3A

Cabot's failure to submit the certificate of plugging within 30 days after the above-listed well had been plugged is a violation of 25 Pa. Code §78.124.

Mr. Thomas Liberatore                          -3-                          February 27, 2009

Additionally, due to continuing safety concerns for residents in the area of the subject gas migration as evidenced by elevated levels of free methane and/or dissolved methane gas, the Department is requesting that Cabot take the following actions:

1.      Install methane gas detectors in appropriate living spaces of the following residences:

- William and Sheila Ely
- Michael Ely
- Nolan (Scott) Ely
- Victoria Hubert
- Craig and Julie Sautner
- Ronald and Jean Carter Sr.
- Timothy and Debborah Maye
- Norma Fiorentino
- Ed and Becky Burke

2.      Continue to provide alternate sources of water to the following residences until the Department determines that the alternate water supplies are no longer necessary to assure residents' safety:

- William and Sheila Ely
- Michael Ely
- Nolan (Scott) Ely
- Victoria Hubert

3.      Provide to the Department all analytical results for samples taken by Cabot from area water supplies in conjunction with the gas migration investigation. Please note that it is the Department's intent to also provide Cabot with all related sample results gathered by the Department during the course of its investigation. Moreover, some residents have indicated that Cabot has not provided any of their sample results to them. If this is the case, copies of appropriate results should be furnished to owners of water supplies where samples have been taken.

Please notify me in writing within 10 days of your receipt of this notice, as to your intentions in this matter. The Department further requests that Cabot submit to the Department a plan that it intends to implement to resolve the violations identified above by March 13, 2009. Additionally, the plan should include dates by when Cabot intends to implement the Department's request for actions identified above. As previously conveyed to Cabot, the Department would also like to convene a meeting with Cabot representatives at our Northwest Regional Office to discuss Cabot's current and future drilling program in Pennsylvania. Please contact me with dates that Cabot will be available in the near future to meet.

Mr. Thomas Liberatore                    -4-                    February 27, 2009

This Notice of Violation and request for actions is neither an order nor any other final action of the Department of Environmental Protection. It neither imposes nor waives any enforcement action available to the Department under any of its statutes. If the Department determines that an enforcement action is appropriate, you will be notified of the action.

If you have any questions concerning the above, please contact me.

Sincerely,

S. Craig Lobins
Regional Manager
Oil and Gas Management

cc:    Mike O'Donnell
       Paul Kucsma
       Tony Oprendek
       Doug Welsh
       Herb Karlinsey
       Michael Braymer
       Jennifer Means – NCRO File
       NWRO File

SCL:jb

## COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF ENVIRONMENTAL PROTECTION

In the matter of:

Cabot Oil & Gas Corporation          :          Cessation of Hydraulic-Fracturing,
Susquehanna County                   :          Activities

### ORDER

NOW, this September 24, 2009, the Commonwealth of Pennsylvania, Department of Environmental Protection (hereinafter "Department") has determined the following findings of fact and conclusions of law:

A.    The Department is the administrative agency vested with the authority and responsibility to administer and enforce the requirements of: The Clean Streams Law, Act of June 22, 1937, P.L. 1987, as amended, 35 P.S. § 691.1 et seq. (hereinafter "Clean Streams Law"); the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, as amended, 35 P.S. § 6018.101 et seq. (hereinafter "Solid Waste Management Act"); the Oil and Gas Act, Act of December 19, 1984, P.L. 1140, No. 223, as amended, 58 P.S. § 601.101 et seq. (hereinafter "Oil and Gas Act"); Section 1917-A of the Administrative Code, Act of April 9, 1929, P.L. 177, as amended, 71 P.S. § 510-17 (hereinafter "Administrative Code"); and the rules and regulations promulgated thereunder.

B.    Cabot Oil & Gas Corporation (hereinafter "Cabot Oil & Gas Corporation") is a Delaware corporation authorized to do business in Pennsylvania which maintains a business address of 900 Lee Street East, Suite 500 Huntington Square, Charleston, West Virginia 25301.

C.    Cabot Oil & Gas Corporation is the "owner" and "operator", as those terms are defined in Section 103 of the Oil and Gas Act, 58 P.S. § 601.103, of one hundred twenty-eight (128) Department authorized natural gas well sites located in Susquehanna County, Pennsylvania, identified by the Department's Environmental Facility Application Compliance Tracking System (eFACTS) as being in either an active, cancelled, expired, or void status and listed in Attachment 1 of this Order.

D.    Included in Attachment 1 of this Order is the Heitsman 4-H NW Well, permit number 115-20162 (hereinafter "Heitsman 4-H NW Well").

E.    At approximately 2:00 PM in the afternoon of September 16, 2009, approximately 840 to 2,100 gallons of a water/liquid gel mixture was spilled at the Heitsman 4-H NW Well during hydraulic-fracturing activities.    The Department oversaw on scene personnel's containment and cleanup activities to mitigate environmental and safety hazards at the Heitsman 4-H NW Well.

F.    At approximately 8:00 PM in the evening of September 16, 2009, another spill of approximately 5,880 gallons of water/liquid gel mixture was spilled at the Heitsman 4-H NW Well during hydraulic-fracturing activities as a result of a failed O-ring in a 12 inch pipe connection.  The water/liquid gel mixture flowed down gradient to an adjacent wetland and ultimately to Stevens Creek, a water of the Commonwealth.

G.    During the morning of September 17, 2009, the Department observed both stressed and dead fish in Stevens Creek down gradient from the Heitsman 4-H NW Well and the adjacent wetlands.

H.    At approximately 6:30 AM in the morning of September 22, 2009, approximately 420 gallons of a water/liquid gel mixture was spilled onto the ground surface at the Heitsman 4-H NW Well during hydraulic-fracturing activities.  Cabot Oil & Gas Corporation ultimately reported that all but approximately 10 gallons of the water/liquid gel mixture spilled at the Heitsman 4-H NW Well was contained in a catch basin.

I.    As of the date of this Order, it is the Department's position that Cabot Oil & Gas Corporation has not completed adequate remedial activities to address the three water/liquid gel mixture spills that occurred September 16 and 22, 2009 at the Heitsman 4-H NW Well.

J.    The water/liquid gel mixture that spilled to the ground surface, to a wetland and to Stevens Creek constitutes industrial waste within the meaning of Section 1 of the Clean Streams Law, 35 P.S. § 691.1.

K.    The wetlands and Stevens Creek constitute waters of the Commonwealth within the meaning of Section 1 of the Clean Streams Law, 35 P.S. § 691.1.

L.    The discharge of industrial waste from the Heitsman 4-H NW Well has resulted in pollution as defined in Section 1 of the Clean Streams Law, 35 P.S. § 691.1, and constitutes violations of Sections 301 and 307 of the Clean Streams Law, 35 P.S. §§ 691.301 and 307.

M.    In addition, the September 16 and 22, 2009 spillage of water/liquid gel mixture to the ground surface, to a wetland and to Stevens Creek created pollution as that term is also defined in Section 103 of the Solid Waste Management Act, 35 P.S. § 6018.103.  The water/gel mixture spilled at the Heitsman 4-H NW Well on September 16 and 22, 2009 is a solid waste as that term is defined in Section 103 of the Solid Waste Management Act, 35 P.S. § 6018.103. Unlawful disposal of a solid waste constitutes violations of Sections 610(1) and 610(9) of the Solid Waste Management Act, 35 P.S. §§ 6018.610(1) and 610(9) as follows:

- Section 610(1) of the Solid Waste Management Act, 35 P.S. § 6018.610(1) states, in part, that it shall be unlawful to dump or deposit, or permit the dumping or depositing of any solid waste on to the ground or underground or into the waters of the Commonwealth, by any means, without a permit.

2

- Section 610(9) of the Solid Waste Management Act, 35 P.S. § 6018.610(9) states that it is unlawful to cause or assist in the violation of any provisions of this act, any rule or regulation of the department, any order of the department or any term or condition of any permit.

N.   Additionally, the September 16 and 22, 2009 spillage of water/gel mixture at the Heitsman 4-H NW Well constitutes violations of Sections 78.54, 78.56(a) and 78.66(a) of the Department's Rules and Regulations, 25 Pa. Code §§ 78.54, 78.56(a) and 78.66(a), as follows:

- Section 78.54 of the Department's Rules and Regulations, 25 Pa. Code § 78.54 states in part, that the well operator shall control and dispose of fluids, residual waste and drill cuttings, including tophole water, brines, drilling fluids, drilling muds, stimulation fluids, well servicing fluids, oil, production fluids and drill cuttings in a manner that prevents pollution of the waters of this Commonwealth ...

- Section 78.56(a) of the Department's Rules and Regulations, 25 Pa. Code § 78.56(a) states in part, that the operator shall contain pollutional substances and wastes from the drilling, altering, completing, recompleting, servicing and plugging the well, including brines, drill cuttings, drilling muds, oils, stimulation fluids, well treatment and servicing fluids, plugging and drilling fluids other than gases in a pit, tank or series of pits and tanks ...

- Section 78.66(a) of the Department's Rules and Regulations, 25 Pa. Code § 78.66(a) states in part, that a release of a substance causing or threatening pollution of the waters of this Commonwealth, shall comply with the reporting and corrective action requirements of Section 91.33 of the Department's Rules and Regulations.

O.   By letter dated June 6, 2009, the Department requested the development and submission of a Pollution Prevention Contingency Plan (hereinafter "PPC Plan") including a Control & Disposal Plan (hereinafter "C&D Plan") to identify practices to be utilized for preventing pollutants from reaching the waters of the Commonwealth and identifying locations of permitted disposal facilities. To date, the Department has not received from Cabot Oil & Gas Corporation either the PPC Plan or the C&D Plan as required by Sections 78.55 and 91.34 of the Department's Rules and Regulations, 25 Pa. Code §§ 78.55 and 91.34.

P.   The conditions described above constitute unlawful conduct under Section 611 of the Clean Streams Law, 35 P.S. §§ 691.611; Section 610 of the Solid Waste Management Act, 35 P.S. § 6018.610; and Section 509 of the Oil and Gas Act, 58 P.S. § 601.509; and a statutory nuisance under Section 601 of the Clean Streams Law, 35 P.S. §§ 691.601; Section 601 of the Solid Waste Management Act, 35 P.S. § 6018.601; and Section 502 of the Oil and Gas Act, 58 P.S. § 601.502.

· NOW, THEREFORE, under the authority of Section 5 of the Clean Streams Law, 35 P.S. §§ 691.5; Section 602 of the Solid Waste Management Act, 35 P.S. § 6018.602; Section 503 of the Oil and Gas Act, 58 P.S. § 503; and Section 1917-A of the Administrative Code of 1929, 71 P.S. § 510-17, it is hereby ORDERED that:

1.     Cabot Oil & Gas Corporation shall immediately cease and desist all hydraulic-fracturing/well stimulation operations at all Department permitted well pad sites located within the confines of Susquehanna County, Pennsylvania, and identified in Attachment 1 of this Order.

2.     Cabot Oil & Gas Corporation shall not commence or resume hydraulic-fracturing/well stimulation operations at any Department permitted well pad site located within the confines of Susquehanna County, Pennsylvania, and identified in Attachment 1 of this Order, until authorized in writing by the Department.

3.     **PPC Plan and C&D Plan.**
     a.     Within fourteen (14) calendar days of the effective date of this Order, Cabot Oil & Gas Corporation shall submit to the Department representative identified in Paragraph 6, below, for review and approval, an updated and accurate PPC Plan and C&D Plan for all Department permitted well pad sites located within the confines of Susquehanna County, Pennsylvania, and identified in Attachment 1 of this Order.
     b.     In the event that the Department determines that additional modifications, revisions, or additions are necessary to the PPC Plan and/or C&D Plan, Cabot Oil & Gas Corporation shall submit such revisions as are necessary to fully address all of the Department's comments within 7 days of receipt of those comments.
     c.     The Department may approve, or approve with modifications, the PPC Plan and C&D Plan.

4.     **Engineering Study.**
     a.     Within twenty one (21) calendar days of the effective date of this Order, Cabot Oil & Gas Corporation shall submit to the Department representative identified in Paragraph 6, below, for review and approval, an engineering study ("Engineering Study") that fully addresses the items listed below in b., c. and d.
     b.     The Engineering Study shall include a detailed evaluation/explanation of the causes of the releases that occurred on September 16 and 22, 2009 identified in Paragraphs E, F, and H, above.
     c.     . In addition, the Engineering Study shall set forth corrective measures Cabot Oil & Gas Corporation will use to prevent similar releases.
     d.     Finally, the Engineering Study shall provide an analysis of the integrity and validity of all equipment and work practices associated with the hydraulic-fracturing operations at all of the Department permitted well pad sites located within the confines of Susquehanna County, Pennsylvania, and identified in Attachment 1 of this Order, with suggested improvements Cabot Oil & Gas intends to employ to prevent other releases to the environment.
     e.     In the event that the Department determines that additional modifications, revisions, or additions are necessary to the Engineering Study, Cabot Oil & Gas Corporation

4

shall submit such revisions as are necessary to fully address all of the Department's comments within 7 days of receipt of those comments.

      f.      The Department may approve, or approve with modifications, the Engineering Study.

5.    a.    Within twenty-one (21) calendar days of the Department's approval of the PPC Plan, the C& D Plan, and the Engineering Study described in Paragraphs 3 and 4, above, Cabot Oil & Gas Corporation shall fully implement and commence the practice of the recommendations and requirements contained in the Department approved PPC Plan, C&D Plan, and Engineering Study at all of the Department permitted well sites located within the confines of Susquehanna County, Pennsylvania, and identified in Attachment 1 of this Order.

      b.    Cabot Oil & Gas Corporation shall place in a conspicuous location at each Department permitted well site the Department approved PPC Plan and C&D Plan.

      c.    Cabot Oil & Gas Corporation shall also provide a copy of the Department approved PPC Plan and C&D Plan to each contractor and subcontractor working at any Department permitted well site. Each contractor and subcontractor working a Cabot well site must receive the Department approved PPC Plan and C&D Plan before they begin their work at the well site.

6.    All correspondence with the Department regarding this Order shall be sent to:

Jennifer W. Means<br>
Environmental Program Manager<br>
Northcentral Regional Office<br>
Department of Environmental Protection<br>
208 West Third Street<br>
Suite 101<br>
Williamsport, PA 17701-6448<br>
Phone: (570) 321-6557<br>
Fax: (570) 327-3420<br>
e-Mail: jenmeans@state.pa.us

Any person aggrieved by this action may appeal, pursuant to Section 4 of the Environmental Hearing Board Act, 35 P.S. Section 7514, and the Administrative Agency Law, 2 Pa. C.S. Chapter 5A, to the Environmental Hearing Board, Second Floor, Rachel Carson State Office Building, P.O. Box 8457, Harrisburg, PA 17105-8457, 717-787-3483. TDD users may contact the Board through the Pennsylvania Relay Service, 800-654-5984. Appeals must be filed with the Environmental Hearing Board within 30 days of receipt of written notice of this action unless the appropriate statute provides a different time period. Copies of the appeal form and the Board's rules of practice and procedure may be obtained from the Board. The appeal form and the Board's rules of practice and procedure are also available in braille or on audiotape from the Secretary to the Board at 717-787-3483. This paragraph does not, in and of itself, create any right of appeal beyond that permitted by applicable statutes and decisional law.

5

IF YOU WANT TO CHALLENGE THIS ACTION, YOUR APPEAL MUST REACH THE BOARD WITHIN 30 DAYS. YOU DO NOT NEED A LAWYER TO FILE AN APPEAL WITH THE BOARD.

IMPORTANT LEGAL RIGHTS ARE AT STAKE, HOWEVER, SO YOU SHOULD SHOW THIS DOCUMENT TO A LAWYER AT ONCE. IF YOU CANNOT AFFORD A LAWYER, YOU MAY QUALIFY FOR FREE PRO BONO REPRESENTATION. CALL THE SECRETAY TO THE BOARD (717-787-3483) FOR MORE INFORMATION.

FOR THE DEPARTMENT OF
ENVIRONMENTAL PROTECTION:

Jennifer W. Means
Environmental Program Manager

6

**Attachment 1**

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF ENVIRONMENTAL PROTECTION

**In the Matter of:**

|  |  |  |
|---|---|---|
| Cabot Oil and Gas Corporation | : | Clean Streams Law, |
| Dimock and Springville Townships | : | the Oil and Gas Act, and |
| Susquehanna County | : | the Solid Waste Management Act |

### CONSENT ORDER AND AGREEMENT

This Consent Order and Agreement is entered into this 4th day of November 2009, by and between the Commonwealth of Pennsylvania, Department of Environmental Protection ("Department") and Cabot Oil and Gas Corporation ("Cabot").

### Findings

The Department has found and determined the following:

A.      The Department is the agency with the duty and authority to administer and enforce The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§691.1-691.1001 ("Clean Streams Law"); the Oil and Gas Act, Act of December 19, 1984, P.L. 1140, *as amended*, 58 P.S. §§601.101-601.605 ("Oil and Gas Act"); the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§6018.101-6018.1003 ("Solid Waste Management Act"); Section 1917-A of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§510-17 ("Administrative Code"); and the rules and regulations promulgated thereunder ("Regulations").

B.      Cabot is a Delaware corporation registered to do business in Pennsylvania and is engaged in various oil and gas exploration and production activities in Pennsylvania, including in Dimock and Springville Townships, Susquehanna County.  Cabot maintains a mailing address of 5 Penn Center West, Suite 401, Pittsburgh, PA 15276.

**BACKGROUND ON GAS MIGRATION**

      C.      Cabot is the "owner" and "operator," as those terms are defined in Section 103 of the

Oil and Gas Act, 58 P.S. §601.103, of certain gas wells, or has received permit authorization from

the Department to drill wells, within an area defined as follows:  South of 41 degrees 45 minutes

latitude; East of -75 degrees 54 minutes 11 seconds longitude; North of 41 degrees 42 minutes 14

seconds latitude; and West of -75 degrees 50 minutes 48 seconds longitude in Dimock and

Springville Townships, Susquehanna County, Pennsylvania ("Affected Area").  A list of Cabot's

drilled wells and wells permitted but not drilled in the Affected Area are listed as Exhibit A and

incorporated herein ("Cabot Wells").  A map of the Affected Area is attached as Exhibit B and

incorporated herein.

      D.      On January 1, 2009, an explosion was reported in an outside, below-grade water well

pit at a home located in the Affected Area near the intersection of State Route 2024 and Carter Road

in Dimock Township, Susquehanna County.

      E.      Due to the close proximity of the home described in Paragraph D, above, to the Cabot

Wells, the Department began an investigation to determine if the incident was the result of gas

drilling activities by Cabot.

      F.      During its investigation since January 2009, the Department documented that

combustible gas was present in the headspaces of wells that provide drinking water to certain homes

located near the Cabot Wells, and/or documented that elevated levels of dissolved methane was

present in wells that provide drinking water to certain homes located near the Cabot Wells.

      G.      On February 27, 2009, the Department issued Cabot a Notice of Violation for, among

other things, discharging natural gas, a polluting substance, to waters of the Commonwealth without

authorization, and for failing to prevent gas from entering fresh groundwater.

H.      On May 13, 2009, the Department issued Cabot a Notice of Violation for failing to properly cement casing at certain of the Cabot Wells, and for failing to prevent gas from entering groundwater from the Cabot Well known as the Gesford 3 Well.

**Excessive Pressure/Improper or Insufficient Cemented Casings**

I.      Based upon its investigation since January 2009, the Department has determined the following:

1.      Two Cabot Wells known as the Baker 1 Well and the Ely 4 Well had excessive pressures.

2.      The Cabot Wells known as the Gesford 3 Well, Gesford 9 Well, and Teel 5 Well have insufficient or improper cemented casings that allow gas to vent between various cemented casings and/or from behind the surface casing.

3.      The Cabot Wells known as the Brooks 1H Well, Ely 5H Well, and Ely 7V Well have gas venting in the cellar of these Wells indicating that these Wells may have insufficient or improper cemented casings.

4.      As of the date of this Consent Order and Agreement, Cabot has not corrected the insufficient or improper cemented casings at the Gesford 3 Well, Gesford 9 Well, and Teel 5 Well.

**Pollution of Private Water Supplies**

J.      During its investigation since January 2009, the Department has collected samples from wells that provide drinking water to 13 homes located near the Cabot Wells ("Affected Water Supplies"), and these samples contained elevated levels of dissolved methane gas. In addition, the Department identified combustible gas in the headspaces of seven of the Affected Water Supplies. A list identifying the Affected Water Supplies is attached as Exhibit C and incorporated herein.

K.      Based upon its investigation since January 2009, the Department has determined the following:

1.      Ten of the Affected Water Supplies are less than 1,000 feet from one or more of the Cabot Wells. These 10 Affected Water Supplies have elevated levels of dissolved methane and/or the presence of combustible gas in the drinking water wells.

2.      The presence of dissolved methane and/or combustible gas in the 10 Affected Water Supplies occurred within six months of completion of drilling of one or more of the Cabot Wells. As such, Cabot is presumed to be responsible for the pollution to these 10 Affected Water Supplies, pursuant to Section 208(c) of the Oil and Gas Act, 58 P.S. §601.208(c).

3.      Three of the Affected Water Supplies are within 1,300 feet of one or more of the Cabot Wells. Based upon the presence of elevated methane in the water supplies, the presence of combustible gas in water well headspaces, the close proximity of these three Affected Water Supplies to the Cabot Wells, the close proximity of these three Affected Water Supplies to the other 10 Affected Water Supplies, and other factors, the Department has determined that Cabot is also responsible for the pollution to these three Affected Water Supplies. A chart identifying the distances of all of the Affected Water Supplies from the Cabot Wells is attached as Exhibit D and incorporated herein.

**Discharge of Natural Gas into the Groundwater**

L.      Based upon its investigation since January 2009, the Department has determined the following:

1.      Cabot had caused or allowed the unpermitted discharge of natural gas, a polluting substance, into the groundwater, which constitutes a "water of the Commonwealth," as that term is defined in 35 P.S. §691.1.

4

2.     As of the date of this Consent Order and Agreement, Cabot has taken certain actions approved by the Department to prevent the ongoing, unpermitted discharge of natural gas into the waters of the Commonwealth.

**Gas Migration Violations**

M.     Cabot's failure to properly case and cement the Gesford 3 Well, Gesford 9 Well, and Teel 5 Well to prevent the migration of gas or other fluids into sources of fresh groundwater is a violation of 25 Pa. Code §78.81(a).

N.     Cabot's failure to correct the insufficient or improperly cemented casing at the Gesford 3 Well, Gesford 9 Well, and Teel 5 Well is a violation of 25 Pa. Code §78.86.

O.     Cabot's pollution of the Affected Water Supplies and failure to restore or replace the Affected Water Supplies to the quality at least equal of the water supply prior to becoming affected is a violation of Section 208(a) of the Oil and Gas Act, 58 P.S. §601.208(a), and 25 Pa. Code §78.51(d).

P.     Cabot's unpermitted discharge of natural gas to the groundwater is a violation of Section 401 of the Clean Streams Law, §35 P.S. 691.401, and 25 Pa. Code §78.73(a).

Q.     The violations set forth in the Paragraphs M through P, above, constitute unlawful conduct pursuant to Section 509 of the Oil and Gas Act, 58 P.S. §601.509, and Section 611 of the Clean Streams Law, 35 P.S. §691.611.

**BACKGROUND ON OTHER VIOLATIONS**

R.     Cabot is the "owner" and "operator," as those terms are defined in Section 103 of the Oil and Gas Act, 58 P.S. §601.103, of the wells listed in Exhibit E, which is attached and incorporated herein.

**Black 2H Well Site**

S.    On September 19, 2008, a representative of Cabot reported to the Department that he had observed drilling mud discharging to a spring seep located down-slope of the Black 2H Well site. At that time, he indicated that the drilling mud appeared to have migrated from an unlined trench that had been excavated at the Black 2H Well site to accommodate the drill mud circulating system.

T.    Between September 19, 2008, and September 24, 2008, Cabot lined the trench described in Paragraph S, above, and constructed a series of controls below the spring seep to capture and contain the drilling mud discharge.

U.    On September 24, 2008, the Department inspected the Black 2H Well site and documented that the drilling mud was not being contained by the liner which had been placed in the trench described in Paragraph T, above, that drilling mud was discharging to the ground under the liner, and that drilling mud continued to discharge from the spring seep.

V.    The drilling mud described in Paragraph S, above, is an "industrial waste" as defined in Section 1 of the Clean Streams Law, 35 P.S. §691.1, and a "residual waste" as defined in Section 103 of the Solid Waste Management Act, 35 P.S. §6018.103.

W.    The spring seep described in Paragraph S, above, is a "water of the Commonwealth" as defined in Section 1 of the Clean Streams Law, 35 P.S. §691.1.

X.    Cabot did not have a permit or authorization from the Department to discharge industrial waste and/or residual waste onto the ground or into waters of the Commonwealth from the Black 2H Well site.

Y.    Cabot's discharge of industrial waste and/or residual waste onto the ground and into waters of the Commonwealth from the Black 2H Well site without first obtaining a permit or

6

approval from the Department is contrary to the requirements of 25 Pa. Code §§78.54 and 78.56(a), and is a violation of Sections 307 and 401 of the Clean Streams Law, 35 P.S. §§691.307 and 691.401, and Section 301 of the Solid Waste Management Act, 35 P.S. §6018.301. As of the date of this Consent Order and Agreement, Cabot has corrected this violation.

**Gesford 3 Well Site**

Z.     On January 30, 2009, a representative of Cabot reported to the Department that approximately 100 gallons of diesel fuel spill had spilled at the Gesford 3 Well site.

AA.     On February 2, 2009, the Department inspected the Gesford 3 Well site and documented that the spill occurred when a leak developed in a fuel line for a drilling mud pump at the site.

AB.     Spilled diesel fuel is a "residual waste" as defined in Section 103 of the Solid Waste Management Act, 35 P.S. §6018.103.

AC.     Cabot's spill of diesel fuel onto the ground at the Gesford 3 Well site without first obtaining a permit or approval from the Department is a violation of Section 301 of the Solid Waste Management Act, 35 P.S. §6018.301. As of the date of this Consent Order and Agreement, Cabot has corrected this violation.

**B Severcool 1 Well Site**

AD.     On February 18, 2009, the Department inspected the B Severcool 1 Well site and documented that drilling mud had discharged onto the ground at the site when the on-site drilling mud pump developed a leak. At that time, the Department estimated that 25 to 50 barrels of drilling mud flowed to a diversion ditch around the site, and approximately 5 to 10 barrels of drilling mud flowed from the diversion ditch into an adjacent field.

AE.    The drilling mud described in Paragraph AD, above, is a "residual waste" as defined in Section 103 of the Solid Waste Management Act, 35 P.S. §6018.103.

AF.    Cabot's discharge of residual waste onto the ground at the B Servercool 1 Well site without first obtaining a permit or approval from the Department is contrary to the requirements of 25 Pa. Code §78.56(a), and is a violation of Section 301 of the Solid Waste Management Act, 35 P.S. §6018.301.  As of the date of this Consent Order and Agreement, Cabot has corrected this violation.

**Gesford 1 Well Site**

AG.    On March 6, 2009, a Cabot representative reported to the Department that Cabot had caused or allowed a discharge of drilling mud at the Gesford 1 Well site.  Cabot subsequently informed the Department that the drilling mud had flowed off-site and into Burdick Creek, and that the discharge occurred when the drilling mud traveled up and outside of the conductor pipe for the Gesford 1 Well.

AH.    On March 9, 2009, the Department inspected the Gesford 1 Well site and verified that the discharge reported by Cabot as described in Paragraph AG, above, had flowed across the ground and into Burdick Creek.

AI.    The drilling mud described in Paragraph AG, above, is an "industrial waste" as defined in Section 1 of the Clean Streams Law, 35 P.S. §691.1, and a "residual waste" as defined in Section 103 of the Solid Waste Management Act, 35 P.S. §6018.103.

AJ.    Burdick Creek is a "water of the Commonwealth" as defined in Section 1 of the Clean Streams Law, 35 P.S. §691.1.

AK. Cabot does not have a permit or authorization from the Department to discharge industrial waste and/or residual waste onto the ground or into waters of the Commonwealth from the Gesford 1 Well site.

AL. Cabot's discharge of industrial waste and/or residual waste onto the ground and into waters of the Commonwealth from the Gesford 1 Well site without first obtaining a permit or approval from the Department is contrary to the requirements of 25 Pa. Code §§78.54 and 78.56(a), and is a violation of Sections 307 and 401 of the Clean Streams Law, 35 P.S. §§691.307 and 691.401, and Section 301 of the Solid Waste Management Act, 35 P.S. §6018.301. As of the date of this Consent Order and Agreement, Cabot has corrected this violation.

AM. The violations described in Paragraphs Y, AC, AF, and AL, above, constitute unlawful conduct under Section 611 of the Clean Streams Law, 35 P.S. §691.611, Section 509 of the Oil and Gas Act, 58 P.S. §601.509, and/or Section 302 of the Solid Waste Management Act, 35 P.S. §6018.302, and subject Cabot to a claim for civil penalties under Section 605 of the Clean Streams Law, 35 P.S. §691.605, Section 506 of the Oil and Gas Act, 58 P.S. §601.506, and/or Section 605 of the Solid Waste Management Act, 35 P.S. §6018.605.

**Failure to Submit Well Records**

AN. On February 18, 2009, a review of the Department's files documented that Cabot had failed to submit the required well records to the Department within 30 days of cessation of drilling for all of the Wells identified at Exhibit E, except for the B Servercool 1 Well and the Gesford 1 Well.

AO. Cabot's failure to submit well records as specified in Paragraph AN, above, is a violation of Section 212(b) of the Oil and Gas Act, 58 P.S. §601.212(b). As of the date of this Consent Order and Agreement, Cabot has corrected this violation.

**Failure to Maintain Driller's Log at Well Site**

AP.     On March 5, 12, and 18, 2009, the Department inspected the Gesford 1 Well site and documented that Cabot had failed to keep a detailed drillers log at the Well site available for inspection until drilling is completed.

AQ.     Cabot's failure to keep a detailed drillers log at the well site available for inspection until drilling is completed is a violation of 25 Pa. Code §78.122(a). As of the date of this Consent Order and Agreement, Cabot has corrected this violation.

AR.     The violations described in Paragraphs AO and AQ, above, constitute unlawful conduct under Section 509 of the Oil and Gas Act, 58 P.S. §601.509, and subject Cabot to a claim for civil penalties under Section 506 of the Oil and Gas Act, 58 P.S. §601.506.

## Order

After full and complete negotiation of all matters set forth in this Consent Order and Agreement, and upon mutual exchange of the covenants contained herein, the Parties desiring to avoid litigation and intending to be legally bound, it is hereby ORDERED by the Department and AGREED to by Cabot as follows:

1.     *Authority*. This Consent Order and Agreement is an Order of the Department authorized and issued pursuant to Section 5 of the Clean Streams Law, 35 P.S. §691.5; Section 503 of the Oil and Gas Act, 58 P.S. §601.503; Section 602 of the Solid Waste Management Act, 35 P.S. §6018.602; and Section 1917-A of the Administrative Code.

2.     *Findings*.

    a.     Cabot agrees that the Findings in Paragraphs A-L, R-U, W-X, Z-AA, AD, AG-AH, AJ-AK, AN, and AP, above, are true and correct and, in any matter or proceeding involving Cabot and the Department, Cabot shall not challenge the accuracy or validity of these Findings.

b.      The Parties do not authorize any other persons to use the Findings in this Consent Order and Agreement in any matter or proceeding.

3.      ***Compliance with Environmental Laws And Regulations.***  Cabot shall take all actions necessary, including the corrective actions set forth in this Consent Order and Agreement, to maintain compliance with all applicable environmental laws and regulations, including all applicable provisions of the Clean Streams Law, Oil and Gas Act, Solid Waste Management Act, and the Regulations.

4.      ***Corrective Actions.***

a.      Cabot shall not begin hydrofracturing of Cabot Wells in the Affected Area until it has received written authorization from the Department.

b.·     Cabot shall not complete the drilling of any existing Cabot Well within the Affected Area and shall not begin the drilling of any new Well within the Affected Area except in accordance with the requirements of this Consent Order and Agreement.

c.      As of the date of this Consent Order and Agreement, Cabot has submitted and the Department has approved both the cement bond logs for the surface water protection casing and the casing and cementing plan for the Ely 7H Well, Gesford 5H Well, and the Gesford 8H Well.

d.      Upon execution of this Consent Order and Agreement, Cabot may resume further drilling of the Ely 7H Well, Gesford 5H Well, and/or the Gesford 8H Well.

e.      Regarding any new Well within the Affected Area, Cabot shall submit to the Department the casing and cementing plan for a new Well at least 10 business days before it proposes to begin drilling the new Well within the Affected Area.

f.      Cabot may begin drilling a new Well within the Affected Area only upon the Department's written notice that it has approved the casing and cementing plan for the new Well.

11

g.      Cabot shall complete the drilling of the Ely 7H Well, Gesford 5H Well, and Gesford 8H Well, and shall complete the drilling of any new Well within the Affected Area in compliance with the requirements of this Consent Order and Agreement, including the requirements of Paragraphs 3, above, and any documents approved by the Department under this Consent Order and Agreement.

h.      Within 10 days of the date of this Consent Order and Agreement, Cabot shall notify the Department, in writing, of the names and addresses of all other persons in the Affected Area not listed at Exhibit C that Cabot is providing and maintaining temporary potable water and/or gas mitigation devices for, and/or has received complaints from alleging that their water supply quantity or quality has been affected by Cabot's drilling activities.  For any persons that reside within the Affected Area and are not listed at Exhibit C, Cabot shall continue to provide and maintain temporary potable water and/or gas mitigation devices for such persons in accordance with 25 Pa. Code §78.51, or as otherwise approved by the Department.

i.      Within 15 days of the date of this Consent Order and Agreement, Cabot shall submit a plan to the Department that identifies, in detail, how Cabot shall test for and ensure the integrity of the casing and cement on the Cabot Wells identified in Paragraphs I.1., I.2. and I.3., above.  The plan shall include an implementation schedule and, at a minimum, the following:

1)   a date by when Cabot proposes to start the integrity testing;

2)   a schedule for submitting to the Department a report within 60 days of the date of this Consent Order and Agreement that describes the tests completed, test results, and any corrective actions needed; and

3)   a final compliance date no later than March 31, 2010, unless otherwise approved by the Department in writing, by when Cabot shall complete all of the actions specified in the plan to correct the deficiencies to the casing and cement in the identified Wells, or plug the Wells in accordance with Paragraph 4.j., below.

12

j.       Unless otherwise agreed to by the Department in writing, if Cabot fails to correct, in accordance with 25 Pa. Code §78.86, the improper and/or insufficient cemented casings in the Cabot Well(s) identified by the Department in Paragraphs I.1., I.2, and I.3., above, Cabot shall plug such Cabot Well(s) by March 31, 2010, in accordance with Section 210(a) of the Oil and Gas Act, 58 P.S. §601.210(a), and 25 Pa. Code §§78.91-78.98.

k.       As of the date of this Consent Order and Agreement, Cabot has either provided whole house potable water and/or gas mitigation devices to the Affected Water Supplies, or has identified an alternative to such that has been approved in writing by the Department.  If Cabot provides water by purchasing from a water purveyor, Cabot shall assure that the users of the Affected Water Supplies will receive water in amounts sufficient to continually satisfy water usage needs until the Department notifies Cabot, in writing, that the Department has determined that the Affected Water Supply has been restored such that Cabot is no longer required to provide such purchased water.

l.       By March 31, 2010, Cabot shall have completed any and all actions to prevent the unpermitted discharge of natural gas (if any) from the Cabot Wells or any other well owned and/or operated by Cabot within the Affected Area and into the waters of the Commonwealth.

m.       By March 31, 2010, Cabot shall submit to the Department a plan and an implementation schedule, to permanently restore or replace, in accordance with Section 208 of the Oil and Gas Act, 58 P.S. §601.208, and 25 Pa. Code §78.51, the Affected Water Supplies, and the other water supplies identified by Cabot pursuant to Paragraph 4.h., above, that the Department determines have been affected by Cabot's drilling activities.  Upon approval by the Department, Cabot shall implement the plan in accordance with the approved implementation schedule.

13

5. ***Submission of Documents.*** With regard to any document that Cabot is required to submit pursuant to this Consent Order and Agreement, the Department will review Cabot's document and will approve or disapprove the document, or portion thereof, in writing. If the document, or any portion of the document, is disapproved by the Department, Cabot shall submit a revised document to the Department that addresses the Department's concerns within a reasonable time, as specified by the Department. The Department will approve or disapprove the revised document in writing. Upon approval by the Department, the document, and the Department-approved schedule therein, shall become a part of this Consent Order and Agreement for all purposes and shall be enforceable as such.

6. ***Civil Penalty Settlement.*** Upon signing this Consent Order and Agreement, Cabot shall pay a civil penalty of $120,000. This payment is in settlement for the violations set forth in the Findings, above, covering the dates set forth herein. The payment shall be made by corporate check or the like made payable to "Commonwealth of Pennsylvania" and sent to the Department at the address set forth in Paragraph 11, below.

7. ***Stipulated Civil Penalties.***

a. If Cabot fails to comply with the provisions of this Consent Order and Agreement, Cabot shall be in violation of this Consent Order and Agreement and, in addition to other applicable remedies, shall pay a civil penalty as follows:

1) If Cabot drills a new well within the Affected Area before complying with all of the obligations set forth in Paragraphs 4.e.-4.f., above, Cabot shall pay a stipulated penalty of $15,000 per each well where such drilling has commenced.

2) If Cabot fails to meet the obligations set forth in Paragraphs 4.g.-4.m., above, Cabot shall pay a stipulated penalty of $1,000 per day for each violation.

14

b.      Stipulated civil penalty payments shall be payable monthly on or before the 15th day of each succeeding month, and shall be made by corporate check or the like made payable to "Commonwealth of Pennsylvania" and sent to the Department at the address set forth in Paragraph 11, below.

c.      Any payment under this Paragraph shall neither waive Cabot's duty to meet its obligations under this Consent Order and Agreement nor preclude the Department from commencing an action to compel Cabot's compliance with the terms and conditions of this Consent Order and agreement.  The payment resolves only Cabot's liability for civil penalties arising from the violation of this Consent Order and Agreement for which the payment is made.

8.      ***Reservation of Rights***.  The Department reserves the right to require additional measures to achieve compliance with applicable law.  Cabot reserves the right to challenge any action which the Department may take to require those measures.

9.      ***Liability of Cabot***.  Cabot shall be liable for any violations of the Consent Order and Agreement, including those caused by, contributed to, or allowed by its officers, directors, agents, employees, contractors, successors, and assigns.

10.      ***Transfer of the Cabot Wells and/or Leases***.

a.      Cabot's duties and obligations under this Consent Order and Agreement shall not be modified, diminished, terminated, or otherwise altered by the transfer of the Cabot Wells, leases, any other wells owned and/or operated by Cabot within the Affected Area, and/or any parts thereof, except as hereinafter provided.

b.      If before the termination of this Consent Order and Agreement, Cabot intends to transfer the Cabot Wells, leases, any other wells owned and/or operated by Cabot within the Affected Area, and/or any parts thereof, Cabot shall provide a copy of this Consent Order and

15

Agreement to the prospective transferee at least 30 days prior to the contemplated transfer and shall simultaneously inform the Department of such intent pursuant to Paragraph 11 (Correspondence with Department), below.

c.  The Department, in its sole discretion, may agree to modify or terminate Cabot's duties and obligations under this Consent Order and Agreement and may agree to a transfer upon determination that Cabot is in full compliance with this Consent Order and Agreement, including payment of any stipulated penalties owed, and upon the transferee entering into a Consent Order and Agreement with the Department concerning the Wells and/or leases at issue.  Cabot agrees to waive any right that it may have to challenge the Department's decision in this regard.

11.  *Correspondence with Department*.  All correspondence with the Department concerning this Consent Order and Agreement shall be addressed to:

> Oil and Gas Management
> Department of Environmental Protection
> 230 Chestnut Street
> Meadville, PA  16335-3481
> Telephone:  (814) 332-6860
> Fax:  (814) 332-6121

12.  *Correspondence with Cabot*.  All correspondence with Cabot concerning this Consent Order and Agreement shall be addressed to:

> Mr. Jason Clark and
> Mr. Phil Stalnaker
> Cabot Oil and Gas Corporation
> 5 Penn Center West, Suite 401
> Pittsburgh, PA  15276
> Telephone:  (412) 249-3850
> Fax:  (412) 249-3855

Cabot shall notify the Department whenever there is a change in the contact person's name, title, or address.  Service of any notice or any legal process for any purpose under this Consent Order and

Agreement, including its enforcement, may be made by mailing a copy by certified mail, return receipt requested, to the above address.

13.      ***Decisions Under Consent Order and Agreement***.  Except as provided in Paragraph 10.c, above, any decision which the Department makes under the provisions of this Consent Order and Agreement, including a notice that stipulated civil penalties are due, is intended to be neither a final action under 25 Pa. Code §1021.2, nor an adjudication under 2 Pa.C.S.A. §101.  Any objection, which Cabot may have to the decision will be preserved until the Department enforces this Consent Order and Agreement.

14.      ***Severability***.  The Paragraphs of this Consent Order and Agreement shall be severable and should any part hereof be declared invalid or unenforceable, the remainder shall continue in full force and effect between the Parties.

15.      ***Entire Agreement***.  This Consent Order and Agreement shall constitute the entire integrated agreement of the Parties as to the subject matter hereof.  No prior or contemporaneous communications or prior drafts shall be relevant or admissible for purposes of determining the meaning or intent of any provisions herein in any litigation or any other proceeding.

16.      ***Attorney Fees***.  The Parties shall bear their respective attorney fees, expenses, and other costs in the prosecution or defense of this matter or any related matters, arising prior to execution of this Consent Order and Agreement.

17.      ***Modifications***.  No changes, additions, modifications, or amendments of this Consent Order and Agreement shall be effective unless they are set out in writing and signed by the Parties.

18.      ***Titles***.  A title used at the beginning of any Paragraph of this Consent Order and Agreement may be used to aid in the construction of that Paragraph, but shall not be treated as controlling.

19.     *Termination of Consent Order and Agreement.*  Cabot's obligations, but not the

Findings, of this Consent Order and Agreement shall terminate when Cabot has:  completed all of

the requirements of this Consent Order and Agreement, and paid any outstanding stipulated penalties

due under Paragraph 7, above; or by September 30, 2010, whichever is sooner.

IN WITNESS WHEREOF, the Parties have caused this Consent Order and Agreement to be

executed by their duly authorized representative.  The undersigned representative of Cabot certifies

under penalty of law, as provided by 18 Pa.C.S.A. §4904, that he/she is authorized to execute this

Consent Order and Agreement on behalf of Cabot, that Cabot consents to the entry of this Consent

Order and Agreement as a final ORDER of the Department; and that Cabot hereby knowingly waives

its right to appeal this Consent Order and Agreement and to challenge its content or validity, which

rights may be available under Section 4 of the Environmental Hearing Board Act, the Act of July 13,

1988, P.L. 530, No. 1988-94, 35 P.S. §7514; the Administrative Agency Law, 2 Pa.C.S.A. §103(a)

and Chapters 5A and 7A; or any other provision of law.  Signature by Cabot's attorney certifies only

that the Consent Order and Agreement has been signed after consulting with counsel.

**FOR CABOT OIL AND GAS**
**CORPORATION:**

**FOR THE COMMONWEALTH OF**
**PENNSYLVANIA, DEPARTMENT OF**
**ENVIRONMENTAL PROTECTION:**

Phillip Stalnaker
Vice President/Regional Manager

S. Craig Lobins
Regional Manager
Oil and Gas Management Program
Northwest Region

Kenneth S. Komoroski, Esq.
Attorney for Cabot

Donna L. Duffy
Regional Counsel

18

## EXHIBIT A

## CABOT WELLS WITHIN AFFECTED AREA

| WELL NAME | PERMIT NO. | WELL NAME | PERMIT NO. |
|---|---|---|---|
| TEEL 1 | 115-20007 | BLACK 2H | 115-20056 |
| TEEL 2 | 115-20010 | ROZANSKI 1 | 115-20057 |
| TEEL 6 | 115-20011 | GREENWOOD 2H | 115-20085 |
| TEEL 7 | 115-20023 | GESFORD 4R | 115-20091 |
| BROOKS 1 | 115-20014 | J GRIMSLEY 1 | 115-20095 |
| TEEL 5 | 115-20024 | ELY 7V | 115-20096 |
| ELY 1 | 115-20029 | RATZEL 2H | 115-20152 |
| ELY 2 | 115-20015 | R HULL 1H | 115-20122 |
| ELY 4 | 115-20016 | R HULL 2H | 115-20121 |
| HUBBARD 1 | 115-20039 | GREENWOOD 3V | 115-20142 |
| HUBBARD 2 | 115-20017 | HUBBARD 3 | 115-20131 |
| KAHLE 1 | 115-20018 | RATZEL 3V | 115-20117 |
| RATZEL 1 | 115-20025 | HEITSMAN 3V | 115-20123 |
| GESFORD 1 | 115-20040 | HEITSMAN 2 | 115-20140 |
| GESFORD 2 | 115-20033 | HUBBARD 5H | 115-20148 |
| GESFORD 3 | 115-20019 | HUBBARD 6H | 115-20147 |
| HEITSMAN 1 | 115-20020 | A & M HIBBARD 2H | 115-20149 |
| HEITSMAN 2 | 115-20021 | HEITSMAN 4H NW | 115-20162 |
| BAKER 1 | 115-20026 | GESFORD 7H NW | 115-20163 |
| BLACK 1 | 115-20028 | BROOKS 3V | 115-20161 |
| LEWIS 2 | 115-20030 | TEEL 12H NW | 115-20167 |
| ELY 4H | 115-20034 | BLACK 3V | 115-20133 |
| LEWIS 1 | 115-20035 | J GRIMSLEY 2H SE | 115-20171 |
| COSTELLO 1 | 115-20036 | R HULL 3V | 115-20173 |
| ELY 6H | 115-20041 | ELY 7H SE | 115-20160 |
| COSTELLO 2 | 115-20043 | GESFORD 8H NW | 115-20183 |
| BLACK 1H | 115-20048 | GESFORD 9 | 115-20187 |
| ELY 1H | 115-20049 | P KELLEY 1 | 115-20196 |
| HEITSMAN 1H | 115-20050 | GESFORD 5H NW | 115-20201 |
| RATZEL 1H | 115-20047 | A & M HIBBARD 4 | 115-20222 |
| BROOKS 1H | 115-20051 | BAKER 3 | 115-20226 |
| ELY 5H | 115-20054 | | |



## EXHIBIT C

### AFFECTED WATER SUPPLIES

Norma Fiorentino
RR 6, Box 6212
Montrose, PA  18801

William and Sheila Ely
RR1, Box 6176
Montrose, PA  18801

Craig and Julie Sautner
RR 6, Box 6147
Montrose, PA  18801

Victoria Switzer
P.O. Box 113
Dimock, PA  18816

Michael Ely
RR 6, Box 3176
Montrose, PA  18801

Nolan Ely
P.O. Box 39
Dimock, PA  18816

Victoria Hubert
P.O. Box 111
Dimock, PA  18801

Ronald Teel
RR 6, Box 6182
Montrose, PA  18801

Ronald and Jean Carter
P.O. Box 82
Dimock, PA  18816

Michael and Suzanne Johnson
1129 Timber Ridge Drive
Tampa, FL  33625

Timothy and Deborah Maye
RR 6, Box 6147A
Montrose, PA  18801

Richard Seymour
RR 6, Box 6177A
Montrose, PA  18801

Eric and Susan Roos
RR 6, Box 6194
Montrose, PA  18801

## EXHIBIT D

## CABOT WELL / AFFECTED WATER SUPPLY DISTANCE RELATIONSHIPS

| API | Well Farm Name | Drill End Date | Ronald Carter | Michael Ely | Nolan Ely | William Ely | Norma Fiorentino | Victoria Hubert | Michael Johnson | Timothy Maye | Eric Roos | Craig Sautner | Richard Seymour | Victoria Switzer | Ronald Teel |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 115-20117 | Ratzel #3V | 4/8/2009 | | | | | | | | | X | | | | |
| 115-20047 | Ratzel #1H | 4/8/2009 | | | | | | | | | X | | | | |
| 115-20019 | Gesford #3 | 12/16/2008 | | • | X | | | X | | | | | | | |
| 115-20026 | Baker #1 | 8/31/2008 | | | | | • | | | • | | X | | | |
| 115-20030 | Lewis #2 | 9/6/2008 | | | | | | | X | | | | | X | X |
| 115-20033 | Gesford #2 | 10/14/2008 | X | | | | | | | | | | | | |
| 115-20036 | Costello #1 | 10/14/2008 | | • | | X | | | X | | | | X | | |
| 115-20187 | Gesford #9 (3, formerly 3 & 3A) | 10/8/2008 | | • | X | | | X | | | | | | | |

X  denotes water supply is within 1000 feet of one or more Cabot gas wells

•  denotes water supply is within 1300 feet of one or more Cabot gas wells

# EXHIBIT E

## WELLS WITH OTHER VIOLATIONS

| WELL NAME | PERMIT NUMBER |
|---|---|
| Teel 1 | 115-20007 |
| Greenwood 1 | 115-20008 |
| Teel 2 | 115-20010 |
| Teel 6 | 115-20011 |
| Ely 2 | 115-20015 |
| Gesford 3 | 115-20019 |
| Teel 7 | 115-20023 |
| Teel 5 | 115-20024 |
| Baker 1 | 115-20026 |
| Lewis 2 | 115-20030 |
| Gesford 2 | 115-20033 |
| Ely 4 | 115-20034 |
| Lewis 1 | 115-20035 |
| Costello 1 | 115-20036 |
| Hubbard 1 | 115-20039 |
| Gesford 1 | 115-20040 |
| Ely 6H | 115-20041 |
| Costello 2 | 115-20043 |
| Black 1H | 115-20048 |
| Ely 1H | 115-20049 |
| Heitsman 1H | 115-20050 |
| Brooks 1H | 115-20051 |
| Black 2H | 115-20056 |
| B Severcool 1 | 115-20080 |

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION

In the Matter of:

| | | |
|---|---|---|
| Cabot Oil & Gas Corporation | : | Clean Streams Law, the |
| Dimock and Springville, Townships | : | Oil and Gas Act, and the |
| Susquehanna County | : | Solid Waste Management Act |
| | : | |

**MODIFICATION TO CONSENT ORDER AND AGREEMENT
DATED NOVEMBER 4, 2009**

This Modification to the November 4, 2009 Consent Order and Agreement ("Modification") is entered into this 15th day of April 2010, by and between the Commonwealth of Pennsylvania, Department of Environmental Protection ("Department") and Cabot Oil & Gas Corporation ("Cabot").

**Findings**

The Department has found and determined the following:

A.      The Department is the agency with the duty and authority to administer and enforce The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§691.1-691.1001 ("Clean Streams Law"); the Oil and Gas Act, Act of December 19, 1984, P.L. 1140, *as amended*, 58 P.S. §§601.101-601.605 ("Oil and Gas Act"); the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§6018.101-6018.1003 ("Solid Waste Management Act"); Section 1917-A of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§510-17 ("Administrative Code"); and the rules and regulations promulgated thereunder ("Regulations").

B.      Cabot is incorporated in Delaware and registered to do business in Pennsylvania, and is engaged in various oil and gas exploration and production activities in Pennsylvania, including in Dimock and Springville Townships, Susquehanna County.  Cabot's mailing address in Pennsylvania is 5 Penn Center West, Suite 401, Pittsburgh, PA 15276.

**November 4, 2009 Consent Order and Agreement**

C.       On November 4, 2009, the Department and Cabot entered into a Consent Order and
Agreement ("2009 Agreement") in settlement of violations regarding:  excessive pressure/improper
or insufficient cementing (casings) on certain Cabot Wells; pollution of private water supplies within
an area defined as follows:  the area bounded on the South of 41 degrees 45 minutes latitude; East of
-75 degrees 54 minutes 11 seconds longitude; North of 41 degrees 42 minutes 14 seconds latitude;
and West of -75 degrees 50 minutes 48 seconds longitude in Dimock and Springville Townships,
Susquehanna County, Pennsylvania ("Affected Area"); discharge of natural gas into ground water in
the Affected Area; discharge of industrial waste/and or residual waste onto the ground and/or into the
waters of the Commonwealth; failure to submit well records; and failure to maintain a Driller's Log.
The 2009 Agreement is maintained as a public document by the Department at its Northwest
Regional Office in Meadville, PA, and is incorporated herein in full.

D.       Cabot did not comply with all of its obligations under the 2009 Agreement.  As
discussed further below, Cabot did not comply with the requirements of Paragraph 4.i.2) of the 2009
Agreement, as it failed to identify in its "Integrity Report" all of the Cabot Wells that had
insufficient/improper casing and/or cementing, and it failed to identify the specific corrective actions
needed to address the Gesford 3 and Gesford 9 Wells which the Department had already determined
to have insufficient/improper casing and/or cementing as documented in Paragraph I in the 2009
Agreement.

E.       As also discussed further below, Cabot did not comply with the requirements of
Paragraph 4.l. of the 2009 Agreement, as it failed, by March 31, 2010, to complete any and all
actions to prevent the unpermitted discharge of natural gas from the Cabot Wells or any other well
owned and/or operated by Cabot within the Affected Area and into the waters of the Commonwealth.

2

F.       Pursuant to Paragraph 4.i. of the 2009 Agreement, Cabot submitted an "Integrity Plan" to the Department which identified how Cabot would test for and ensure the integrity of the casing and cement of certain Cabot Wells.  On November 20, 2009, the Department approved the Integrity Plan.

G.       On February 3, 2010, the Department received from Cabot the Integrity Report which identified the results from the testing that it had done in accordance with the approved Integrity Plan.

H.       Paragraph 4.i.2) of the 2009 Agreement required that the Integrity Report describe the tests completed, test results, and any corrective actions needed to address the Cabot Wells, including the Gesford 3 and Gesford 9 Wells, that had insufficient/improper casing and/or cementing.

I.       On March 9 and 10, 2010, the Department inspected certain Cabot Wells and observed that gas bubbling was continuing to occur in the cellar for the Ely No. 5H Well and the Ely No. 7H Well, contrary to the results reported by Cabot in its Integrity Report.

J.       Additionally, the Department observed gas bubbling in the cellars for the following Cabot Wells in the Affected Area:  Gesford No. 2; Hubbard No. 5H; Ratzell No. 1H; Ratzell No. 2H; and Teel No. 7.  The presence of gas bubbling in the cellars of these Cabot Wells indicates that these Wells may also have insufficient and/or improper cemented casings.

K.       Cabot is the "owner" and "operator," as those terms are defined in Section 103 of the Oil and Gas Act, 58 P.S. §601.103, of the R Smith No. 4 Well, authorized under Permit No. 115-20075, and located in Springville Township, Susquehanna County.  The R Smith No. 4 Well is hereby included within the Affected Area that is the subject of the 2009 Agreement and this Modification.

L.       On March 10, 2010, the Department observed gas bubbling in the cellar of the R Smith No. 4 Well.

3

M.      Pursuant to Paragraph 5 of the 2009 Agreement, the Department reviewed the Integrity Report and, on March 31, 2010, the Department sent a letter to Cabot that identifies the deficiencies with the Integrity Report.  The Department's March 31, 2010 deficiency letter is maintained as a public document by the Department at its Northwest Regional Office in Meadville, PA, and is incorporated herein.

N.      As discussed in the Department's March 31, 2010 deficiency letter, among other things, the Integrity Report failed to identify the specific corrective actions needed to address the Gesford 3 and Gesford 9 Wells which the Department had already determined to have insufficient/improper casing and/or cementing as documented in Paragraph I in the 2009 Agreement.

**Kemble Water Supply**

O.      On January 10, 2009, the Department collected samples from a well that provides drinking water to the residence owned by Ray Kemble and located within the Affected Area ("Kemble Water Supply").  The samples taken on January 10, 2009, contained dissolved methane gas at a concentration of .015 mg/l.

P.      On January 28, 2010, the Department again collected samples from the Kemble Water Supply, and those samples contained dissolved methane gas at a concentration of 23.6 mg/l.

Q.      On March 8, 2010, the Department notified Cabot about the elevated concentration of dissolved methane gas in the Kemble Water Supply.

R.

1.      The Department has determined that, based on the elevated concentration of dissolved methane gas in the Kemble Water Supply, the close proximity of the Kemble Water Supply to the Cabot Wells, the close proximity of the Kemble Water Supply to the Affected Water

4

Supplies as identified in the 2009 Agreement, and other factors, Cabot is also responsible for the pollution to the Kemble Water Supply.

      2.    The Kemble Water Supply is hereby added to the Affected Water Supplies identified in the 2009 Agreement.

    S.    In resolution of Cabot's failure to comply with all of its obligations under the 2009 Agreement, and to address the pollution of the Kemble Water Supply, the Department has agreed to modify the 2009 Agreement pursuant to Paragraph 17 of the 2009 Agreement and as identified herein. Cabot agrees to comply with all of its obligations under the 2009 Agreement and this Modification. In addition, the Department has notified Cabot that no further modifications will be made to the 2009 Agreement.

### Order

After full and complete negotiation of all matters set forth in this Consent Order and Agreement, and upon mutual exchange of the covenants contained herein, the Parties desiring to avoid litigation and intending to be legally bound, it is hereby ORDERED by the Department and AGREED to by Cabot as follows:

    1.    *Authority.* This Modification is an Order of the Department and is authorized and issued pursuant to Section 5 of the Clean Streams Law, 35 P.S. §691.5; Section 503 of the Oil and Gas Act, 58 P.S. §601.503; Section 602 of the Solid Waste Management Act, 35 P.S. §6018.602; and Section 1917-A of the Administrative Code.

    2.    *Findings.*

      a.    Cabot agrees that the Findings in Paragraphs A through S, above, are true and correct and, in any matter or proceeding involving Cabot and the Department, Cabot shall not challenge the accuracy or validity of these Findings.

b.      The Parties do not authorize any other persons to use the Findings in the 2009

Agreement and this Modification in any matter or proceeding.

3.      ***Paragraph 3 of the 2009 Agreement.***   Paragraph 3 of the 2009 Agreement shall be

modified in its entirety and shall be replaced with the following:

3.      ***Compliance, No Appeal, and Cease New Drilling/Hydro-Fracturing.***

a.      Cabot shall take **any and all** actions necessary within the Affected

Area, including the corrective actions set forth in the 2009 Agreement and this Modification,

to attain and/or maintain compliance with all applicable environmental laws and regulations,

including all applicable provisions of the Clean Streams Law, Oil and Gas Act, Solid Waste

Management Act, and the Regulations.

b.      Cabot hereby agrees to not appeal any decision by the Department on

or arising from any matter under the 2009 Agreement and this Modification.  Any objection

which Cabot may have to such decision will be preserved until the Department enforces the

2009 Agreement and this Modification.

c.      Regarding Cabot Wells within the Affected Area that are permitted as

of the date of this Modification:

1)      Regarding any permitted Cabot Wells within the Affected Area
where drilling has not been commenced as of the date of this
Modification ("Permitted Undrilled Wells"), in all cases Cabot
shall not commence drilling any such Wells for a minimum of
one year from the date of this Modification.  Before the drilling
permit expires for a Permitted Undrilled Well, Cabot may
submit a request to the Department to renew the drilling permit
in accordance with 25 Pa. Code §78.17.  After one year from
the date of this Modification, Cabot may commence drilling
any or all such Permitted Undrilled Wells within the Affected
Area upon obtaining the drilling permit renewal **and** upon
receipt of written notice that the Department has determined
that Cabot has completed all of its obligations under the 2009
Agreement and this Modification in accordance with the
schedules contained therein and has completely eliminated the

6

unpermitted discharge of natural gas into the waters of the Commonwealth from the Defective Wells (as defined in Paragraph 4.i.1), below) and/or from any other well owned and/or operated by Cabot within the Affected Area.

2)      The following seven (7) permitted Cabot Wells within the Affected Area have been drilled, but hydro-fracturing has not commenced as of the date of this Modification: A&M Hibbard No. 2H; A&M Hibbard No. 4H; Ely No. 1H; Baker No. 3H; Gesford No. 4R; Gesford No. 8H; and P. Kelly No. 1H. Cabot shall not commence hydro-fracturing of any such Wells until it has received written notice that the Department has determined that Cabot has completed all of its obligations under Paragraphs 4.i.2)(well plugging only), 4.i.3), 4.i.6), and 4.m., below, of this Modification in accordance with the schedules contained therein.

d.      As of the date of this Modification, Cabot has submitted to the Department applications for permits to drill four additional gas wells within the Affected Area and 25 additional gas wells outside the Affected Area.

1)      Regarding any current or future applications from Cabot for permits to drill additional gas wells within the Affected Area, in all cases no such permits will be issued by the Department for a minimum of one year from the date of this Modification. Cabot may submit to the Department applications to drill additional gas wells within the Affected Area, but such permits will not be issued until after one year from the date of this Modification **and** Cabot has received written notice that the Department has determined that Cabot has completed all of its obligations under the 2009 Agreement and this Modification in accordance with the schedules contained therein, and has completely eliminated the unpermitted discharge of natural gas into the waters of the Commonwealth from the Defective Wells (as defined in Paragraph 4.i.1), below) and/or from any other well owned and/or operated by Cabot within the Affected Area.

2)      Regarding any current or future applications from Cabot for permits to drill additional gas wells outside the Affected Area, no such permits will be issued by the Department until it has determined that Cabot has completed all of its obligations under Paragraphs 4.i.2)(well plugging only), 4.i.3), and 4.m., below, of this Modification in accordance with the schedules contained therein.

4.     ***Paragraph 4.h. of the 2009 Agreement.*** Paragraph 4.h. of the 2009 Agreement shall be modified in its entirety and shall be replaced with the following:

4.     ***Corrective Actions.***

h.     Until Cabot has permanently restored all of the Affected Water Supplies in accordance with the 2009 Agreement and this Modification, Cabot shall: **upon signing this Modification,** provide and maintain temporary potable water and/or gas mitigation devices at the Kemble Water Supply in accordance with 25 Pa. Code §78.51, or as otherwise approved by the Department; and continue to provide and maintain temporary potable water and/or gas mitigation devices at all of the 13 other Affected Water Supplies, unless Cabot demonstrates to the Department's satisfaction that the owner of the Affected Water Supply refused the whole-house treatment system.

5.     ***Paragraph 4.i. of the 2009 Agreement.*** Paragraph 4.i. of the 2009 Agreement shall be modified in its entirety and shall be replaced with the following:

4.     ***Corrective Actions.***

i.

1)     As indicated in the 2009 Agreement and this Modification, the Department has identified the following 14 Cabot Wells as having insufficient/improper casing and/or cementing and/or overpressure, and are causing and/or have the potential to cause the unpermitted discharge of natural gas into the groundwater in the Affected Area: Baker No. 1; Ely No. 4; Ely No. 5H; Ely No. 7H; Teel No. 5; Brooks No. 1H; Gesford No. 2; Gesford No. 3; Gesford No. 9; Hubbard No. 5H; Ratzell No. 1H; Ratzell No. 2H; Teel No. 7; and the R Smith No. 4 Wells (collectively the "Defective Wells).

2)     **No more than 10 days from the date of this Modification and continuing each day until the Wells are fully plugged within 40 days of the date of this Modification,** Cabot shall complete **any and all** actions necessary to plug, *at a minimum,* the Gesford No. 3 Well, Gesford No. 9 Well, and Baker No. 1 Well in accordance with Section 210(a) of the Oil and Gas Act,

8

58 P.S. §601.210(a), and 25 Pa. Code §§78.91-78.98. Cabot shall restore each of the plugged Well Sites in accordance with Section 206 of the Oil and Gas Act, 58 P.S. §601.206.

3) **No more than 10 days from the date of this Modification and continuing each day by 40 days of the date of this Modification,** Cabot shall complete **any and all** actions necessary to bring Ely No. 4 Well into compliance with the Oil and Gas Act, the Clean Streams Law, and the Regulations.

4) **At least 5 days before** any employee or consultant hired by Cabot conducts an investigation of the Cabot Wells, the Affected Water Supplies, and/or the environment within the Affected Area, Cabot shall provide to the Department a copy of Cabot's Scope of Work or Plan for such investigation.

5) **No more than 45 days from the date of completing all of the obligations under Paragraphs 4.i.2) and 4.i.3), above,** Cabot shall submit to the Department at the address set forth in Paragraph 11 of the 2009 Agreement, a written report and any and all documentation necessary, including results of lab analyses of any samples taken and any reports of investigations done by or on behalf of Cabot within the Affected Area, to show that Cabot has completed all of the obligations under Paragraphs 4.i.2) and 4.i.3), above, and that these completed obligations have completely eliminated the unpermitted discharge of natural gas into the waters of the Commonwealth from the Defective Wells and/or any other well owned and/or operated by Cabot within the Affected Area.

6) If upon review of the report submitted in accordance with Paragraph 4.i.5), above, and review of any other applicable information, the Department determines that the unpermitted discharge of natural gas continues into the waters of the Commonwealth within the Affected Area, **within 60 days of receipt of written notice from the Department** Cabot shall plug all of the remaining Defective Wells in accordance with Section 210(a) of the Oil and Gas Act, 58 P.S. §601.210(a), and 25 Pa. Code §§78.91-78.98, or take any other remedial action that the Department directs. Cabot shall restore each of the plugged Well Sites in accordance with Section 206 of the Oil and Gas Act, 58 P.S. §601.206.

7) Nothing in this sub-Paragraph 4.i. restricts Cabot from plugging and/or taking any other remedial actions necessary to eliminate the unpermitted discharge of natural gas into the waters of the Commonwealth from the Defective Wells and/or

any other well owned and/or operated by Cabot within the Affected Area.

8)     In all cases, **by November 1, 2010,** Cabot shall have completed all of its obligations under the 2009 Agreement and this Modification in accordance with the schedules contained therein and shall have completely eliminated the unpermitted discharge of natural gas into the waters of the Commonwealth from the Defective Wells and/or any other well owned and/or operated by Cabot within the Affected Area.

6.     *Paragraph 4.l. of the 2009 Agreement.* Paragraph 4.l. of the 2009 Agreement shall

be modified in its entirety and shall be replaced with the following:

    4.     *Status Reports and Completion of all Corrective Actions.*

       l.

1)     **Beginning May 15, 2010, and continuing on the 15th day of each month thereafter,** Cabot shall submit to the Department at the address set forth in Paragraph 11 of the 2009 Agreement, a written report of the actions that it has taken in the previous month and the specific actions that it plans to take in the following month to comply with its obligations under the 2009 Agreement and this Modification.

2)     In all cases, **by November 1, 2010,** Cabot shall have completed all of its obligations under the 2009 Agreement and this Modification in accordance with the schedules contained therein and shall have completely eliminated the unpermitted discharge of natural gas into the waters of the Commonwealth from the Defective Wells and/or any other well owned and/or operated by Cabot within the Affected Area.

7.     *Paragraph 4.m. of the 2009 Agreement.* Paragraph 4.m. of the 2009 Agreement

shall be modified in its entirety and shall be replaced with the following:

    4.     *Corrective Actions.*

       m.     **Within 30 days of the date of this Modification,** Cabot shall:

complete the installation of a whole-house treatment system in each of the 14 Affected Water

Supplies; provide funding to compensate the owners of the Affected Water Supplies

for operation and maintenance costs for the treatment systems; and submit to the Department at the address set forth in Paragraph 11 of the 2009 Agreement, a written report and any and all documentation necessary, including results of lab analyses of samples taken, to show that the whole-house treatment system has been installed and that each Affected Water Supply, after treatment, has a concentration of dissolved methane at or below 5 milligrams per liter throughout the Affected Water Supply, and has concentrations of other contaminants that comply with 25 Pa. Code §78.51(d) for each Affected Water Supply.  If Cabot demonstrates to the Department's satisfaction that an owner of an Affected Water Supply refused the whole-house treatment system, Cabot shall be deemed to have complied with this Paragraph for such Affected Water Supply.

8.      ***Paragraph 7 of the 2009 Agreement.***  Paragraph 7 of the 2009 Agreement shall be modified in its entirety and shall be replaced with the following:

7.      ***Stipulated Civil Penalties.***

a.      If Cabot fails to comply with the provisions of the 2009 Agreement and this Modification, Cabot shall be in violation of the 2009 Agreement and this Modification and, in addition to other applicable remedies, shall pay a stipulated penalty of $5,000 per day for each violation.

b.      Stipulated civil penalty payments shall be payable monthly on or before the 15th day of each succeeding month, and shall be made by corporate check or the like made payable to "Commonwealth of Pennsylvania" and sent to the Department at the address set forth in Paragraph 11 of the 2009 Agreement.

c.      Any payment under this Paragraph shall neither waive Cabot's duty to meet its obligations under the 2009 Agreement and this Modification nor preclude the

Department from commencing an action to compel Cabot's compliance with the terms and conditions of the 2009 Agreement and this Modification. The payment resolves only Cabot's liability for civil penalties arising from the violation of the 2009 Agreement and this Modification for which the payment is made.

9.    *Civil Penalty Settlement for Noncompliance With the 2009 Agreement.*

a.    **Upon signing this Modification,** Cabot shall pay a civil penalty of $240,000. This payment is in settlement of Cabot's failure to comply with all of its obligations under the 2009 Agreement as set forth in the Findings, above. The payment shall be made by corporate check or the like made payable to the "Commonwealth of Pennsylvania" and sent to the Department at the address set forth in Paragraph 11 of the 2009 Agreement.

b.    **Beginning May 15, 2010,** and continuing on the 15th day of each month thereafter, Cabot shall pay $30,000 and shall pay $30,000 each month thereafter until the Department notifies Cabot, in writing, that the Department has determined that Cabot has complied with all of its obligations under the 2009 Agreement and this Modification. Cabot shall pay these monthly penalties in addition to the payment of the $240,000 civil penalty upon signing this Modification, and in addition to any stipulated penalties owed by Cabot pursuant to the new Stipulated Penalty Paragraph 7, as identified in Paragraph 8, above, of this Modification.

10.    *Remainder of 2009 Agreement in Force and Effect.* Except for the modifications to Paragraphs 3, 4, and 7 of the 2009 Agreement, as expressly stated herein, the Findings and all other terms and conditions of the 2009 Agreement shall remain in full force and affect between the Parties.

IN WITNESS WHEREOF, the Parties have caused this Modification to be executed by their duly authorized representative. The undersigned representative of Cabot certifies under penalty of law, as provided by 18 Pa.C.S.A. §4904, that he is authorized to execute this Modification to the

12

2009 Agreement on behalf of Cabot, that Cabot consents to the entry of this Modification as a final

ORDER of the Department, and that Cabot hereby knowingly waives its right to appeal this

Modification and to challenge its content or validity, which rights may be available under Section 4

of the Environmental Hearing Board Act, the Act of July 13, 1988, P.L. 530, No. 1988-94, 35 P.S.

§7514; the Administrative Agency Law, 2 Pa.C.S.A. §103(a) and Chapters 5A and 7A; or any other

provision of law.  Signature by Cabot's attorney certifies only that this Modification has been signed

after consulting with counsel.


**FOR CABOT OIL & GAS CORPORATION:**    **FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION:**


Dan O. Dinges
Chief Executive Officer

S. Craig Lobins
Regional Manager
Oil and Gas Management Program
Northwest Region


Kenneth S. Komoroski, Esq.
Attorney for Cabot

Donna L. Duffy
Regional Counsel

MBraymer\Cabot\CO&A Final Mod 2010.doc

**COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION**

**In the Matter of:**

| | | |
|---|---|---|
| Cabot Oil & Gas Corporation | : | Clean Streams Law, the |
| Dimock and Springville Townships | : | Oil and Gas Act, and the |
| Susquehanna County | : | Solid Waste Management Act |

**SECOND MODIFICATION TO CONSENT ORDER AND AGREEMENT
DATED NOVEMBER 4, 2009**

This Second Modification to the November 4, 2009 Consent Order and Agreement ("Second

Modification") is entered into this _19th_ day of July 2010, by and between the Commonwealth of

Pennsylvania, Department of Environmental Protection ("Department") and Cabot Oil & Gas

Corporation ("Cabot").

**Findings**

The Department has found and determined the following:

A.       The Department is the agency with the duty and authority to administer and enforce

The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§691.1-691.1001

("Clean Streams Law"); the Oil and Gas Act, Act of December 19, 1984, P.L. 1140, *as amended*,

58 P.S. §§601.101-601.605 ("Oil and Gas Act"); the Solid Waste Management Act, Act of July 7,

1980, P.L. 380, *as amended*, 35 P.S. §§6018.101-6018.1003 ("Solid Waste Management Act");

Section 1917-A of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71

P.S. §§510-17 ("Administrative Code"); and the rules and regulations promulgated thereunder

("Regulations").

B.       Cabot is incorporated in Delaware and registered to do business in Pennsylvania, and

is engaged in various oil and gas exploration and production activities in Pennsylvania, including in

1

Dimock and Springville Townships, Susquehanna County.  Cabot's mailing address in Pennsylvania

is 5 Penn Center West, Suite 401, Pittsburgh, Pennsylvania 15276.

**November 4, 2009, Consent Order and Agreement**

        C.     On November 4, 2009, the Department and Cabot entered into a Consent Order and

Agreement ("2009 Agreement") in settlement of violations regarding:  excessive pressure/improper

or insufficient cementing (casings) on certain Cabot Wells; pollution of private water supplies within

an area defined as follows:  the area bounded on the South of 41 degrees 45 minutes latitude; East of

-75 degrees 54 minutes 11 seconds longitude; North of 41 degrees 42 minutes 14 seconds latitude;

and West of -75 degrees 50 minutes 48 seconds longitude in Dimock and Springville Townships,

Susquehanna County, Pennsylvania ("Affected Area"); discharge of natural gas into ground water in

the Affected Area; discharge of industrial waste/and or residual waste onto the ground and/or into

the waters of the Commonwealth; failure to submit well records; and failure to maintain a Driller's

Log.  The 2009 Agreement is maintained as a public document by the Department at its Northwest

Regional Office in Meadville, Pennsylvania, and is incorporated herein in full.

**April 15, 2010 Modification to the 2009 Agreement**

        D.     On April 15, 2010, the Department and Cabot entered into a Modification to the

November 4, 2009 Consent Order and Agreement ("First Modification") in resolution of Cabot's

failure to comply with all of its obligations under the 2009 Agreement. The First Modification is

maintained as a public document by the Department at its Northwest Regional Office in Meadville,

Pennsylvania, and is incorporated herein in full.  The 2009 Agreement as modified by the First

Modification is hereinafter referred to as the "Modified 2009 Agreement."

        E.     The Modified 2009 Agreement identified the following 14 Cabot Wells that the

Department had determined as having insufficient/improper casing and/or cementing and/or

overpressure, and are causing and/or have the potential to cause the unpermitted discharge of natural

gas into the groundwater in the Affected Area:  Baker No. 1; Ely No. 4; Ely No. 5H; Ely No. 7H; Teel No. 5; Brooks No. 1H; Gesford No. 2; Gesford No. 3; Gesford No. 9; Hubbard No. 5H; Ratzell No. 1H; Ratzell No. 2H; Teel No. 7; and the R Smith No. 4 Wells (collectively the "Defective Wells).

F.    Among other things, the Modified 2009 Agreement required Cabot to plug three of the Defective Wells, specifically the Gesford No. 3, Gesford No. 9, and the Baker No. 1. Additionally, the Modified 2009 Agreement required Cabot to complete any and all actions necessary at the Ely No. 4 to bring it into compliance with the Oil and Gas Act.

G.    On June 21, 2010, the Department determined that Cabot had completed the plugging of the Gesford No. 3, Gesford No. 9, and Baker No. 1, and had successfully brought the Ely No. 4 into compliance with the Oil and Gas Act as required by the Modified 2009 Agreement.

H.    Paragraph 4.m. of the Modified 2009 Agreement also required Cabot to permanently restore and/or replace the Affected Water Supplies by completing the installation of whole house treatment systems for the Affected Water Supplies within 30 days.

I.    Shortly after signing the First Modification, the Department became aware that several of the residents with Affected Water Supplies were not in favor of using a whole house treatment system as a permanent resolution to their impacted water supplies.

J.    On May 4, 2010, the Department met with several residents of Dimock Township, including those with Affected Water Supplies, to discuss their concerns over the whole house treatment systems.

K.    Due to the dissatisfaction expressed by residents with Affected Water Supplies over the whole house treatment systems, Cabot requested an extension of the 30 day time-frame set forth in Paragraph 4.m. of the Modified 2009 Agreement to address the residents concerns.

3

L.     On May 12, 2010, the Department sent Cabot a letter indicating that the Department would delay enforcement of Cabot's obligation to permanently restore and/or replace the Affected Water Supplies under the Modified 2009 Agreement until July 15, 2010.

M.     On May 17, 2010, several residents of Dimock Township, Susquehanna County, including 11 residents with Affected Water Supplies, appealed the First Modification to the Environmental Hearing Board and the appeal was docketed as EHB Docket No. 2010-064. EHB Docket No. 2010-064 has since been consolidated with another appeal by the residents of Dimock Township that is docketed as EHB Docket No. 2010-065 and the consolidated appeals are referenced as EHB Docket No. 2010-064.

N.     In resolution of Cabot's inability to install whole-house treatment systems in each of the 14 Affected Water Supplies due to residents' concerns with the whole house treatment systems, the Department has agreed to modify the Modified 2009 Agreement pursuant to Paragraph 17 of the Modified 2009 Agreement and as identified herein. Cabot agrees to comply with all of its obligations under the Modified 2009 Agreement as amended by this Second Modification.

## Order

After full and complete negotiation of all matters set forth in this Second Modification, and upon mutual exchange of the covenants contained herein, the Parties desiring to avoid litigation and intending to be legally bound, it is hereby ORDERED by the Department and AGREED to by Cabot as follows:

1.     *Authority*. This Second Modification is an Order of the Department and is authorized and issued pursuant to Section 5 of the Clean Streams Law, 35 P.S. §691.5; Section 503 of the Oil and Gas Act, 58 P.S. §601.503; Section 602 of the Solid Waste Management Act, 35 P.S. §6018.602; and Section 1917-A of the Administrative Code.

4

2.      *Findings.*

a.      Cabot agrees that the additional Findings in Paragraphs A through N, above, are true and correct and, in any matter or proceeding involving Cabot and the Department, Cabot shall not challenge the accuracy or validity of these Findings.

b.      The Parties do not authorize any other persons to use the Findings in the Modified 2009 Agreement, the First Modification, and this Second Modification in any matter or proceeding.

3.      *Paragraph 3.d.2) of the Modified 2009 Agreement.*  Paragraph 3.d.2) of the Modified 2009 Agreement shall be modified in its entirety and shall be replaced with the following language in quotation marks below:

3.      *Compliance, No Appeal, and Cease New Drilling/Hydro-Fracturing.*

d.      As of the date of this Modification, Cabot has submitted to the Department applications for permits to drill four additional gas wells within the Affected Area and 25 additional gas wells outside the Affected Area.

"2)     Regarding any current or future applications from Cabot for permits to drill additional gas wells outside the Affected Area, the Department will review and act upon such applications in accordance with the Oil and Gas Act so long as Cabot continues to provide temporary water and gas mitigation devices in accordance with Paragraph 4.h., below."

4.      *Paragraph 4.h. of the Modified 2009 Agreement.*  Paragraph 4.h. of the Modified 2009 Agreement shall be modified in its entirety and shall be replaced with the following:

4.      *Corrective Actions.*

"h.     Until Cabot has permanently restored all of the Affected Water Supplies in accordance with Paragraph 4.m., below, Cabot shall continue to provide and maintain temporary potable water and/or gas mitigation devices for all of the Affected Water Supplies."

5.    *Paragraph 4.m. of the Modified 2009 Agreement*.  Paragraph 4.m. of the Modified

2009 Agreement shall be modified in its entirety and shall be replaced with the following:

4.    *Corrective Actions*.

"m.    Within 60 days of this Second Modification, Cabot shall permanently

restore and/or replace all of the Affected Water Supplies in accordance with Section 208 of the Oil

and Gas Act, 58 P.S. §601.208, and 25 Pa. Code §78.51."

6.    *Paragraph 16 of the Modified 2009 Agreement*.  Paragraph 16 the Modified 2009

Agreement shall be modified in its entirety and shall be replaced with the following:

"16.    *Attorney Fees*.  The Parties shall bear their respective attorney fees, expenses,

and other costs in the prosecution or defense of this matter or any related matters, arising prior to

execution of this Consent Order and Agreement.  Cabot shall pay any attorneys fees or litigation cost

awarded against the Department regarding the consolidated appeal docketed at EHB  No. 2010-064."

7.    *Remainder of Modified 2009 Agreement in Force and Effect*.  Except for the

modifications to Paragraphs 3.d.2), 4.h., 4.m., and 16 of the 2009 Modified Agreement, as expressly

stated herein, the Findings and all other terms and conditions of the 2009 Agreement and the First

Modification shall remain in full force and effect between the Parties.

IN WITNESS WHEREOF, the Parties have caused this Second Modification to be executed

by their duly authorized representative.  The undersigned representative of Cabot certifies under

penalty of law, as provided by 18 Pa.C.S.A. §4904, that he is authorized to execute this Second

Modificationon behalf of Cabot, that Cabot consents to the entry of this Second Modification as a

final ORDER of the Department, and that Cabot hereby knowingly waives its right to appeal this

Second Modification and to challenge its content or validity, which rights may be available under

Section 4 of the Environmental Hearing Board Act, the Act of July 13, 1988, P.L. 530, No. 1988-94,

35 P.S. §7514; the Administrative Agency Law, 2 Pa.C.S.A. §103(a) and Chapters 5A and 7A; or

6

any other provision of law.  Signature by Cabot's attorney certifies only that this Second

Modification has been signed after consulting with counsel.

**FOR CABOT OIL & GAS CORPORATION:**   **FOR THE COMMONWEALTH OF**
**PENNSYLVANIA, DEPARTMENT OF**
**ENVIRONMENTAL PROTECTION:**


Dan O. Dinges                                              S. Craig Lobins
Chief Executive Officer                               Regional Manager
                                                                     Oil and Gas Management Program
                                                                     Northwest Region


Kevin Cunningham, Esq.                          Donna L. Duffy
Associate General Counsel                       Regional Counsel


M:Braymer\Cabot\CO&ASecondModification7-10.doc

7

## Leslie Lewis

| | |
|---|---|
| **From:** | Duffy, Donna [doduffy@state.pa.us] |
| **Sent:** | Wednesday, August 04, 2010 4:45 PM |
| **To:** | 'Kevin Cunningham'; Leslie Lewis; 'Hosking, Richard'; 'Paul M. Schmidt' |
| **Cc:** | Alan Fuchsberg; 'Richard Lippes'; Braymer, Michael; Perry, Scott; Shinkman, Susan |
| **Subject:** | Cabot/Dimock Twp.; copies of Cabot CO&A and modifications |
| **Attachments:** | CO&A Final 110409.pdf; 1048_001.pdf; 1154_001.pdf |

**November 4, 2009 Agreement**          **April 15, 2010 Modification**          **July 19, 2010 Modification**

Dear Counsel:

      Attached for your convenience is a copy of the November 4, 2009 consent order and agreement between the Department and Cabot, as modified on April 15, 2010, and July 19, 2010. As you know, the Appellants have appealed the April 15 modification, but this document was revised by the July 19 modification. In accordance with Paragraph 4.m. of the July 19, 2010 modification, Cabot must, by September 17, 2010, permanently restore and/or replace the 14 Affected Water Supplies identified in the consent order and agreement in accordance with Section 208 of the Oil and Gas Act, 58 P.S. §601.208, and 25 Pa. Code §78.51.

      Tomorrow, I will send to you an electronic copy of charts containing a summary of the results of Department samples of water supplies. For your information, both Mike and I will be out of the office on Friday, August 6, 2010, and we will be traveling to Harrisburg on Monday, August 9, 2010. If you have any questions about the settlement meeting scheduled for Tuesday, August 10, 2010, please do not hesitate to call Mike or me on Thursday at our office (814-332-6070), or call my cell phone (814-720-8614) while we travel on Monday. Thank you.

Sincerely,

## Donna L. Duffy

Donna L. Duffy
Regional Counsel

Donna L. Duffy | Regional Counsel
Department of Environmental Protection
Northwest Regional Office
230 Chestnut St.| Meadville, PA 16335
Phone: 814.332.6070 | Fax: 814.332.6996
doduffy@state.pa.us

*The information transmitted is intended only for the person or entity to whom it is addressed and may contain confidential and/or privileged material. Any use of this information other than by the intended recipient is prohibited. If you receive this message in error, please send a reply e-mail to the sender and delete the material from any and all computers. Unintended transmissions shall not constitute waiver of the attorney-client or any other privilege.*

## COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF ENVIRONMENTAL PROTECTION

**IN THE MATTER OF:**

| | | |
|---|---|---|
| Cabot Oil & Gas Corporation | : | The Clean Streams Law |
| Dimock and Springville Townships | : | Oil and Gas Act |
| Susquehanna County | : | |

## **CONSENT ORDER AND SETTLEMENT AGREEMENT**

This Consent Order and Settlement Agreement is entered into this 15th day of December

2010, by and between the Commonwealth of Pennsylvania, Department of Environmental Protection

("Department") and Cabot Oil & Gas Corporation ("Cabot").

### **Findings**

The Department has found and determined the following:

A.      The Department is the agency with the duty and authority to administer and enforce

The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§691.1-691.1001

("Clean Streams Law"); the Oil and Gas Act, Act of December 19, 1984, P.L. 1140, *as amended*, 58

P.S. §§601.101-601.605 ("Oil and Gas Act"); Section 1917-A of the Administrative Code of 1929,

Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§510-17 ("Administrative Code"); and the

rules and regulations promulgated thereunder ("Regulations").

B.      Cabot is a Delaware corporation registered to do business in Pennsylvania and is

engaged in various oil and gas exploration and production activities in Pennsylvania, including in

Dimock and Springville Townships, Susquehanna County.  Cabot maintains a mailing address at

5 Penn Center West, Suite 401, Pittsburgh, PA 15276.

C.      Cabot is the "owner" and "operator," as those terms are defined in Section 103 of the

Oil and Gas Act, 58 P.S. §601.103, of certain gas wells, or has received permit authorization from

the Department to drill wells, within an area defined as follows:  South of 41 degrees 45 minutes

latitude; East of -75 degrees 54 minutes 11 seconds longitude; North of 41 degrees 42 minutes 14 seconds latitude; and West of -75 degrees 50 minutes 48 seconds longitude in Dimock and Springville Townships, Susquehanna County, Pennsylvania ("Dimock/Carter Road Area," which is the same as the "Affected Area" in the Modified 2009 Agreement.). A map of the Dimock/Carter Road Area is attached as Exhibit A and incorporated herein.

      D.      On November 4, 2009, the Department and Cabot executed a Consent Order and Agreement, which the Parties modified on April 15, 2010, and July 19, 2010 (collectively the "Modified 2009 Agreement"). This Consent Order and Settlement Agreement replaces the Modified 2009 Agreement.

      E.      The gas wells that Cabot has plugged within the Dimock/Carter Road Area to date, the gas wells that Cabot has drilled and is producing within the Dimock/Carter Road Area, and the gas wells that Cabot has drilled but has not yet fraced within the Dimock/Carter Road Area (collectively "the Dimock/Carter Road Gas Wells") are identified on Exhibit B and incorporated herein.

      F.      The Department has determined that eighteen (18) drinking water supplies that serve nineteen (19) homes within the Dimock/Carter Road Area have been affected from the drilling activities at the Dimock/Carter Road Gas Wells (collectively the "Water Supplies"). The owners of the nineteen (19) homes that are served by the Water Supplies are identified on Exhibit C and incorporated herein (collectively the "Property Owners").

      G.      As of the date of this Consent Order and Settlement Agreement, Cabot has undertaken, among other things, the following actions:

                1.      Plugged and abandoned three of the Dimock/Carter Road Gas Wells -- Baker 1, Gesford 3, and Gesford 9. To date, Cabot has not yet completed the restoration of the Gesford 3 and Gesford 9 Gas Well Sites;

2

2.   Reconditioned the Ely 4 Gas Well by squeezing the annular space, thereby eliminating the pressure that was present in a portion of the annular space between the 41/2 and 7 inch casings on the Gas Well, and conducted similar remedial actions at the Ratzel 2H Gas Well after September 14, 2010;

3.   Prepared and implemented a plan to check the integrity of the Dimock/Carter Road Gas Wells;

4.   Provided temporary, whole house water supplies to owners of residences within the Dimock/Carter Road Area, including to the Property Owners;

5.   Provided new vent stacks or extended existing vent stacks on Water Supplies; and

6.   Paid $570,000 to the Department in settlement of civil and monthly stipulated penalties.

H.   The Department has determined that Cabot has not: (1) permanently restored and/or replaced all of the Water Supplies by September 17, 2010; (2) completely eliminated the unpermitted discharge of natural gas into the waters of the Commonwealth from the Dimock/Carter Road Gas Wells by November 1, 2010; and (3) plugged or taken other remedial actions at certain of the Dimock/Carter Road Gas Wells by November 13, 2010.

I.   Regarding Department costs, from November 4, 2009, to the date of this Consent Order and Settlement Agreement, the Department has incurred costs for staff, lab analyses, and other Department expenses and costs relating to the Dimock/Carter Road Gas Wells, the Water Supplies, and the Modified 2009 Agreement.

J.   The Department has determined that the items identified in Paragraph H, above, constitute unlawful conduct by Cabot pursuant to Section 509 of the Oil and Gas Act, 58 P.S. §601.509, and Section 611 of the Clean Streams Law, 35 P.S. §691.611.

K.   Cabot disagrees with the substance of the Department's determinations in Findings F, H, and J. However, Cabot agrees to and shall fulfill all of the terms and obligations of this Consent

3

Order and Settlement Agreement. By entering into this Consent Order and Settlement Agreement, Cabot and the Department desire to fully and finally resolve the items identified in Paragraph L, below.

      L.      To avoid litigation, to resolve the items set forth above in Paragraphs F, H, and J, and as complete and final settlement of any known claims, demands, stipulated civil penalties, and/or sanctions of any type that the Department has made or could have made against Cabot to date relating to the items set forth in Paragraphs F, H, and J, above, relating to the Modified 2009 Agreement, the Dimock/Carter Road Area, and the Dimock/Carter Road Gas Wells, including for obligations under Section 208 of the Oil and Gas Act, 58 P.S. §601.208, and 25 Pa. Code §78.51, to pay for or restore and/or replace the Water Supplies, or to provide for ongoing operating or maintenance expense of such restoration or replacement, and to provide reimbursement for certain costs incurred by the Department to date, Cabot shall: perform the remediation activities to the Ely 2H and Ely 6H Gas Wells as set forth in Paragraph 5.c., below; pay $500,000; and shall complete the requirements below and as approved by the Department in accordance with this Consent Order and Settlement Agreement.

## Order

      After full and complete negotiation of all matters set forth in this Consent Order and Settlement Agreement, and upon mutual exchange of the covenants contained herein, the Parties desiring to avoid litigation and intending to be legally bound, it is hereby ORDERED by the Department and AGREED to by Cabot as follows:

      1.      *Authority*. This Consent Order and Settlement Agreement is an Order of the Department authorized and issued pursuant to Section 5 of the Clean Streams Law, 35 P.S. §691.5, Section 503 of the Oil and Gas Act, 58 P.S. §601.503, and Section 1917-A of the Administrative Code.

4

2.  ***Findings and Effect on Third Parties.***

    a.    This Consent Order and Settlement Agreement is a settlement between the Department and Cabot, and is a settlement only for the matters specifically addressed herein. This Consent Order and Settlement Agreement replaces the Modified 2009 Agreement.

    b.    Cabot disagrees with the substance of the Department's determinations in Findings F, H, and J. However, Cabot agrees to and shall fulfill all of the terms and obligations of this Consent Order and Settlement Agreement. Cabot agrees that the Findings in Paragraphs A-L, above, are true and correct and, in any matter or proceeding involving Cabot and the Department, Cabot shall not challenge the accuracy or validity of these Findings.

3.  ***Compliance, Permits Inside the Dimock/Carter Road Area, Cabot Agreement and Statements.***

    a.    Cabot hereby agrees that it shall take all actions necessary including, but not limited to, the requirements set forth in this Consent Order and Settlement Agreement, to comply with all applicable environmental laws and regulations, including all applicable provisions of the Clean Streams Law, Oil and Gas Act, and the Regulations.

    b.    Cabot hereby certifies that it has entered into this Consent Order and Settlement Agreement freely, under no coercion of any kind, and after consulting with Counsel. As identified herein, Cabot hereby agrees to comply with all of its obligations under this Consent Order and Settlement Agreement, and Cabot intends to be legally bound by this Consent Order and Settlement Agreement.

    c.    Cabot agrees that this Consent Order and Settlement Agreement is valid, is a binding obligation upon Cabot and is a final Order of the Department, and neither Cabot nor any authorized representative, agent, or attorney of Cabot or representing Cabot in any court or administrative forum shall state or argue otherwise for any purpose.

4.      *New Drilling And Hydro-fracturing Inside the Dimock/Carter Road Area.*

a.      After the date of this Consent Order and Settlement Agreement, for any of the seven (7) Dimock/Carter Road Gas Wells identified in Paragraph 3.c.2) of the Modified 2009 Agreement (A&M Hibbard 2H; A&M Hibbard 4; Ely 1H; Baker 3; Gesford 4R; Gesford 8H NW; and P. Kelly 1) that Cabot has drilled but not yet hydro-fractured, Cabot may begin hydro-fracturing any such Gas Well or Wells *only* upon receipt of written notice from the Department that Cabot has, as of the date Cabot proposes to frac said Gas Well or Wells, complied with all of its obligations as to said Gas Well or Wells under Paragraph 3.a., above, including obtaining all required permits or other authorizations from the Department, and under Paragraph 5.a, below.

b.      In all cases, Cabot shall not complete the drilling of any of Dimock/Carter Road Gas Wells, and shall not begin the drilling of any new Gas Wells within the Dimock/Carter Road Area until after April 15, 2011, at the earliest, and in accordance with all of the requirements of this Paragraph.

c.      Before the drilling permit expires for any of the Dimock/Carter Road Gas Wells, Cabot may submit a request to the Department to renew the drilling permit in accordance with 25 Pa. Code §78.17, and the Department will promptly process any such request in accordance with the applicable regulations.

d.      After April 15, 2011, Cabot may complete the drilling of any of the Dimock/Carter Road Gas Wells, and/or may begin the drilling of any new Gas Wells within the Dimock/Carter Road Area *only* upon receipt of written notice from the Department that, as to said Gas Well or Wells:

       i.      Cabot is in compliance with all of its obligations under Paragraph 5, below;

6

    ii.    Cabot is, as of the date Cabot proposes to drill said Gas Well or Wells, in compliance with the applicable requirements of Paragraph 3.a., above, including obtaining all required permits or other authorizations from the Department; and

    iii.    Cabot is in compliance with all other obligations under this Consent Order and Settlement Agreement as of the date Cabot plans to drill said Gas Well or Well(s).

5.    ***Compliance Obligations Of Cabot With Respect to the Dimock/Carter Road Area Gas Wells***.  All compliance obligations of Cabot under this Consent Order and Settlement Agreement with respect to the Department's claims under the Modified 2009 Agreement, the Oil and Gas Act, and the Clean Streams Law, other than the claims in Paragraph 6, below, are satisfied subject to the Department providing Cabot written notice that Cabot has performed the following:

    a.    <u>Gas Well Pressure Testing</u>.

    i.    Within seven (7) days of the date of this Consent Order and Settlement Agreement, Cabot shall provide to the Department the hydrocarbon bearing intervals for each of the Dimock/Carter Road Gas Wells based on data collected by Cabot during the past drilling of each of Dimock/Carter Road Gas Wells;

    ii.    Within seven (7) days of the date of this Consent Order and Settlement Agreement, Cabot shall begin pressure testing of each accessible annuli on each of the Dimock/Carter Road Gas Wells.  Cabot shall pressure test each annuli for forty-eight (48) consecutive hours, and shall provide the test results for each of the Dimock/Carter Road Gas Wells to the Department within five (5) days of completion of the pressure test on that Gas Well.  At least twenty-four (24) hours before Cabot begins pressure testing in accordance with this Paragraph, Cabot shall provide the Department written notice of the Gas Well to be tested and the date and the approximate time that Cabot shall begin such pressure test;

    iii.    In all cases, Cabot shall have completed the 48-hour pressure test of the annuli on all of the Dimock/Carter Road Gas Wells, and shall provide the Department with the results of the pressure tests for all of the Dimock/Carter Road Gas Wells within sixty (60) days of the date of this Consent Order and Settlement Agreement; and

    iv.    If the pressure data required to be provided above indicates that the Gas Well in question is in compliance with Chapter 78 of the proposed regulations or such regulations that are finally enacted, then said Gas

7

Well shall, absent contradictory data reviewed by the Department, be considered to not be discharging natural gas into the aquifer.

b.    Screening/Water Sampling.  Cabot has received copies of the results of screenings for free combustible gas and of the laboratory analyses of all samples taken by the Department at the Water Supplies to date.  In addition to the screenings and sampling done by the Department, beginning upon execution of this Consent Order and Settlement Agreement, Cabot shall:

    i.    at least once every two weeks, screen the well head at each Water Supply for percentage of free combustible gas, and sample the well water at each Water Supply;

    ii.    for each water sample collected at a Water Supply, Cabot shall have the water sample analyzed in a Pennsylvania-licensed laboratory for dissolved methane, dissolved ethane, and dissolved propane;

    iii.    provide the Department a copy of the results of the screening for free combustible gas, and the laboratory analyses of each water sample within five  (5) days of Cabot's receipt of the analyses by its laboratory;

    iv.    Cabot shall continue to conduct the screening and sampling under Paragraph 5.b.i., above, once every two weeks at each Water Supply until the results of the screenings and sampling done by the Department in the past and by Cabot under Paragraph 5.b.i., above, show that either no combustible free gas is present at the wellhead for the Water Supply or that such levels of combustible free gas, if properly vented pursuant to applicable regulations and Department practice, do not pose a danger to persons or property *and* the concentration of dissolved methane is below 7 milligrams/liter ("mg/l"), or meets the standard then prescribed by applicable regulations.  However, Cabot may petition the Department, based on information obtained in accordance with this Paragraph for a determination that the concentration of methane in the Water Supply is at background levels for the aquifer that supplies that Water Supply.  Cabot may further petition the Department for a determination that the concentration of combustible free gas at the wellhead is at levels that do not present a danger to persons or property if properly vented according to applicable regulations and Department practice;

    v.    for each Water Supply that meets the standards under Paragraph 5.b.iv, above, Cabot shall continue to screen each such Water Supply for free combustible gas and shall sample each such Water Supply at least

once per quarter, and shall have the water sample analyzed in a Pennsylvania-licensed laboratory for dissolved methane only. Cabot shall provide the Department a copy of the results of the screening for free combustible gas, and the laboratory analyses of each water sample within five (5) days of Cabot's receipt of the screening results and water sample analyses by its laboratory; and

vi.     unless the Department determines that the concentration of methane in the Water Supply is at background levels for the aquifer that supplies that Water Supply, Cabot shall continue such screenings and sampling under Paragraph 5b.v., above, for each quarter until the results of the screenings and sampling done by the Department in the past and by Cabot under this Paragraph 5 show that, for eight consecutive quarters, seventy-five percent of the water samples within each monitoring point over time contain 7 mg/l or less of dissolved methane (or meets the standard then prescribed by applicable regulations), and no individual water sample exceeds two times this standard.

c.     Beginning no more than 30 days from the date of this Consent Order and Settlement Agreement and continuing each day until 120 days from the date of this Consent Order and Settlement Agreement, Cabot shall complete any and all actions to the extent necessary, if any, to bring the Ely 2H Gas Well and Ely 6H Gas Well into compliance with the Oil and Gas Act, the Clean Streams Law, and the Regulations.

6.     ***Settlement of Restoration/Replacement Obligation***.  The claims by the Department regarding Cabot's obligations under Section 208 of the Oil and Gas Act, 58 P.S. §601.208, and 25 Pa. Code §78.51, including any obligation of Cabot to pay for or restore and/or replace the Water Supplies, or to provide for ongoing operating or maintenance expense shall be satisfied, as follows:

a.     Escrow Fund.

i.     Within thirty (30) days after the date of this Consent Order and Settlement Agreement, Cabot shall establish nineteen (19) Escrow Funds and each Escrow Fund shall hold an amount equal to, whichever is greater: $50,000; or two times the assessed value by the Susquehanna County Tax Assessor of the property(ies) owned by the Property Owners within the Dimock/Carter Road Area.  Such assessed values for each property owned by the Property Owners are listed in chart attached as Exhibit D;

9

ii.    Within ten (10) days after Cabot has established and funded the nineteen (19) Escrow Funds in accordance within Paragraph 6.a.i., above, Cabot shall notify each Property Owner, in writing, of the existence of the funds in the Escrow Fund for that Property Owner, the procedure by which the Property Owner can obtain his/her/their payment from the Escrow Fund;

iii.    Cabot shall pay all fees and costs associated with each of the Escrow Funds. The funds in the Escrow Funds shall be paid to Property Owners, their duly authorized attorney or representative or the heirs of the Property Owners in accordance with this Paragraph 6 and the Escrow Agreement attached hereto as Exhibit E. Exhibit E shall be the model of the Escrow Agreement that Cabot shall use for each of the Escrow Funds established under Paragraph 6.a.i, above, and is incorporated herein; and

iv.    If the Escrow Agent and Cabot have not received the executed and notarized Receipt provided for in the Escrow Agreement from the Property Owner on or prior to the 45th day after the date that the Property Owner has received written notice of the Escrow Fund in accordance with this Consent Order and Settlement Agreement, the Escrow Agent shall continue to hold the Escrow Fund until December 31, 2012. During such time period the Escrow Agent shall deliver all proceeds from the Escrow Fund to the Property Owner if and only if the Escrow Agent receives unqualified and unconditional written instruction to do so from a duly authorized representative of the Department and from a duly authorized representative of Cabot. If as of December 31, 2012, the Property Owner has not claimed and received the Escrow Fund, the Escrow Agent shall deliver all proceeds from the Escrow Fund to Cabot on January 2, 2013, together with all interest and/or earnings attributable to the Escrow Fund.

b.    <u>Effect of Notification to Department.</u>  After the time has passed for the Escrow Fund to be funded in accordance with Paragraph 6.a.i., above, and upon completion of the restoration activities described below, the Department's claims regarding Cabot's obligations under Section 208 of the Oil and Gas Act, 58 P.S. §601.208, and 25 Pa. Code §78.51, to restore and/or replace a Water Supply that serves the property owned by a Property Owner shall be satisfied upon the Department's receipt of information from Cabot that verifies that: the nineteen (19) Escrow Funds have been established and fully funded in accordance with Paragraph 6.a.i, above; each of the Property Owners have received written notice from Cabot of the Escrow Fund and of the procedure

by which the Property Owner can obtain his/her/their payment from such Escrow Fund; *and* each of the Property Owners have received written notice from Cabot that it will install a whole house gas mitigation device at the property as provided for below.

        c.      For each Property Owner, Cabot shall continue to provide and maintain temporary potable water and, as applicable, shall continue to maintain gas mitigation devices that it had previously installed until Cabot receives written notice from the Department that it has complied with all of the requirements of Paragraph 6.a-6.b., above, for that Property Owner.

        d.      As long as Cabot provides temporary water to the Property Owners under Paragraph 6.c., above, from a water purveyor and/or water hauler, Cabot shall assure that the water purveyor/hauler has all licenses, permits, and/or other authorizations required under Pennsylvania law and Regulations, and that the Property Owners receive water in amounts sufficient to continually satisfy water usage needs until Cabot receives written notice from the Department that it has complied with all of the requirements of Paragraphs 6.a.-6.b., above, for that Property Owner.

        e.      As of the date of this Consent Order and Settlement Agreement, Cabot has purchased whole house gas mitigation devices for residential water supplies within the Dimock/Carter Road Area and it has drilled new drinking water wells to serve other residences within the Dimock/Carter Road Area.  Within 30 days of the date of this Consent Order and Settlement Agreement, Cabot shall notify each Property Owner, in writing, that Cabot will install, at Cabot's sole expense, a whole house gas mitigation device at the Property Owner's residence.

        f.      If the Property Owner notifies Cabot, in writing, within sixty (60) days from the date that the Property Owner received the written notice in accordance with Paragraph 6.e, above, that he/she/they agree(s) to Cabot installing a whole house gas mitigation device at his/her/their residence, Cabot shall complete such action at the residence within ninety (90) days from the date that the Property Owner notified Cabot, in writing, of his/her/their agreement.

11

7.      ***Settlement of Claims for Stipulated Civil Penalties and Department Costs.*** Upon signing this Consent Order and Settlement Agreement, Cabot shall pay $500,000 in complete and final settlement of any known claims or demands of any type that Department has made or could have made against Cabot relating to stipulated penalties under the Modified 2009 Agreement through the date of this Consent Order and Settlement Agreement, and to provide reimbursement for certain costs incurred by the Department to date. The payment shall be made by corporate check or the like made payable to "Commonwealth of Pennsylvania" and sent to the Department at the address set forth in Paragraph 10, below.

8.      ***Reservation of Rights.*** The Department reserves the right to require additional measures to achieve compliance with applicable law. To date, the Department has not identified any defective Dimock/Carter Road Gas Wells other than the Gesford No. 3, Gesford No. 9, Baker No. 1, Ely No. 4, Ely 2H and Ely 6H Wells. However, in the event the Department receives new data or information concerning said Wells or any other Dimock/Carter Road Gas Wells, the Department reserves the right to require additional measures to achieve compliance with applicable law, including additional measures to take remedial actions to fix defective Dimock/Carter Road Gas Wells, and to eliminate any unpermitted discharge of natural gas into the waters of the Commonwealth from the Dimock/Carter Road Gas Wells. Cabot reserves the right to challenge any action which the Department may take to require those measures.

9.      ***Liability of Cabot.*** Cabot shall be liable for any violations of this Consent Order and Settlement Agreement, including those caused by, contributed to, or allowed by its officers, directors, agents, employees, contractors, successors, and assigns.

12

10.   ***Correspondence with and Notice to the Department***.  All correspondence with and notice to the Department concerning this Consent Order and Settlement Agreement shall be addressed to:

> Mr. Craig Lobins, Regional Manager
> Oil and Gas Management
> Department of Environmental Protection
> 230 Chestnut Street
> Meadville, PA  16335-3481
> Telephone:  814-332-6860
> Fax: 814-332-6121

11.   ***Correspondence with Cabot***.  All correspondence with Cabot concerning this Consent Order and Settlement Agreement shall be addressed to:

> Mr. Phil Stalnaker
> Cabot Oil & Gas Corporation
> 5 Penn Center West, Suite 401
> Pittsburgh, PA  15276
> Telephone: 412-249-3850
> Fax: 412-249-3855

Cabot shall notify the Department whenever there is a change in the contact person's name, title, or address.  Service of any document or notice by the Department under this Consent Order and Settlement Agreement may be made by mail to the above address.  However, service of any legal process by the Department for any purpose under this Consent Order and Settlement Agreement, including its enforcement, will be made by mailing a copy by certified mail, return receipt requested, to the above address.

12.   ***Decisions Under Consent Order and Settlement Agreement***.  Any decision which the Department makes under the provisions of this Consent Order and Agreement, including a notice that stipulated civil penalties are due, is intended to be neither a final action under 25 Pa. Code §1021.2, nor an adjudication under 2 Pa.C.S.A. §101.  Cabot hereby agrees that it shall not appeal to the Pennsylvania Environmental Hearing Board and/or shall not file any action of any kind with any Pennsylvania State or Federal Court of any decision by the Department on or arising from any matter

13

under this Consent Order and Settlement Agreement. Any objection which Cabot may have to any decision by the Department on or arising from any matter under this Consent Order and Settlement Agreement will be preserved until the Department enforces this Consent Order and Settlement Agreement.

13. ***Acknowledgment of No Obligation.***

a. In conjunction with Cabot, the Department will defend this Consent Order and Settlement Agreement in any future appeal(s) brought by or on behalf of any Property Owner and/or any other person or entity.

b. Except for any future appeal(s) of this Consent Order and Settlement Agreement brought by or on behalf of any Property Owner and/or any other person or entity, Cabot acknowledges that the Department has no obligation to defend it in any existing or future other appeal, or in any litigation, lawsuit, demand, or claim for any issue, including damages, brought by or on behalf of any Property Owner and/or any other person or entity for any matters arising from the Dimock/Carter Road Gas Wells, the Water Supplies, any other Consent Order and Agreement, this Consent Order and Settlement Agreement, and/or any and all other matters relating in any way to Cabot and/or the Dimock/Carter Road Area.

14. ***Severability***. The Paragraphs of this Consent Order and Settlement Agreement shall be severable and should any part hereof be declared invalid or unenforceable, the remainder shall continue in full force and effect between the Parties.

15. ***Entire Agreement***. This Consent Order and Settlement Agreement shall constitute the entire integrated agreement of the Parties as to the subject matter hereof. No prior or contemporaneous communications or prior drafts shall be relevant or admissible for purposes of determining the meaning or intent of any provisions herein in any litigation or any other proceeding.

14

16. *Attorneys' Fees*.

a.　　Except as stated herein, the Parties shall bear their respective attorney fees, expenses, and other costs in the prosecution or defense of this matter or any related matters, arising prior to execution of this Consent Order and Settlement Agreement.

b.　　Cabot shall pay the Department for any attorneys' fees or litigation cost awarded against the Department for the consolidated appeal docketed at EHB No. 2010-065 regarding the Modified 2009 Agreement, and/or any attorneys fees or litigation cost awarded against the Department for any appeal(s) filed in the future by any Property Owner and/or any other person or entity regarding this Consent Order and Settlement Agreement.

c.　　Payment to the Department under Paragraph 16.b., above, shall be on or before the 15th day of the succeeding month, and shall be made by corporate check or the like made payable to "Commonwealth of Pennsylvania" and sent to the Department at the address set forth in Paragraph 10, above.

17. **Modifications**.  No changes, additions, modifications, or amendments of this Consent Order and Settlement Agreement shall be effective unless they are set out in writing and signed by the Parties.

18. **Titles**.  A title used at the beginning of any Paragraph of this Consent Order and Settlement Agreement may be used to aid in the construction of that Paragraph, but shall not be treated as controlling.

19. **Termination of Consent Order and Settlement Agreement**.  Cabot's obligations under this Consent Order and Settlement Agreement shall terminate when Cabot has complied with all of its obligations under this Consent Order and Settlement Agreement.

IN WITNESS WHEREOF, the Parties have caused this Consent Order and Settlement Agreement to be executed by their duly authorized representative.  The undersigned representative

15

of Cabot certifies under penalty of law, as provided by 18 Pa.C.S.A. §4904, that he is authorized to

execute this Consent Order and Settlement Agreement on behalf of Cabot, that Cabot consents to the

entry of this Consent Order and Settlement Agreement as a final ORDER of the Department; and

that Cabot hereby knowingly waives its right to appeal this Consent Order and Settlement

Agreement and to challenge its content or validity, which rights may be available under Section 4 of

the Environmental Hearing Board Act, the Act of July 13, 1988, P.L. 530, No. 1988-94, 35 P.S.

§7514; the Administrative Agency Law, 2 Pa.C.S.A. §103(a) and Chapters 5A and 7A; or any other

provision of law.  Signature by Cabot's attorney certifies only that the Consent Order and Settlement

Agreement has been signed after consulting with counsel.

**FOR CABOT OIL & GAS CORPORATION:**   **FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION:**

_____
Dan O. Dinges
Chief Executive Officer

_____
S. Craig Lobins
Regional Manager
Oil and Gas Management Program
Northwest Region

_____
Kevin Cunningham, General Counsel

_____
Susan Shinkman, Chief Counsel

DoDuffy\Cabot\2010 CO&A\Final CO&A 121510 .doc