**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NOLEN SCOTT ELY, et al.,** | : | **Civil No. 3:09-CV-2284** |
| | : | |
| **Plaintiffs** | : | **(Judge Jones)** |
| | : | |
| **CABOT OIL & GAS** | : | **(Magistrate Judge Carlson)** |
| **CORPORATION, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM AND ORDER</u>

## I.   <u>INTRODUCTION</u>

This lawsuit was initiated on November 19, 2009, by a group of 44 Plaintiffs who collectively filed suit to recover damages for injuries and property damage allegedly suffered as the result of the Defendants' natural gas drilling operations in Dimock Township, Susquehanna County, Pennsylvania.  Subsequent to this case being filed, a number of the Plaintiffs reached settlement agreements with the Defendants, and at this juncture only 10 Plaintiffs remain in the case.  Those Plaintiffs include Nolen Scott Ely and Monica L. Marty-Ely, individually, and as parents and natural guardians of their three minor children (the "Elys" or "Ely Family"); Nolen Scott Ely, as Executor for the Estate of Kenneth R. Ely ("Estate"); and Ray and Victoria Hubert, individually, and as the parents and natural guardians of one minor

child, and a child who has since reached the age of majority, Angel Hubert ("Huberts") (collectively, "Plaintiffs").

The claims of the Plaintiffs are now subject to multiple pending dispositive motions filed by Defendants Cabot Oil & Gas Corporation ("Cabot") and GasSearch Drilling Services Corporation ("GDS") (collectively, "Defendants"). (Docs. 386, 390, 394, 398.) In the related motion currently before the Court, the Defendants have moved to strike the affidavits and partial supplemental opinions of the Plaintiffs' proposed expert witnesses on the grounds that the supplemental opinions are untimely and are, in fact, entirely new opinions that were not timely disclosed, and thus could not be subjected to rebuttal prior to the Defendants filing their motions for summary judgment in this case. The Defendants also argue that the belated reports should be stricken because to allow consideration of these late-filed reports would substantially prejudice the Defendants who have incurred time and expense in reliance upon the Court's expert report deadline in preparing their dispositive motions. (Doc. 434.)

The Plaintiffs have opposed the motion, arguing that it would be more equitable to modify the case management schedule to have the supplemental reports deemed timely, and to allow additional time for the Plaintiffs' property valuation expert to submit a final valuation report regarding the alleged diminution of the value of the Plaintiffs' surface and subsurface rights as a result of the Defendants' gas

2

drilling activities near the Plaintiffs' property.   (Doc. 451.)   The Plaintiffs

acknowledge that the expert reports and opinions that were provided to Defendants'

counsel were "incomplete and not [sic] inconclusive", (id., at ¶ 9), but urge the Court

to allow the supplemental opinions in this case because to do otherwise would deal

a devastating blow to the Plaintiffs' ability to resist the Defendants' pending motions,

an effort the Plaintiffs have been undertaking for some time as *pro se* litigants.[1]   The

Plaintiffs' experts have attested that their earlier reports were incomplete as filed, and

---

[1] The Plaintiffs' efforts to litigate their claims has been impaired in no small part due to their own litigative strategy and decisions, and also by the undisputed fact that the Plaintiffs lost their legal representation at a critical point in this litigation, when their prior counsel withdrew her appearance after the district court found that she had made material misrepresentations about her admission to the Pennsylvania bar.  The Plaintiffs' briefs, which they steadfastly maintained were prepared and filed *pro se*, now appear to have had the assistance of ghost writing from their former counsel, although in many respects the briefs and other submissions bear indicia of having been prepared by those unschooled in the law.

Although we acknowledge that there is a dispute among the parties regarding the extent of the behind-the-scenes legal assistance that the Plaintiffs have received in this case, it is clear from review of the materials that the Plaintiffs have filed that they have been in the position of shouldering much of the prosecution of their cases since their prior lawyer was forced to withdraw, and until very recently the Plaintiffs were acting pro se.  This changed after the Defendants moved to strike other documents that were filed, and to impose sanctions on the Plaintiffs' former lawyer and another young lawyer for ghost writing some of the Plaintiffs' legal briefs.  It was this motion for sanctions that resulted in Samuel Stretton, Esq. entering his appearance in this case on behalf of the Plaintiffs', as well as on behalf of their former counsel and her assistant.  The Plaintiffs now have legal representation in this matter, which substantially changes the outlook on the progress of this action going forward.

it is suggested that the fault for this incomplete filing rests with the Plaintiffs' former counsel.  In their reply, the Defendants brush aside these arguments as irrelevant, and maintain that the Plaintiffs have engaged in repeated instances of willful disregard of the scheduling orders in this case, and contend that the Court should reject their request out of hand because to do otherwise would result in manifest and incurable prejudice to the Defendants.

Upon consideration, although we agree with the Defendants that the supplemental reports in this case appear in some cases to approach substantive revisions to the Plaintiffs' expert reports as initially filed, we do not agree that the reports should be stricken outright because, in the context of this particular litigation, such an extreme sanction would be inappropriate.  We also agree with the Defendants that scheduling orders must be honored, and note that the Plaintiffs have at times approached the case-management deadlines less as commandments than suggestions. However, we also find that to embrace the Defendants' suggestion, and to strike the Plaintiffs' proposed expert reports, could result in the Plaintiffs' claims being significantly impaired.  Moreover, given the static posture of this litigation at present, and the fact that this case will not likely be tried for many months, we are confident that the Court, with the benefit of the parties' input, will be able to fashion narrower relief that is more equitable given the circumstances of this case.

Thus, because the question of whether to strike the reports is within the Court's discretion, and because we believe that the Court and the parties can address the late-filed reports in a way that mitigates harm to the Defendants while preserving the Plaintiffs' effort to support their claims in this case, we believe that striking the reports would be an unreasonable sanction, particularly in litigation that is nearly four and a half years old and involves important claims to the parties. Accordingly, the Defendants' motion to strike will be denied, without prejudice to the Defendants filing a motion seeking other, more narrowly tailored sanctions in this case.

## II.   <u>DISCUSSION</u>

In the motion, the Defendants have moved to strike what they characterize as three entirely new expert opinions that were disclosed for the first time as part of the Plaintiffs' opposition to the Defendants' motions for summary judgment, and which were filed nearly ten months after the August 2012 deadline for the Plaintiffs to serve their expert reports had passed. These opinions include the following:

- Opinions of Anthony R. Ingraffea that hydraulic fracturing is an "abnormally dangerous" and "ultra-hazardous" activity for which the oil

and gas industry should "automatically" be liable, and that Defendants were negligent in constructing gas wells;[2]

•       Opinions of Paul Rubin about the alleged effects of Cabot's drilling activities on the water well located on Nolen Scott Ely's property that was allegedly used by the Huberts, and as to the alleged contamination of water supplies from the disposal of drill cuttings at well sites; and

•       A "lost royalties" analysis of Robert D. Congdon, Jr., based on a new methodology and new data sources.

The Defendant argue that these reports should be stricken because the opinions go far beyond what is permissible supplementation under the Federal Rules of Civil Procedure.  Perhaps more fundamentally, the Defendants maintain that if the new opinions are allowed to remain in this case, the Defendants will be substantially prejudiced because they will be forced to incur time and expense to address and rebut them, and because the Defendants prepared their summary judgment briefs in this case in part by relying on the Plaintiffs' expert disclosures as they existed after the

---

[2] That portion of Ingraffea's report opining on whether strict liability should be imposed on natural gas drilling activities may ultimately be irrelevant in this case, as we have previously issued a report recommending that the Defendants' motion for summary judgment on the Plaintiffs' strict liability claims be granted. (Doc. 489)  That report and recommendation remains pending before the district court.

expert deadline had lapsed in August 2012.  The Defendants contend that there is no

reason why the Plaintiffs' experts could not have offered the new opinions with their

expert reports that were prepared and served in accordance with the August 2012

deadline, which the Defendants observe was almost three years after the suit was first

initiated.

A.      **Procedural Background**

Before considering the legal standards in this field, we begin by reviewing

some of the halting procedural background of this litigation.  This case was first

brought by 44 Plaintiffs in a complaint filed on November 19, 2011. The Court

initially established February 15, 2011, as the deadline for Plaintiffs to serve their

expert reports in accordance with Rule 26(a)(2) of the Federal Rules of Civil

Procedure.  (Doc. 24)  The Court subsequently extended this period on multiple

occasions.   (Docs. 206-07, 271, 304-05, 325)   As a result of these various

modifications to the case-management deadlines in this case, the Plaintiffs' expert

reports were to be filed by August 28, 2012 – roughly a year and a half after the initial

deadline was set in this case.  (Doc. 325)

Prior to the expiration of this deadline, the Plaintiffs – at that time represented

by counsel – timely served reports by three proposed expert witnesses:  (1) Anthony

R. Ingraffea ("Ingraffea"), a professor at Cornell University and a civil engineer who

offered opinions about the construction and design of gas wells and alleged resulting

subsurface fluid migration; (2) Paul Rubin ("Rubin"), a hydrologist who has opined

about the alleged effects of Cabot's drilling activities on a water well located on the

property of Nolen Scott Ely that serves only the Ely's residence; and (3) Robert D.

Congdon, Jr. ("Congdon"), a real estate appraiser who had offered valuation opinions,

including an opinion about the lost royalties that some of the Plaintiffs allegedly

suffered as a result of Cabot's drilling activities and other conduct.  Copies of these

opinions were included as part of the exhibits that the Defendants submitted in

support of their motions for summary judgment on the Plaintiffs' strict liability

claims.  (Docs. 389-10, 389-11, 389-12, 389-13, 389-14, 389-15, 389-16, 389-17,

389-18) This motion, and several others seeking summary judgment on the remaining

Plaintiffs' claims in this case, were filed on March 28, 2013.  (Docs. 386-401)

The Plaintiffs responded to the Defendants' dispositive motions on June 17,

2013, and June 18, 2013, filing purportedly *pro se* briefs and supporting documents.

(Docs. 424, 425, 426)  In support of their briefs, the Plaintiffs also filed affidavits

from Ingraffea, Rubin and Congdon in opposition to Defendants' motions for

summary judgment, and in "partial supplementation" of their earlier expert reports.

(Docs. 426-4, 426-5, 426-6, 426-7, 426-8)   The Defendants argue that these

ostensibly supplemental reports include new opinions that either go beyond the

subject matter of the earlier reports, and are otherwise based on new methodologies and analyses.  Defendants urge the Court not to consider these recent filings, and to strike the affidavits and supplemental opinions as a sanction for the Plaintiffs' allegedly willful failure to comply with the case-management deadlines in this case.

### B.  Summary of Defendants' Objections to Each Expert's Opinions

With respect to Ingraffea's supplemental report, the Defendants object that Ingraffea offers entirely new opinions regarding the allegedly abnormally dangerous and ultra-hazardous aspects of natural gas drilling, and concludes that the oil and gas industry should be subject to strict liability in tort.   Additionally, while acknowledging that Ingraffea's initial report opined that Defendants used "faulty designs and construction events", (Doc. 426-7, at 14), the Defendants argue that the initial report never alleged that the Defendants "violated a specific standard of care" (Doc. 435, at 5).  The Defendants purport to object to Ingraffea's supplemental report because he has now "boldly contend[ed]", (id.), that "evidence of negligence . . . on the part of the gas industry and its drilling operators is, frankly, overwhelming and irrefutable." (Doc. 426-7, at 4)  The Defendants thus appear to argue that they are prejudiced in part because Ingraffea has now clearly opined on the Defendants' alleged negligence in the conduct of their gas drilling operations.

With respect to Rubin's supplemental opinions, the Defendants complain that whereas Rubin's earlier report attested to the effect of Cabot's drilling activities on the water well located on the Ely property that serves only the Ely residence, (Doc. 389-14, 389-15, 389-16, 389-17, 389-18), his affidavit and supplemental report offers new opinions about the second water well on the Ely property that serves the Hubert's trailer home, (Doc. 426-4, 426-5). The Defendants point out that Rubin's report includes and relies upon an exhibit called the "HydroQuest Hubert affidavit" that discusses testing and analysis of the Hubert's well, but this affidavit was never previously provided to the Defendants. Additionally, the Defendants assert that Rubin's supplemental report and affidavit for the first time include an opinion that Cabot's burial of drill cuttings "sets the stage for the slow release of chemical time bombs that will assuredly and adversely impact down-gradient groundwater and surface water quality." (Doc. 426-4, at ¶¶ 34-38, 51-57) The Defendants maintain that Rubin's earlier report did not speak to contamination from drill cuttings, but was limited to an opinion about the potential for contamination resulting from the use of chemicals and other substances during the drilling process.

Finally, regarding Congdon's valuation analysis, the Defendants argue that this proposed expert originally submitted a timely report that opined on the loss in royalty income attributable to 679 acres owned by an unidentified group of landowners that

are presumably the subset of the Plaintiffs in this case who had entered into leases with Cabot. (Docs. 389-10, 389-11, 389-12, at 120) The Defendants state that Congdon's calculations were based upon a range of royalties that he asserted that a generic set of gas wells could have produced over a certain period of time, and he then concluded that the entire hypothetical amount were lost royalties. In addition to suggesting that Congdon's methodology was fundamentally flawed, Defendants complain that in Congdon's subsequent affidavit and partial supplemental report, he includes an entirely new lost-royalty analysis. (Doc. 426-6) Instead of relying on hypothetical wells, Congdon's new report bases his calculations on actual production data that was obtained from state records from certain identified wells in Dimock Township, and also from his own files of production reports from other companies between 2008 and 2009. (Id., at 13-15.) The Defendants also object that the new report incorporates a new production decline curve and new pricing data.

Relying on cases where courts around the country have stricken purportedly supplemental expert reports where those reports are in fact wholly new expert opinions and analyses, the Defendants argue that result should be no different in this case, where even the Plaintiffs' experts seem to have conceded that their earlier opinions and reports were insufficient and incomplete, and that their supplemental affidavits and reports were intended to correct the shortcomings in what were, in

effect, no more than initial drafts that had been provided to Plaintiffs' counsel and improperly filed as final reports.   (Docs. 426-7, at 3 and 426-6, at 11)   The Defendants insist that the Plaintiffs should not be permitted to rely upon their duty to supplement their expert reports, imposed by Rule 26, to allow the submission of complete or substantively different reports months after the expert report deadline has passed.

### C.   Legal Standards

The Defendants argue that because the Plaintiffs' violated their obligations to timely supplement discovery under Rule 26(a), the Court has authority to strike the affidavits and partial supplemental reports pursuant to Rule 37(c) of the Federal Rules of Civil Procedure.   The Defendants further suggest that the Plaintiffs' asserted failure to provide timely supplemental information, such as supplements to expert reports, as required by Rule 26(a), requires that the Plaintiffs be forbidden from using that information in opposition to the Defendants' motions for summary judgment, or at trial, unless the failure to produce "was harmless."   (Doc. 435, at 10); see also Vaskas v. Kenworth Truck Co., No. 3:10-CV-1024, 2013 U.S. Dist. LEXIS 21065, at *7 (M.D. Pa. Mar. 25, 2013) (observing that the non-producing party has the "burden of providing substantial justification or that its failure to produce was harmless").   In essence, the Defendants argue that the Plaintiffs have violated their

disclosure requirements under Rule 26(a), and that striking the supplemental materials from the Plaintiffs' experts is the appropriate sanction because the late filings were neither substantially justified nor harmless.

Rule 26(a)(2) obligates litigants to disclose information regarding their experts sufficiently prior to trial to afford their adversaries adequate time to prepare effective cross-examination. Fed. R. Civ. P. 26(a) advisory committee notes. To this end, Rule 26(a)(2) requires, *inter alia*, the identification of any expert who may testify at trial, Fed. R. Civ. P. 26(a)(2)(A), and the submission by any testifying expert of a detailed report that concerns the testimony that the expert intends to deliver at trial. Fed. R. Civ. P. 26(a)(2)(B). Rule 26(a)(2)(D) establishes the timing of required disclosures of experts' identities and reports, providing as follows:

> (C)   Time to Disclose Expert Testimony.   A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or court order, the disclosures must be made:
>
> > (i)   at least 90 days before the date set for trial or for the case to be ready for trial; or
> >
> > (ii)   if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), within 30 days after the other party's disclosure.

Fed. R. Civ. P. 26(a)(2)(C).   Additionally, Rule 26(a)(2)(E) requires parties to supplement these disclosures when they would be required to do so under Rule 26(e).

Rule 26(e), in turn, requires that a party must supplement a disclosure made under

Rule 26(a)

> (A)     in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

> (B)     as ordered by the court.

Fed. R. Civ. P. 26(e).

Rule 26(e) supplements, however, are "only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report." In re Asbestos Prods. Liability Litig. (No. VI), 289 F.R.D. 424, 425 (E.D. Pa. 2013) (quoting Sancom, Inc. v. Qwest Comm. Corp., 683 F. Supp. 2d 1043, 1062-63 (D.S.D. 2010.  Various courts have found that Rule 26(e) supplementation is narrow, and is not appropriately used to correct "failures of omission because the expert did an inadequate or incomplete preparation", Akeva L.L.C. v. Mizuno Corp., 212 F.R.D. 306, 310 (M.D.N.C. 2002), or to add new opinions, Beller ex rel. Beller v. U.S., 221 F.R.D. 689, 691 (D.N.M. 2003); or to "deepen" or "strengthen" existing opinions, Leviton Mfg. Co., Inc. v. Nicor, Inc., 245 F.R.D. 524, 528 (D.N.M. 2007). Other courts have observed that a supplemental report "may be rejected where it is offered to rebut an argument raised in a summary judgment motion, or was served

merely because a party simply wished to supplement." In re Asbestos Prods. Liability Litig. (VI), 289 F.R.D. at 425-26 (citing Gallagher v. S. Source Packaging, LLC, 568 F. Supp. 2d 624, 630-31 (E.D.N.C. 2008)).

Under Rule 37(c)(1), if a party "fails to provide information or identify a witness as required in Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). The burden is on the non-producing party to prove substantial justification or that its failure to produce was harmless. U.S. Fire Ins. Co. v. Omnova Solutions, Inc., No. 10-1085, 2012 WL 5288783, at *2 (W.D. Pa. Oct. 23, 2012).

In determining whether a failure to disclose is harmless, courts are to consider factors such as: (1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the information (hereafter referred to as the "Pennypack factors"). Konstantopulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997) (citing Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904-05).

15

Additionally, courts have interpreted "substantial justification" for an untimely filed supplemental disclosure to be "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." Tolerico v. Home Depot, 205 F.R.D. 169, 175 (M.D. Pa. 2002) (quoting United States v. Dentsply Intern., Inc., No. Civ. A. 99-5, 2000 WL 654378, at *7 (D. Del. May 10, 2000). "The test of substantial justification is satisfied if 'there exists a genuine dispute concerning compliance.'" Id. at 175-76 (quoting Henrietta D. v. Giuliani, No. 95-CV-0641, 2001 WL 1602114, at *5 (E.D.N.Y. Dec. 11, 2001)).

However, and importantly, "the imposition of sanctions for abuse of discovery" is discretionary. Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995). Moreover, courts considering a motion to strike evidence must remain mindful that the exclusion of "critical" evidence is an "extreme" sanction, and should "not normally be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." Meyers, 559 F.2d at 905.  Indeed, the Third Circuit has instructed as follows:

> In considering whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties, we must consider four factors:  (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence

16

would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

Nicholas v. Pennsylvania State University, 227 F.3d 133, 148 (3d Cir. 2000); see also

Hill v. Reederei F. Laeisz G.M.B.H., Rostock, 435 F.3d 404, 423 (3d Cir. 2006).

Application of these four factors, which themselves emanate from the Pennypack

factors, "is consistent with the admonition that '[c]ourts in the Third Circuit should

exercise particular restraint in considering motions to exclude evidence." Tolerico,

205 F.R.D. at 177 (quoting ABB Air Preheater, Inc. v. Regenerative Envtl. Equip.

Co., 167 F.R.D. 668, 671 (D.N.J. 1996).

Applying these factors to the Defendants' motion, we conclude that the extreme

sanction of striking the supplemental reports is not warranted.  At the outset, there is

no question that the first factor breaks the Defendants' way; the new information in

the experts' affidavits and partial supplemental reports is in some respects new

information that was not provided to the Defendants before they invested time and

resources in moving for summary judgment on claims that they believed had no

factual support in the record they had before them, and the Plaintiffs and their experts

acknowledge as much.  There is clearly some prejudice to the Defendants from the

Plaintiffs' – or perhaps their former counsel's – failure to submit full and complete

reports from each of the three experts retained by the Plaintiffs in this case.  The fact

that the Defendants moved for summary judgment based in some part on the information provided by the Plaintiffs' experts clearly shows that they have been prejudiced to some degree.

However, we do not agree with the Defendants that each of the remaining four factors militates in their favor, or compels that the supplemental reports be stricken. The Defendants suggest that there is no available cure for the prejudice they now experience if the expert reports are permitted to be supplemented.  The Defendants represent that even though the expert deposition deadline was previously enlarged, that change to the case-management schedule would not eliminate the burden of having to address the new opinions, or to lessen the resources that the Defendants have already spent in reliance on the August 2012 expert report deadline.  The Defendants also complain that they will have little time to complete additional discovery with respect to the new opinions, or to have their own experts opine on them, and then to file any additional dispositive motions that may be necessary.

Regarding this second factor, however, we emphasize that this matter has not been scheduled for trial, and likely will not be tried for many months.  Moreover, the Court is empowered to adjust the case-management deadlines as may be necessary to mitigate the prejudice the Defendants believe they now face.  Additionally, the Plaintiffs are now represented by counsel, and we are confident that the introduction

of counsel into this matter will redound to the benefit of all parties and the litigation process, even at this late stage, and in spite of the halting nature that this litigation experienced for a considerable period of time.  Further we find that other sanctions short of exclusion of evidence are potentially available to the Defendants in this case. Thus, we do not find that the second factor clearly favors the Defendants, as there are ways to address the prejudice that the Defendants have experienced short of excluding the expert evidence that may be important to the Plaintiffs' case.

Relatedly, we do not agree with the Defendants that the Plaintiffs' untimely submission of the supplemental opinions would "surely disrupt this case." (Doc. 435, at 12)  This case is, and has been, disrupted and to no small degree by the Plaintiffs' and their litigative decisions.  However, trial in this matter has not been scheduled, and small modifications to the pretrial schedule can be made that are tailored to alleviating the prejudice to the Defendants while avoiding the exclusion of important evidence in a case that has been ongoing for nearly five years.  We agree with the Defendants that to routinely permit experts to file supplemental reports with entirely new opinions or analysis offered could lead to a pre-trial system that lacked finality and would unreasonably prolong litigation.  However, we are not proposing to create or permit such a system here.  Instead, we intend only to address the case that is currently before the Court, in its current posture, and to avoid the extreme sanction

of excluding evidence from the Plaintiffs' experts while permitting the Defendants an opportunity to take discovery and file further motions, if they choose, to mitigate the prejudice from the Plaintiffs' late expert submissions. We do not foresee – and will not countenance – an open-ended opportunity for the parties to file multiple untimely supplemental or new reports from their experts.

Lastly, we are enjoined to consider whether the Plaintiffs' conduct in waiting nearly seven months after the August 2012 deadline "bespeaks . . . a willful determination by Plaintiffs that the Court's deadline simply does not apply to them." (Doc. 435, at 13)  The Defendants suggest that it does, and argue further that the experts' own admissions that the initial reports that the Plaintiffs served were merely "drafts" that were never intended to comply with the requirements of Rule 26(a) indicates bad faith and lack of seriousness in discharging their obligations as litigants in federal court.  The Plaintiffs, in contrast, insist that they did not intend to play fast and loose with the pre-trial deadlines or shirk their litigative responsibilities.  Instead, the Plaintiffs represent that they have attempted to comply with the Court's rules and the pre-trial schedule, but have faced innumerable obstacles as they tried to navigate the litigation in this case after their lawyers withdrew their representation in the fall of 2012.  Although we do believe that the Plaintiffs have, at times, exhibited insufficient attention to the case-management deadlines in this case, we do not find

that the supplementation of the August 2012 reports demonstrates bad faith conduct or willfulness on their part.  We are mindful that the Plaintiffs were proceeding *pro se* at the time they filed the supplemental reports and attempted to contest the Defendants multiple motions for summary judgment.  Had the Plaintiffs been represented by counsel throughout this time we might construe their conduct differently.  However, we are unable to find that the Plaintiffs have engaged in deliberate bad-faith conduct, and this further compels us to find that the sanction of evidence exclusion is unwarranted here.

### D.    Remedies

Although the Plaintiffs' experts' affidavits and supplemental reports will not be stricken, the Defendants are entitled to a modification of the case-management schedule in this case to give them an adequate opportunity to address and rebut the new opinions, possibly to engage in some limited additional expert discovery, and to file any subsequent motions that they believe are warranted, including a motion seeking alternate sanctions short of exclusion of evidence.  To that end, we will direct the parties to coordinate and put forth a proposed schedule in this case to provide the Defendants with this opportunity.

Lastly, in their opposition brief, the Plaintiffs requested that their valuation expert, Robert Congdon, Jr., be given an extension of time to finalize his report.  The

Plaintiffs suggested that this report could be served by August 15, 2013.  Since that date has long since passed, the Plaintiffs will be directed to advise the Court whether Congdon has completed his report regarding the alleged diminution of value of surface and subsurface rights of the Plaintiffs, and whether that report has now been furnished to the Defendants.

## III.  **ORDER**

Accordingly, for the foregoing reasons IT IS HEREBY ORDERED THAT the Defendants' motion to strike the Plaintiffs' experts' affidavits and supplemental reports (Doc. 434) is DENIED.

IT IS FURTHER ORDERED THAT on or before **April 24, 2014**, the parties shall jointly submit a proposed schedule that affords the Defendants a reasonable opportunity to engage in additional expert discovery that may be warranted in light of the information contained in the affidavits and supplemental reports, and to file any additional motions that the Defendants may believe are necessary.

IT IS FURTHER ORDERED THAT on or before **April 24, 2014**, the Plaintiffs shall advise the Court and the Defendants, in writing, whether the final valuation report from Robert Congdon, Jr., has been completed and provided to the Defendants.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated:        March 27, 2014