IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

NOLEN SCOTT ELY, ET AL.,

     Plaintiffs,

vs.

CABOT OIL & GAS
CORPORATION,

     Defendant.

CASE NO.: 3:09-cv-02284-MCC
Chief Magistrate Judge
Martin C. Carlson

_____/

     Deposition of **JAMES PINTA, JR.**, held on

Tuesday, August 11, 2015, taken at the Law Offices of

Norton Rose Fulbright, US LLP, 666 Fifth Avenue, New

York, New York, 10105, commencing at 9:43 a.m., before

Vicki Livings, a Shorthand Reporter and Notary Public in

and for the State of New York.



**ACCURATE**
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials ● Conference Facilities
Videoconferencing ● Legal Video Services ● Exhibit Scanning
Transcript / Video Synchronization ● 24-7 Online Repository
**1.888.ACR.3335 ● 1.800.862.4206 (FAX)**
info@acrdepos.com ● www.acrdepos.com ● scheduling@acrdepos.com

                              30
                         J. PINTA, JR.

1

2     hearing board?

3          A.   Yes.

4          Q.   Was the meeting in Canonsburg for

5     preparation for the hearing in that matter?

6          A.   I believe it was.

7          Q.   What was going to be your role in

8     that hearing?

9          A.   In that hearing my assignment was to

10    review and evaluate the water treatment

11    systems, the ten locations that Cabot had

12    installed, only those ten, and also to review

13    Mr. Ruben's affidavit file in that matter.

14         Q.   Mr. Ruben filed an affidavit in the

15    administrative matter?

16         A.   I believe he did, yes.

17         Q.   You said part of your assignment was

18    to evaluate water treatment systems, only

19    those ten?

20         A.   Correct, they are the only ones I

21    looked at.

22         Q.   How many treatment systems are there

23    in the Dimock, Springville area?

24         A.   I don't know.

25         Q.   But you know there are more than



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository
**1.888.ACR.3335 • 1.800.862.4206 (FAX)**
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

31
J. PINTA, JR.

1
2    ten?

3            MR.  WILSON:   Object  to  form  of  the

4    question.

5        A.   I  don't  know  yes  or  no,  I  can't

6    answer  that.

7    BY-MS.LEWIS:

8        Q.   I'm  intrigued  by  the  word  only,  only

9    those  ten.

10       A.   Right,  that's  correct.

11       Q.   Would  you  agree  that  to  the  ordinary

12   person  by  saying  the  word  only,  that  means

13   there  are  more  than  those  ten?

14       A.   I'm  trying  to  be  as  accurate  as  I

15   can  as  to  what  I  did,  and  what  my  assignment

16   was.

17       Q.   So  your  testimony  under  oath  today

18   is  that  you  have  no  idea  whether  there  are

19   more  than  ten  treatment  systems  placed  by

20   Cabot  in  homes  in  the  Dimock,  Springville

21   area;  is  that  your  sworn  statement?

22       A.   I  know  of  one  other  system  in  that

23   area.

24       Q.   One  other  system,  meaning  there's  a

25   different  system  that  is  in  other  homes,  or


**ACR ACCURATE**
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

**1.888.ACR.3335 • 1.800.862.4206 (FAX)**
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

34
J. PINTA, JR.

1

2       A.   I believe that's two different

3    things.

4    BY-MS.LEWIS:

5       Q.   Answer any part of it, what you

6    wish.

7            MR. WILSON:   Object to form of the

8    question.

9       A.   Would you repeat the question.

10           MS. LEWIS:   Would you read it back.

11           **(Whereupon, the record was read by**

12   **the reporter.)**

13   BY-MS.LEWIS:

14      Q.   Who would know this community better

15   than you with respect to this case, with

16   respect to the geology and the property and

17   the community?

18           MR. WILSON:   Object to form of the

19   question.

20      A.   The physical landscape, the physical

21   residences, the treatment systems, quite a

22   few of the well sites, I know them very

23   well.

24   BY-MS.LEWIS:

25      Q.   And you have had more hands-on



**ACCURATE**
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository
**1.888.ACR.3335 • 1.800.862.4206 (FAX)**
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

53

1          J. PINTA, JR.

2        Q.   Does  installation  of  water  treatment

3    systems  in  homes  equal  remediation;  is  that

4    one  and  the  same?

5        A.   Yes.

6        Q.   That's  remediation  of  a  problem;

7    isn't  that  correct?

8        A.   It  is  remediation  of  a  situation.

9        Q.   And  a  situation  doesn't  need  to  be

10    remediated  if  there's  not  a  problem,  correct?

11        A.   It  depends  what  the  definition  of

12    remediation  is.

13        Q.   Remediation  fixes  something,  you're

14    bringing  it  back  to  another  state,  correct,

15    remediate,  the  definition?   We  could  look  it

16    up  on  a  computer.

17        A.   I  would  say  that's  a  fair  statement.

18        Q.   You're  fixing  a  problem  when  you

19    remediate  something,  you  are  repairing  it,

20    correct?

21          MR. WILSON:   Object  to  form  of  the

22    question.   It's  compound.

23        A.   Would  you  repeat  the  question  again.

24          MS. LEWIS:   Would  you  read  it  back.

25          (Whereupon,  the  record  was  read  by


ACR ACCURATE
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository
**1.888.ACR.3335 • 1.800.862.4206 (FAX)**
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

1           J. PINTA, JR.

2     the reporter.)

3          A.   When you remediate something, you're

4     changing a situation.

5     BY-MS.LEWIS:

6          Q.   Wouldn't you call that dancing around

7     the definition?   It's fixing a situation or

8     --

9          A.   Again, I don't understand what you

10    mean by a problem.

11         Q.   Let's focus explicitly on the ten

12    treatment households where treatment systems

13    were placed.   Why were they placed there?

14         A.   It's my opinion --

15         Q.   That's not what I'm asking.   If you

16    don't know, you don't know.   If you know, I

17    want to know the answer.

18              Why were they placed there?

19              MR. WILSON:   Object to form of the

20    question.

21         A.   I don't know exactly why every

22    system was placed where they were placed, for

23    what reasons or reason, I don't know.

24    BY-MS.LEWIS:

25         Q.   But the placement was to remediate,



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

**1.888.ACR.3335 • 1.800.862.4206 (FAX)**

info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

55

J. PINTA, JR.

1
2  correct?

3      A.   The placement was to remediate their

4  drinking water.

5      Q.   To what condition?

6      A.   I don't know what condition.

7      Q.   Did you know the condition before

8  the treatment systems were placed?

9      A.   I have reviewed data to take a look

10 at that, yes.

11     Q.   Based on reviewing data to take a

12 look at that, what was your determination in

13 any instance as to why a treatment system

14 was placed in any one of those ten homes?

15     A.   The systems were placed, I believe,

16 for a variety of reasons, some of which were

17 to lower the concentrations of certain

18 constituents in the ground water.

19     Q.   In some instances it's your opinion

20 that the treatment systems were placed there

21 in an effort to lower concentration of

22 constituents in ground water; is that

23 correct?

24     A.   Yes.

25     Q.   And those were elevated


ACCURATE
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository
1.888.ACR.3335 • 1.800.862.4206 (FAX)
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

56

1                    J. PINTA, JR.

2    concentrations, correct?

3        A.   I don't know what you mean by

4    elevated.

5        Q.   There are ranges of normal, correct?

6        A.   There's a background concentration,

7    yes.

8        Q.   So, were those treatment systems

9    there to remediate background levels,

10   background concentrations of constituents in

11   ground water?

12       A.   I believe that's the case, yes.

13       Q.   Were there any treatment systems in

14   Dimock or Springville that you know of prior

15   to these ten being placed?

16       A.   I believe I know of one such system

17   before these ten systems were placed.

18       Q.   Which residence was that?

19       A.   I believe at the Sautner residence.

20       Q.   What kind of system was at the

21   Sautner residence?

22       A.   I'm not familiar with what they were

23   treating.

24       Q.   With respect to task one of your

25   assignment, which was to assemble, check



**ACCURATE** COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials ● Conference Facilities
Videoconferencing ● Legal Video Services ● Exhibit Scanning
Transcript / Video Synchronization ● 24-7 Online Repository

**1.888.ACR.3335 ● 1.800.862.4206 (FAX)**

info@acrdepos.com ● www.acrdepos.com ● scheduling@acrdepos.com

94

J. PINTA, JR.

1

2          A.   I'm trying to think back.   I don't

3      believe  I  have  worked  for  a  plaintiff  suing

4      on  oil  and  gas  company.

5          Q.   And  you've  provided  expert  reports

6      providing  the  efficacy  of  water  treatment

7      systems,  correct?

8          A.   Yes.

9          Q.   And  where  you  say,  quote,  expert

10     reports,  when  did  you  last  provide  an  expert

11     report  evaluating  the  efficacy  of  water

12     treatment  systems?

13         A.   That  would  have  been  the  supplemental

14     report  that  was  submitted  in  this  matter.

15         Q.   Prior  to  that  when  was  the  last  time

16     that  you  evaluated  the  efficacy  of  water

17     treatment  systems?

18         A.   That  would  have  been  in  preparation

19     of  a  report  in  the  environmental  hearing

20     board  matter.

21         Q.   Also  this  case?

22         A.   Yes,  ma'am.

23         Q.   Prior  to  your  assistance  in  the

24     administrative  matter  in  providing  expert

25     reports,  the  administrative  matter  related  to


ACCURATE
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

1.888.ACR.3335 • 1.800.862.4206 (FAX)
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

95
J. PINTA, JR.

1
2     this case, what was the previous time when

3     you evaluated the efficacy of water treatment

4     systems?

5          A.   For an expert report -- can you read

6     that back.

7               **(Whereupon, the record was read by**

8     **the reporter.)**

9          A.   That would have been an evaluation

10    of the treatment system.   I don't remember

11    the date of the evaluation.

12    **BY MS. LEWIS:**

13         Q.   So there might have been one other

14    time prior to this case where you may have

15    evaluated the efficacy of treatment systems?

16         A.   The efficiency of existing treatment

17    systems.   It's more than two and less than

18    five separate times.

19         Q.   This is over 35 or more years,

20    correct?

21         A.   Yes.

22         Q.   Tell me what you can remember about

23    the two to five.

24         A.   One was a treatment system that was

25    remediating an underground storage tank



ACR **ACCURATE**
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository
**1.888.ACR.3335 • 1.800.862.4206 (FAX)**
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

96

J. PINTA, JR.

1
2    release, release from an underground storage

3    tank of petroleum products.

4         Q.   That was a water treatment system?

5         A.   Yes, that was a water treatment, it

6    was a pump and treat system.

7         Q.   What is a pump and treat system?

8         A.   A pump and treat system pumps the

9    water out of the ground, treats it and then

10   does something with the treated water, either

11   discharges it to the surface, or puts it

12   back into the ground or water system or

13   plant that uses the water for noncontact

14   cooling water, and then discharges it, so it

15   could be used for a variety of purposes.

16        Q.   But not drinking, right?

17        A.   In one case it was a drinking water

18   system.

19        Q.   This case here --

20        A.   Not the underground storage tank, no.

21        Q.   Was that in Texas or someplace else?

22        A.   I believe that was in North

23   Carolina.

24        Q.   What do you remember about --

25        A.   There's another one that involved a



ACCURATE
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

1.888.ACR.3335 • 1.800.862.4206 (FAX)

info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

97
J. PINTA, JR.

1

2       drinking water treatment system, it was

3       public water.

4           Q.   It was for public water?

5           A.   Yes, it was treating ground water,

6       and it was supplying water to a public water

7       system.

8           Q.   Like a municipality's water system?

9           A.   Yes.

10               And another system I evaluated was a

11      vapor extraction system at a dry cleaning

12      operation; remediating dry cleaning fluids

13      that had been released to the environment.

14          Q.   Was that vapor extraction system to

15      bring the water to drinking level standards,

16      or something else?

17          A.   That particular system was to bring

18      the soil to cleanup standards.

19          Q.   And there were also vapor issues?

20          A.   Yes.

21          Q.   Did you work on air purification or

22      remediation of contaminated air in that

23      particular --

24          A.   In that particular case, no.

25          Q.   So, we have the pump and treat at a



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

**1.888.ACR.3335 • 1.800.862.4206 (FAX)**

info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

99

J. PINTA, JR.

1
2    adjusted, we typically do that, but that
3    wouldn't essentially be an efficiency report.
4           We have done work with remediation
5    systems at several petroleum facilities, a
6    refinery or five refineries.  These are
7    remediation systems that are installed and
8    operating, and we're constantly --
9           I would call that more of
10   optimization, so evaluation of optimization of
11   those systems.
12      Q.   You have no experience designing
13   these systems, correct; I think you already
14   stated that, right?
15      A.   I'm not an engineer; however, I have
16   extensive experience in what I term
17   conceptual design.
18      Q.   Like do you actually draw an idea on
19   paper?
20      A.   It might work that way.
21      Q.   And you give it to an engineer?
22      A.   Yes, I do that, and I essentially
23   put various unit operations that I know have
24   worked in certain instances, for example,
25   aeration, filtration, coordination, air


ACCURATE
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository
1.888.ACR.3335 • 1.800.862.4206 (FAX)
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

100
J. PINTA, JR.

1
2     stripping, depending on -- vapor extraction,

3     carbon filtration, things like that.

4              And then I take these unit

5     operations with my, quote, unquote, conceptual

6     design and hand them to an engineer, and the

7     engineer asks the pertinent questions; what

8     does it flow through, what is the contaminant

9     loading or constituent loading that you want

10    to remove, what is the desired output, what

11    is the objective of the treatment process,

12    things like that.

13             So it's not the nuts and bolts

14    design that I do.   It's more the conceptual

15    design, and evaluation of how the engineer

16    does his job.

17    Q.   So you certainly have no role in

18    installing these things yourself, correct?

19    A.   No.

20    Q.   That's left to others?

21    A.   Yes.

22    Q.   And you don't have any particular

23    experience operating them personally, correct,

24    you might see the results, do a conceptual

25    design, but you're not on the ground putting


**ACCURATE**
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository
**1.888.ACR.3335 • 1.800.862.4206 (FAX)**
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

101

1          J. PINTA, JR.

2    them together, overseeing, correct?

3         A.   That's correct.

4         Q.   And you certainly don't have anything

5    to do with -- maybe you do.   Do you have

6    any role in the maintenance of these units?

7         A.   In the sense if I'm evaluating a

8    treatment system, and it doesn't appear to be

9    doing what it needs to be doing, I may

10   suggest that something be done to optimize a

11   particular system.

12        Q.   In the case of the ten households in

13   Dimock for which you included table 19B, do

14   all of those treatment systems appear to be

15   doing what it needs to be doing, using your

16   words?

17             MR.  WILSON:   Object to form of the

18   question.

19        A.   I don't believe that all of the ten

20   systems are operational at this time.

21   BY-MS.LEWIS:

22        Q.   How many are?

23        A.   I know one that is not fully

24   operational, or Cabot cannot get samples to

25   evaluate.



ACCURATE
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials ● Conference Facilities
Videoconferencing ● Legal Video Services ● Exhibit Scanning
Transcript / Video Synchronization ● 24-7 Online Repository
1.888.ACR.3335 ● 1.800.862.4206 (FAX)
info@acrdepos.com ● www.acrdepos.com ● scheduling@acrdepos.com

102
J. PINTA, JR.

1
2        Q.   Which is that?

3        A.   I believe that is the Johnson

4   Galenas.

5        Q.   Is it your testimony that nine out

6   of ten are appearing to be doing what it

7   needs to do, that's using your words, nine

8   out of the ten, and you don't know about

9   Johnson?

10       A.   Correct, I believe that is accurate.

11            MR. WILSON:   We'd like to take a

12   break.

13            **(Whereupon, a brief recess was**

14   **taken.)**

15            MS. LEWIS:   I'll withdraw the last

16   question.

17   **BY-MS.LEWIS:**

18       Q.   As far as you know, other than the

19   Johnsons, of the nine other treatment systems

20   in Dimock that you evaluated data from, are

21   they working as they should, performing as

22   they should?

23       A.   Again, I don't know the exact

24   operational condition of every system because

25   I'm not involved in that, and was not asked



Nationwide Depositions, Hearings and Trials ● Conference Facilities
Videoconferencing ● Legal Video Services ● Exhibit Scanning
Transcript / Video Synchronization ● 24-7 Online Repository
**1.888.ACR.3335 ● 1.800.862.4206 (FAX)**
info@acrdepos.com ● www.acrdepos.com ● scheduling@acrdepos.com

103

J. PINTA, JR.

1
2  to evaluate that.  What I was asked to
3  evaluate was the operational treatment
4  efficiency of these systems.
5          So, at times we'll have data that
6  doesn't allow me to make that treatment
7  system evaluation; for example, at times
8  there will be just influent data, or at
9  times effluent data.
10          So without having a data point where
11  we have influent constituent concentrations
12  and effluent constituent concentrations, I
13  can't evaluate whether or not a treatment
14  system is working as it should that
15  particular day.
16      Q.  But you're going to testify at
17  trial, if asked, that the treatment systems
18  are working efficiently; is that correct?
19      A.  The treatment systems are working at
20  greater than, significantly greater than 75,
21  85, in some cases 99.9 percent efficiency.
22          MS. LEWIS:  Would you read that
23  back.
24          (Whereupon, the record was read by
25  the reporter.)



ACCURATE
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository
1.888.ACR.3335 • 1.800.862.4206 (FAX)
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

104

J. PINTA, JR.

BY-MS.LEWIS:

    Q.   At which home is the unit working at
99.9 efficiency?

    A.   I believe it's the Bill Ely
treatment system in removal of methane.

    Q.   So for methane, the Bill Ely system
is working well, efficiently?

    A.   Very much so.

    Q.   How about with respect to other
aspects -- first of all, what was the
objective of the treatment system for the
Bill Ely household?

    A.   I don't know what the objective of
the treatment system was.   That was not my
-- what I was hired to evaluate.

    Q.   Isn't that something you need to
assess in determining whether it's working
efficiently, how close it is to achieving its
goal, to what extent it's achieving the goal
of the placement of the system; isn't that a
factor?

    A.   The factor there would be to compare
the removal of constituents to some
benchmark; for example, for aluminum, a



**ACCURATE**
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository
**1.888.ACR.3335 • 1.800.862.4206 (FAX)**
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

106

1                           J. PINTA, JR.

2        was  installed  and  online  and  operational.

3             Q.   Are  you  talking  about  Exhibit-19B  or

4        something  else?

5             A.   I  can't  remember  which  number.

6             Q.   The  new  exhibit  that  was  provided  to

7        me  within  the  last  couple  of  days  regarding

8        treatment  system  data,  which  we're  talking

9        about  now,  is  there  a  notation  on  this?

10            A.   There's  a  notation  that  they  are  all

11       indicated  by  location.

12            Q.   Did  you  make  up  this  table?

13            A.   Yes,  I  did.

14            Q.   What  point  type  did  you  select?

15            A.   I  don't  remember.

16            Q.   I've  seen  mouse  type  before,  but  you

17       agree  this  is  very  difficult  to  read,  your

18       19B?

19            MS.  LEWIS:   Would  you  mark  this  as

20       Exhibit-3A.

21            (Whereupon,  Plaintiffs'  Exhibit-3A,

22       six  pages  taken  from  Exhibit-19A  were  marked

23       for  purposes  of  identification.)

24       BY-MS.LEWIS:

25            Q.   We're  showing  you  what  has  been



Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

**1.888.ACR.3335 • 1.800.862.4206 (FAX)**

info@acrdepos.com  •  www.acrdepos.com  •  scheduling@acrdepos.com

107

J. PINTA, JR.

1

2    marked as Plaintiffs' Exhibit-3A, six pages

3    of data showing your evaluation of the

4    efficiency of the ten treatment systems in

5    Dimock; is that correct?

6        A.   No.

7        Q.   What is Exhibit-3A?

8        A.   That's from my Exhibit-19B, from my

9    supplemental report that describes that, that

10   tabulates the data for location ten.

11       Q.   So this is one location?

12       A.   Yes, ma'am.

13       Q.   Do you have this data for all of

14   the ten wells?

15       A.   It's one of the ten locations, yes.

16       Q.   And that was included in your

17   original report -- when did I receive these,

18   all ten?

19       A.   These are the exhibits to the

20   supplemental report that was submitted on

21   June 26.

22       Q.   2015?

23       A.   Yes.

24       Q.   You attached all ten, you had

25   exhibits that covered all of the ten



ACR ACCURATE
COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository

1.888.ACR.3335 • 1.800.862.4206 (FAX)
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com

```
 1                      J. PINTA, JR.
 2    locations; is that correct?
 3         A.   Yes, ma'am.
 4         Q.   And you've just updated data for
 5    location ten and not for other locations?
 6         A.   For all ten locations.
 7              MR.  WILSON:   To clarify, if it's got
 8    an A designation to it, as in Exhibits-10A
 9    through 18A, those were served on you, by my
10    notes, on July 29.
11              MS.  LEWIS:   Electronically?
12              MR.  WILSON:   Yes, and 19B replaced
13    19A, and that was served --
14              MS.  LEWIS:   A couple of days ago.
15              MR.  WILSON:   Yes.
16    BY-MS.LEWIS:
17         Q.   I can't read these, so I'm going to
18    have you tell me, generally looking at the
19    data that you provided to demonstrate that
20    these ten units are working efficiently, what
21    data have you provided on which to make that
22    decision?
23         A.   The data tables contain data from
24    sampling of influent water and effluent
25    water, and in some cases unfortunately in
```



ACCURATE
ACR COURT REPORTING, INC.

Nationwide Depositions, Hearings and Trials • Conference Facilities
Videoconferencing • Legal Video Services • Exhibit Scanning
Transcript / Video Synchronization • 24-7 Online Repository
**1.888.ACR.3335 • 1.800.862.4206 (FAX)**
info@acrdepos.com • www.acrdepos.com • scheduling@acrdepos.com