**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NOLEN SCOTT ELY, et al.,** | : | **Civil No. 3:09-CV-2284** |
| | : | |
| **Plaintiffs** | : | **(Judge Jones)** |
| | : | |
| **CABOT OIL & GAS** | : | **(Magistrate Judge Carlson)** |
| **CORPORATION, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM ORDER</u>**

## I.  <u>INTRODUCTION</u>

Now pending in this litigation is the plaintiff's motion for leave to take

deposition of a non-testifying expert of the defendants, Brent Brelje, an employee of

SLR International Corporation and an expert in water treatment systems.  Mr. Brelje

had previously been designated as a testifying expert in this case.  However, Cabot

subsequently de-designated Mr. Brelje as a testifying expert, before the plaintiffs had

taken any steps to take his deposition.  Since Mr. Brelje is no longer listed as a

testifying expert, Cabot asserts that the Federal Rules of Civil Procedure entitles them

to protect Mr. Brelje from being deposed, and thus opposes the motion.  The plaintiffs

argue that exceptional circumstances exist that should cause them to be permitted

leave to depose Mr. Brelje notwithstanding the defendant's de-listing of him as a

testifying expert witness.  For the reasons that follow, the motion will be granted, in part, to permit narrowly focused examination of this witness.

## II.   OVERVIEW OF THE PARTIES' POSITIONS

The plaintiffs have moved for leave to depose Mr. Brelje because they maintain that he is the only defense expert available to them who is capable of answering fundamental questions relating to the details of the design, construction and maintenance of water treatment systems that have been installed in a number of Dimock, Pennsylvania households that claimed to have had their water contaminated by Cabot or other natural gas drillers.  The plaintiffs further emphasize that the defendant's testifying experts who were made available for deposition were incapable of testifying in any meaningful way about the water treatment systems at issue, or answering any questions regarding the collection of data taken with respect to the systems that have been put in place in other Dimock households, but were refused by the plaintiffs.  Moreover, the plaintiffs indicate that defense experts Dr. James Pinta (geologist), L. Brun Hilbert (petroleum engineer), David Pyatt (toxicologist), or Tarek Saba (environmental engineer) were unable to speak meaningfully about the data that Mr. Brelje had made available to them, or about the plaintiffs' inquiry into Cabot's use of water treatment systems in the Dimock area.

The plaintiffs further observe that prior to being de-designated, Mr. Brelje had furnished a report the purpose of which was to provide scientifically-based opinions as to "the efficacy of using standard water treatment technologies to treat the well water of [the plaintiffs]." In his report, Mr. Brelje noted that "[SLR] Projects have included removal of methane from groundwater associated with Oil and Gas production, assessing and controlling naturally occurring methane, and controlling methane migration and intrusion in residential neighborhoods." Mr. Brelje's report identifies him as a lead engineer with over a quarter century of experience designing, constructing and operating water treatment systems.

The materiality of this information came into sharp focus late in this litigation, following a series of decisions made by the defense. First, in May of 2015, after nearly six years of litigation, the defense asserted an affirmative defense of failure to mitigate, an affirmative defense which rested in large measure upon the plaintiffs' failure to accept the type of water systems described by Mr. Brelje. (Doc. 595.) On the heels of the decision to assert this affirmative defense, the defense then de-designated Mr. Brelje as a testifying expert witness. Despite his experience and apparent expertise in this area, in the defendant's supplemental Rule 26(a)(2) Expert Disclosures (Doc. 610.), Mr. Brelje was de-listed as a testifying expert witness, and in his place was substituted John Smelko as a non-retained testifying expert. Mr.

Smelko is the Regional Manager of Environmental and Regulatory Compliance at Cabot, and purportedly has some unspecified expertise in "water quality and water treatment." Nevertheless, the plaintiffs contend that nothing is known to them about Mr. Smelko's familiarity with or expertise regarding the water treatment systems that have been put to use in and around Dimock.

The plaintiffs insist that obtaining answers to these issues from Mr. Brelje – an actual employee of the company that Cabot uses to install the water systems, and the individual who designed the systems – is crucial, largely because the state of water treatment is central to the defendant's affirmative defense that the plaintiffs failed to mitigate their damages by refusing to accept a water treatment system provided by Cabot. The plaintiffs further argue that Mr. Brelje's deposition is especially important because of Cabot's persistent refusal to provide information and documentation regarding the water treatment systems being used in Dimock, which the plaintiffs sought in the First and Second Sets of Requests for Admissions, Interrogatories, and Requests for Production with respect to Cabot's defenses.[1]  In this regard, the plaintiffs view the defendant's de-listing of Mr. Brelje has a testifying

---

[1]  Cabot flatly disputes the plaintiffs' characterization of their discovery responses, and notes that the company has provided approximately 118,000 pages of documents and other information in response to discovery requests in this case.

expert as a continuation of an ongoing pattern of refusing to make available information that is central and relevant to this litigation.

Moreover, in contrast to Mr. Smelko, the plaintiffs view Mr. Brelje's testimony as necessary to provide context and depth for the deposition questions that were posed to Dr. Pinta, a geologist who the plaintiffs maintain was unable to testify with specificity about matters upon which Mr. Brelje claimed to have familiarity and direct involvement, including data that was apparently furnished by Mr. Brelje and thus formed the basis for some of Dr. Pinta's own testimony.  In short, the plaintiffs assert that despite the defendant's array of retained and non-retained testifying experts, Mr. Brelje is the only expert who has direct knowledge and information regarding the design, construction, modifications, maintenance, and effectiveness of the water treatment systems that Cabot has installed in Dimock, and which was offered to the plaintiffs and refused.

For its part, Cabot views the matter very differently, and asserts that this is a problem largely of the plaintiff's own making.  Cabot begins by asserting something both sides agree upon:  under Rule 26(b)(4)(D)(ii), a party ordinarily may not take the deposition to discover "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."  Fed. R.

Civ. P. 26(b)(4)(D)(ii).  Cabot acknowledges that the general rule does allow for an exception based upon a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."  Id.  However, Cabot insists that this exception is not triggered here, because the plaintiffs have not come forward with sufficiently exceptional circumstances to justify permitting them to depose Mr. Brelje and potentially obtaining work product or opinions that were developed in preparation for this litigation.  Cabot refers to cases holding that parties enjoy a broad right to change the designation of an expert from "testifying" to "non-testifying" at any time during the course of litigation, and that such a change when exercised triggers the protections prescribed by Rule 26(b)(4)(B).

Cabot also argues that the plaintiffs have not made any showing that they were or are unable to obtain similar information from an expert that they retained or could have retained – something that Cabot suggests could have easily been done in this case thus precludes a finding of exceptional circumstances that would justify Mr. Brelje's deposition.  In contrast, Cabot notes that both Messrs. Brelje and Smelko have been identified as expert witnesses on potential treatment system issues since April 2013, and that Mr. Brelje was only de-listed on June 19, 2015, yet the plaintiffs never took any steps to depose him when they had the chance to do so.  The

defendant emphasizes that courts typically will find that exceptional circumstances exist to justify allowing discovery from nontestifying expert witnesses only where plaintiffs lack the ability to discover equivalent information by other means, and insist that the plaintiffs' own failings show that this standard has not been met.

Finally, Cabot argues that even if the plaintiffs have shown exceptional circumstances exist here, the policy considerations underlying the rule outweigh the exceptional circumstances that the plaintiffs have offered to justify the discovery being sought, and thus discovery should be disallowed.  In this regard, the defendants reiterate much of their argument regarding the asserted lack of exceptional circumstances, and argue that the plaintiffs should not be permitted to free-ride on the defendants' own discovery efforts after failing to seek the information from other sources when they had ample opportunity to do so.

## III.   <u>DISCUSSION</u>

Rule 26 of the Federal Rules of Civil Procedure addresses specifically whether, and when, a party may obtain discovery from a non-testifying expert witness of another party.   That rule provides that "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed.

7

R. Civ. P. 26(b)(4)(D).  However, a party may do so, *inter alia*, only on a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."  Id.

In opposing the plaintiffs' motion, the defendant takes pains to argue that the protections prescribed by Rule 26(b)(4)(D) are vast and sweeping and in many cases nearly insurmountable for the party seeking to take discovery from a de-listed expert. In fact, commentators considering the rule have at times expressed greater reservation about the rule's application and its scope.  Thus, a leading treatise has indicated "that the number of situations in which the protective provisions of the Rule would come into effect is small."  Tellabs Operations, Inc. v. Fujitsu Ltd, 283 F.R.D. 374, 376 (N.D. Ill. 2012) (citing to 8A Wright, Miller & Marcus, Federal Practice & Procedure, § 2033 at 126 (2010)).  In that treatise, the authors observe that "[t]here is a legitimate concern that a party may try to immunize its employees who are actors or viewers against proper discovery by designating them experts retained for work on the case," and thus they warn that "courts should be exceedingly skeptical when employees who have otherwise discoverable information are designated 'experts,' and efforts must be made to preserve the opportunity to discover that information."  Id.[2]  That

---

[2]  The Court recognizes that in these cases, courts were tasked with determining whether a party's own employees could qualify as experts under Rule 26 who were specially employed for purposes of the litigation, but the caution

admonition has some application in this case, notwithstanding the fact that Mr. Brelje was not an employee of Cabot but is instead an employee of a company with which Cabot contracted to provide and install the water treatment systems that Cabot provided to a number of households in Dimock.  If anything, the caution has even more particular resonance because Mr. Brelje had been designated as an expert witness for a significant portion of this litigation, and was only de-listed this past summer, before the plaintiffs could depose him.[3]  The defendant now seeks to insulate him entirely from deposition or other discovery into his opinions and the basis therefor, while also proffering experts who are basing some of their opinions on information supplied by Mr. Brelje, yet whom the plaintiffs maintain have been incapable of testifying meaningfully.

---

expressed by these courts and by commentators on the potential scope of the Rule has some relevance to the disposition of the pending motion and the particular discovery being sought in the context of this particular litigation.

[3]  The defendants also argue that the time period for *fact* discovery expired long ago, apparently as a way of disposing of the plaintiffs' assertion that Mr. Brelje had knowledge of "facts" relevant to water treatment systems.  We understand the plaintiffs to be arguing that they wish to take Mr. Brelje's deposition so that they can discover information relevant not only to his opinions regarding the efficacy of the water treatment systems and their use, but also so they can obtain relevant information that purportedly formed the basis for the testimony offered by other defense experts who were deposed.

We remain mindful that under the rule the facts known and opinions held by non-testifying experts who were retained or specially employed in anticipation of litigation or preparation for trial are subject to discovery only in "exceptional circumstances." In re Shell Oil Refinery, 132 F.R.D. 437, 440 (E.D. La. 1990). The party seeking to take discovery from a non-testifying expert thus carries a heavy burden to demonstrate that exceptional circumstances exist. Id. at 442. As Cabot notes, this requirement has been interpreted by courts to mean that the party seeking the discovery is unable to obtain equivalent information from other sources. Id.

At the same time, courts have cautioned against applying this rule too broadly in a way that would insulate from discovery the facts or opinions held by experts prior to being specially employed as an expert in the particular litigation at issue. See id. ("The Rule does not protect facts or opinions of expert employees developed while conducting business activities related to matters in issue, but before being specially employed.") (citing Pielemeier, Discovery of Non-Testifying 'In-House' Experts Under Federal Rule of Civil Procedure 26, 58 Ind.L.J. 587, 600 (1984) ("Facts known or opinions held by experts before the prospect of litigation arose, such as the processes by which a product was produced and an expert's opinion at the time of production of the safety process, are not protected."); see also Marine Petroleum Co. v. Champlin Petroleum Co., 641 F.2d 984, 992 (D.C. Cir. 1979) ("[O]ne may

simultaneously be a litigational expert with Rule 26(b)(4) protection as to some matters and simply an unprotected actor or witness as to others . . . .").

In addition to navigating these legal guidelines regarding the scope and limits of the rule, the pending motion must be assessed in the context of a litigation that has been marked by periodic and sometimes prolonged pre-trial delays that stem from a series of difficulties that are not entirely the fault of any particular party, but which have nonetheless marred the course of this action and contributed to the current litigation posture. Fact discovery, itself delayed at points, has been closed now for some time. And the parties have engaged in diligent if at times contentious expert discovery as this case approaches the conclusion of the pre-trial period and readies itself for trial. During this process the defendant has taken the strategic step of de-listing Mr. Brelje as a testifying expert and has now maintained him as a non-testifying expert. The defendant is entirely within its right to make this tactical decision, and to rely on other defense witnesses in his place. The question is whether the defendant's choice to do so at a late date, while also proffering experts who purport to rely on the de-designated expert's opinions or information, should leave some room for the plaintiffs to inquire of Mr. Brelje despite the protections prescribed by Rule 26(b)(4)(D).

We address this question on a set of circumstances which are certainly unusual. The information possessed by Mr. Brelje and shared with the defense testifying experts relates to the affirmative defense of mitigation of damages.   But that affirmative defense was first clearly articulated by the defendant at a late stage in this litigation, in May of 2015, nearly six years after this lawsuit commenced. (Doc. 595.) Given the belated assertion of this affirmative defense, we cannot say that the plaintiff unreasonably delayed in pursuing this deposition.

The timing of these events highlights why this may be an exceptional case. The difficulty in the context of this particular litigation, where the defendants asserted at a late date an affirmative defense that the plaintiffs failed to mitigate their damages, is that the defendants have de-designated an expert in water treatment systems whose own report apparently provided part of the substantive basis for some of the remaining defendant's experts' testimony. And having done so, the defendant now seeks to prevent the plaintiffs from taking even limited expert discovery from a witness who was listed as a testifying expert for nearly two years, and who presented as an expert with substantial knowledge undergirding opinions regarding the efficacy of the very water treatment systems that the defendant has utilized in the Dimock area.   The plaintiffs have declined such a system, insisting that the systems have

significant shortcomings.  Cabot has pointed to the plaintiff's declination of its offer of a suitable treatment system as a basis for its failure-to-mitigate defense.

Although the defendant rightly emphasizes that it is entitled to make this tactical choice, and the tactical choice to assert this affirmative defense at a late stage in this litigation, the plaintiffs argue that the experts they have been able to depose have proven incapable of testifying in a meaningful way about the water treatment systems that have been used, and about the data that supports the defendant's position that the systems are effective.  These are matters which are material to the affirmative defense which the defendant has elected to assert at a late stage of these proceedings. The plaintiffs, now in a position of having to litigate against recently added affirmative defense that they failed to mitigate by refusing a water treatment system offered to them, find themselves disadvantaged by being prevented from inquiring of the one expert with significant experience and familiarity with the systems that have been used by the very company that Cabot has engaged to install the systems.  The plaintiffs' conundrum was exacerbated by their asserted failure to discover information from the defendant's current testifying experts about the data relating to the water treatment systems, while these experts purportedly relied in part on information supplied by Mr. Brelje.

Although we appreciate the defendant's position that the plaintiffs failed to undertake discovery of Mr. Brelje and others when they had the opportunity to do so, we cannot ignore the realities of the current posture of this litigation, or the manner in which we arrived here more some six years after this case was first filed. We also are compelled to consider the fact that the circumstances which bring us to this juncture are, in part, a consequence of the defendant's decision to first assert the affirmative defense of failure to mitigate in May of 2015, nearly six years after this litigation began. Although it is a close case, on this unique constellation of facts, we find that the plaintiffs have sufficiently demonstrated exceptional circumstances exist to allow them a narrow and limited opportunity to take discovery from Mr. Brelje. That discovery, though, must be tailored to the proffer of relevance made by the plaintiffs. We do not find that the plaintiffs should be granted leave to conduct open-ended discovery of this de-listed expert. Instead, we will limit the plaintiffs to taking discovery into Mr. Brelje's opinions (and related factual knowledge) that helped form the basis for the opinions being offered by the defendant's remaining experts.

Further, our ruling is intended only to govern the completion of pretrial discovery. The question of what use, if any, can be made at trial of the information obtained from this expert witness must await another day. Whether there should be any further limits placed upon the potential use of any evidence discovered during the

14

limited deposition of Mr. Brelje at trial will not be addressed in this opinion, and must wait until the parties are closer to trial.[4]   The Court finds little to be gained by engaging in a Rule 403 balancing test to consider the admissibility of evidence that has not yet been revealed.  Such a determination will be made, if necessary, closer to or at the time of trial.

IV.   **ORDER**

Accordingly, upon consideration of the plaintiffs' motion for leave to take the deposition of Brent Brelje (Doc. 616.), and considering the parties' multiple briefs in support of and opposition to the motion (Docs. 617, 618, 620, 625, 627.), IT IS HEREBY ORDERED THAT the motion is GRANTED in part.  The Court having found that exceptional circumstances exist in this unique case that justify permitting narrow and limited discovery from an expert whose information may be material to an affirmative defense that was first asserted in May of 2015 and who was de-designated nearly two years after he was first listed as a testifying expert; and the Court having found that the plaintiffs have demonstrated that Mr. Brelje has

---

[4]   To the extent that the defendant wishes to call Mr. Brelje as a witness at trial, as Cabot suggested in its brief, (Doc. 618, at p. 12 n. 10.), the plaintiff has not opposed this request but has in fact welcomed it.  (Doc. 620, at p. 1.)  As such, barring any objection that would need to be resolved closer to trial, the defendant would be permitted to elicit testimony from Mr. Brelje at trial, limited to those matters upon which the plaintiffs were permitted to inquire.

particular and specific knowledge relevant to an issue that the defendant placed in issue with respect to water treatment systems that were offered to the plaintiffs and refused; and the Court finding that the plaintiffs have made a compelling showing that they lack the ability to obtain the same information from another source; the plaintiffs shall be permitted to take limited discovery into Mr. Brelje's opinions and related factual knowledge that helped form the basis for the opinions being offered by the defendant's remaining experts with respect to water safety.

So ordered this 26th day of October 2015.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

16