## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NOLEN SCOTT ELY, et al.,** | : | **Civil No. 3:09-CV-2284** |
| | : | |
| **Plaintiffs** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **CABOT OIL & GAS CORP.,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |
| | : | |

## MEMORANDUM

## I.   INTRODUCTION

In this litigation we are now presented with a sad and shocking spectacle, a debacle and dilemma which is entirely of the plaintiffs' own making.

This case comes before us for consideration of an extraordinary, unprecedented,[1] unexplained and profoundly troubling development.  This case has been pending for 2,276 days.  Fact discovery closed more than 2 ½ years ago, and limited supplemental fact discovery deadlines requested by the plaintiffs expired some six months ago.  We are now on the very eve of trial.  At the eleventh hour, in a completely unexplained, and wildly kaleidoscopic fashion the plaintiffs have now begun submitting voluminous, contradictory, cryptic, confused and confusing

---

[1] We do not use the term unprecedented lightly.  In a career spanning 36 years as a federal district court litigator and judge, we have never observed a wholesale discovery default of this scope and dimension.  Tragically, this is literally an unprecedented event in our experience.

exhibits list, lists which contradict one another and contain thousands of pages of material, and hundreds of exhibits, many of which have long existed but have never been previously disclosed.

Trial in this action, which is now more than six years old, is scheduled to commence on February 22, 2016.  On the eve of trial, the Court is presented with a surprising and troubling development:   the belated disclosure by plaintiffs of thousands of pages of exhibits, and more than 300 categories of exhibits, items which the plaintiffs did not timely identify, many of which it now appears were never even produced in this litigation that saw fact and expert witness discovery span for more than five years.

The Court was first made aware of this dispute on February 1, 2016, at the outset of the pretrial conference.  At that time, the defendant advised the Court that the plaintiff's trial exhibit list had, as of February 1, swollen from 24 to 351, a fourteen-fold increase, and now included 174 documents that the defendants had never been provided during discovery.  The Court directed the parties to meet and confer in an effort to resolve or narrow the matter, but this has been unsuccessful; indeed, the confusion seems to have deepened and, in many ways, to have become even more troubling.   Given these extraordinary, and extraordinarily troubling developments, the Court convened a telephone conference with the parties on

February 8, 2016, and directed briefing on the defendant's request to have the late-identified exhibits excluded.  Those briefs were submitted on February 10, 2016.

The Court has carefully studied the parties' competing filings regarding this serious matter, which pits the plaintiffs' interest in using hundreds of previously hidden exhibits at a trial they have been preparing for more than six years against the defendant's vitally important interest in not being ambushed with a trial-by-surprise that results from the plaintiffs protean approach to discovery and apparent failure to adhere to deadlines and well-established rules regarding pre-trial disclosures and production.  Having carefully considered this matter, we find the conclusion inescapable that the plaintiffs have failed to demonstrate good cause for their failure to identify scores of documents in a timely or intelligible fashion. Indeed, what is most notable, and disappointing, is that the plaintiffs have provided no cause or justification for this behavior.  Rather they simply acknowledge that their conduct looks bad.  On this score they are doubtless correct.  We further find that the defendant has demonstrated profound, actual prejudice from the manner in which the plaintiffs have identified their exhibits in a vague, ever-changing, and idiosyncratic form that continues to take still new shape even with trial approximately one week away.  Recognizing the potential gravity of the Court's decision, we nonetheless conclude that the plaintiffs' disregard of their obligation to produce discovery in a timely manner, and to timely and intelligibly identify

trial exhibits in accordance with the Court's local rules and prior orders, compels a finding that the plaintiffs should now be limited to using those 24 exhibits that they identified in their pretrial memorandum, along with any other late-disclosed exhibits as to which the defendants have not lodged an objection.

While the Court is cognizant of the pressures faced by all counsel preparing for a significant and complex trial, we are also mindful that the rules governing pretrial and trial practice are in place to prevent precisely the specter that now appears, and to avoid the serious prejudice faced by a defendant who continues to receive voluminous revised, and insufficiently described, exhibits, including many documents that have never even been produced, and still other documents that were prepared as recently as January and February 2016.   This pattern is antithetical to the orderly administration of justice, is antithetical to the rules governing federal civil practice, and is an affront to basic matters of fairness.

Moreover, these procedural defaults by the plaintiffs compel the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1.   Often that will mean that courts should strive to resolve cases on their merits whenever possible.   However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir.1998).

*Lease v. Fishel*, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system.  A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id.  Therefore, we are obliged to ensure that one party's failure to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.  The Court is thus constrained to grant the defendant's motion, and to exclude from trial the plaintiff's belated and ever-changing list of exhibits, aside from those that were first identified in their pretrial memorandum and those late-disclosed exhibits as to which no objection has been lodged.

## II.   **BACKGROUND**

It is fitting to place this controversy in its proper factual context since that context underscores how troubling these events are for the fair administration of justice.

This litigation has been pending since it was filed on November 19, 2009.  It is thus nearly six years and three months old, having been pending here for 2,276 days, during which time it has seen its pretrial deadlines continued on multiple

occasions at the plaintiffs' request.[2]   After numerous adjustments of the pretrial calendar, and multiple extensions of deadlines pertaining to fact and expert discovery, the case is scheduled to go to trial on February 22, 2016, on the plaintiffs' remaining claims that the defendant negligently polluted their water supply and permanently damaged the Ely Property, and negligently interfered with each of the remaining plaintiffs' use and enjoyment of their property.

This trial date comes as no surprise to the plaintiffs.  Quite the contrary, it was set by the Court at the joint request of the parties some four months ago, following a series of extensions of time granted to the plaintiffs to allow them to complete their pre-trial preparations.   Further, this agreed-upon trial schedule comes on the heals of more than six years of litigation.   Moreover, this schedule was set against a backdrop of repeated solicitude by the Court to the needs of the parties, a frequent revision of the litigation schedule upon request to accommodate those needs.   In short the parties knew our expectations, and knew that timely and proper scheduling requests would be addressed fairly.

Yet on the eleventh hour, as the case proceeds towards trial, it is now apparent that the plaintiffs have failed to comply timely with their obligations

---

[2] As will be discussed, fact discovery in this case was continued several times and ultimately expired on June 28, 2013. (Doc. 373.) Then, on July 1, 2015, after more than five years of fact and expert discovery, the Court allowed the plaintiffs to reopen fact discovery on a limited basis regarding Cabot's affirmative defenses. (Doc. 604.) That deadline expired on August 14, 2015, after having been extended another time. (Docs. 594, 634.)  Plaintiffs' deadline for completing expert discovery ended on November 2, 2015. (Doc. 628, 630.)

under both Rule 37 and Local Rule 16.3 regarding the identification of trial exhibits – a failure that has seen the plaintiffs initially identify 30 exhibits; then reduce that list to 24 exhibits that they intended to use at trial; then to amend that list to identify more than 350 exhibits, many of which have apparently never been produced in the course of this litigation; then further amend the list to 323 exhibits in a haphazard fashion which saw previously excluded exhibits reinserted and newly created exhibits added to this list; before most recently settling upon a 188 exhibit list which appears plainly subject to further revision and amendment.[3]

---

[3] In their most recent submission, the plaintiffs have reduced their list once again, this time to identify (with minimal description) 188 exhibits that they would propose to present. From our perspective there are at least six fatal problems with this latest list. First, it is virtually impossible for the Court to correlate this latest list with the 24, 351, or 323 exhibit lists tendered by the plaintiffs in the past three weeks. It is patently unfair to force opposing counsel to engage in some sort of evidentiary analysis shell game, where lists constantly change, shift and transmogrify. Second, the description of many of the items on the list is woefully inadequate. For example, it is impossible to meaningfully assess the admissibility of something called "DEP-Communications-with-Public." Third, this shortcoming in exhibit descriptions is compounded by the fact that we have not seen the exhibits themselves, but we know that those who have reviewed prior belated exhibit disclosures assert that they often combine multiple documents and hundreds or thousands of pages of material in a wholly unworkable fashion. Fourth, the defendants' painstakingly thorough review of the plaintiffs' last voluminous set of proffered exhibits reveals that these hundreds of undisclosed exhibits may be subject to thousands of evidentiary objections. Fifth, this exhibit list seems to ignore our ruling on the parties' motions *in limine*, and includes things as exhibits which we have precluded from evidence. Finally–and perhaps most astonishingly– we are warned that this list is still subject to further change and revision. Even this list suggests that it could take still new form, with the final notation on the exhibit list simply stating "Other:  Demonstrative [sic] exhibits under design." (Doc. 679-1.)  What is meant by this is unclear, but suggests that the plaintiffs continue to believe that they may further supplement the exhibit list that has now been amended multiple times. On this score, the plaintiffs err.

The Court convened a pretrial conference with the parties on February 1, 2016, during which the Court also presided over a day-long evidentiary hearing to address the defendants' motion to exclude the expert opinion testimony proffered by the plaintiffs' geology and hydrogeology expert, Paul R. Rubin.

At this proceeding, the Court was informed that the plaintiffs had belatedly identified multiple witnesses they intended to call at trial who had never previously been disclosed, and that they had revised their trial exhibit list from 30 to more than 350 documents – some of which are hundreds or even more than 1,000 pages in length, and more than 170 of which had never previously been disclosed at any point during the years of litigation in this case.   During the hearing, the Court directed the parties to meet and confer afterward in an effort to address the defendant's objection to this belated identification, and to see whether the dispute could be resolved or, alternatively, narrowed.   Unfortunately, the problem appears only to have grown deeper following this conference.

Moreover, this list of 351 exhibits did not represent the plaintiffs' final exhibit list, as the plaintiffs apparently continued their efforts to generate new evidence even after the pretrial conference had ended, including additional testing of their water supplies – testing that even the plaintiffs' counsel became aware of only after the fact.[4]   Thus, despite principal fact discovery having been closed since

---

[4]    This development provides yet another stark illustration of the profoundly prejudicial and wholly unworkable approach which the individual plaintiffs

June 28, 2013, and additional limited fact discovery having closed on August 14, 2015, the plaintiffs also have recently identified as entirely new exhibits well-testing data that was taken as recently as January and February 2016 – literally weeks before trial.

As best the Court can tell, on January 11, 2016, the plaintiffs provided Cabot with a list of 30 documents that they referred to as a "partial list of proposed trial exhibits." (Doc. 678, Ex. A, Jan. 11, 2016 e-mail from L. Lewis.) It appears that despite having identified the documents in this email correspondence, the plaintiffs did not actually provide these documents to Cabot. The following day, January 12, 2016, the plaintiffs filed their pre-trial memorandum, which included a list of 24 trial exhibits. (Doc. 646-2.)

Just over a week later, however, and approximately one month before trial was to commence, the plaintiffs provided Cabot with 20 additional categories of documents "that Plaintiffs propose to introduce into evidence during their case in

---

themselves have chosen to take to this litigation. Ignoring the Court's orders, and the rules, the individual plaintiffs insist upon manufacturing new, and previously undisclosed exhibits on the eve of trial in a manner which creates confusion, surprise and prejudice that is so complete that even their own lawyers are kept completely in the dark regarding their plans. The plaintiffs do a grave disservice to their own counsel in this regard and the Court underscores its sensitivity to the challenges that counsel faces when she is not even made aware of this additional testing, and purported data resulting therefrom, until her clients notify her after it has already taken place. In short, the individual plaintiffs must accept their share of the responsibility for this debacle, a debacle they create in part by concealing information from the court, opposing counsel and their own attorneys.

chief and/or during rebuttal." (Doc. 678, Ex. B, Jan. 21, 2016 email from L. Lewis.) Cabot responded just hours later:

> This type of general, shotgun, laundry list approach is not helpful or appropriate at this stage of the proceedings. Both parties have already filed their exhibit lists with the Court as per the requirements of the local rules. We sent you our trial exhibits last week. We have yet to receive a single copy of your trial exhibits. Your failure to provide us with copies of your listed trial exhibits has impaired our ability to comply with our obligations under Local Rule 16.2. Your new effort to effectuate a massive revamp of your exhibit list via general descriptions in an email only compounds the problem. We do not agree that you have the unilateral right to modify your exhibit list at will from now to the time of trial. While your email indicates that you will "continue" with specific production, we have not received anything from you at all, including the videos you said you would send yesterday. I reiterate our prior reservation of rights on this issue, including our right to object to the use of any exhibit not on your filed exhibit list.

(Doc. 678, Ex. C, Jan. 21, 2016 e-mail from R. Wilson.) Although the record is devoid of any response from the plaintiffs, it appears that on January 27, 2016, counsel for the plaintiffs provided the defendant's counsel with a thumb drive containing 351 unlabeled exhibits with no corresponding exhibit list or index; curiously, it appears that of the 24 exhibits that were originally listed in the plaintiffs' pretrial memorandum, only 12 of these remained a part of the new list of 351 exhibits that was furnished to counsel on January 27, 2016. (Doc. 678, at p.5) On February 1, 2016, the plaintiffs filed an amended pretrial memorandum listing these 351 exhibits. Notably, even in this amended document, the plaintiffs did not

include a brief identification of the exhibits, and did not list the exhibits on the exhibit form used by this Court's clerk's office.  (Doc. 667; LR 16.3 & App'x B.)

At the outset of the pretrial conference on February 1, Cabot's counsel informed the Court that it objected to the late-filed exhibit lists, the manner in which the list had been provided, as well as the plaintiffs' late identification of a number of trial witnesses.  The Court directed the parties to meet and confer about this matter in an effort to see whether it could be resolved or narrowed.

On February 2, 2016, Cabot's counsel emailed counsel for the plaintiffs to explain the defendant's objection to the 351 exhibits, and particularly drawing counsel's attention to 174 exhibits that had never even been produced during the entire course of litigation in this action, as well as other objections to what was by this point a fifth iteration of the plaintiff's exhibit list.  (Doc. 678, Ex. D, Feb. 2, 2016 email from J. Mercer.)   Plaintiffs responded two days later, agreeing to remove 27 documents from their list, but otherwise remaining firm on the revised list of exhibits.  (Id., Ex. E, Feb. 4, 2016 email from L. Lewis.)

What is truly perplexing to the Court, and deeply disturbing, is that this dispute grew even more convoluted the very next day, February 5, 2016, due to the plaintiffs' actions.  On that date, now two weeks prior to the commencement of trial, the plaintiffs provided still another exhibit list, this time adding back in four of the 28 exhibits that counsel had agreed to remove, removing 12 others, and

including five exhibits that were wholly new, in an exhibit list that now numbered 323 separate documents, some of which were hundreds or even thousands of pages in length.  (Doc. 678, Ex. F, Feb. 5, 2016 email from L. Lewis & attach.)  Counsel for Cabot responded that day, urging the plaintiffs "to review those exhibits again before the call with the Court [to address this dispute] to see what ones really are relevant to the litigation."  (Id., Ex. G, Feb. 5, 2016 email from J. Mercer.)  It appears that this request went unanswered, as the plaintiffs did not further revise their exhibit list in advance of the February 8 conference call.  Instead, the plaintiffs filed a brief on February 10 that set forth an entirely new exhibit list, this time listing 188 exhibits and suggesting that still others might be identified or developed prior to trial.  (Doc. 679-1, identifying as a potential exhibit "Other: Demostrative [sic] exhibits under design.")

The defendant combed through the 323 exhibits that had been set forth on the last list that was provided to counsel, in a painstaking brief that attempts to summarize each exhibit to which Cabot was objecting, and to provide multiple arguments in favor of exclusion.  (Doc. 678; see pp. 17-91.)  This effort plainly reveals the profound prejudice created by the plaintiffs' chaotic approach to exhibit management, an approach which combines concealment, confusion, and a kaleidoscopic concept of litigation where at each turn the picture changes.  Indeed, were we to countenance this approach we would be compelled to make thousands

of evidentiary rulings on hundreds of previously undisclosed voluminous records, in fashion that would invite chaos at trial, create profound prejudice for parties, and introduce wholesale and unwarranted surprise into these proceedings.

For their part, the plaintiffs have responded to this sad, tragic and unprecedented failure to comply with discovery rules in a surprisingly casual manner by attempting to defend their various exhibit lists as a "straightforward and relevant" set of material, which is then scarcely summarized. Most disappointing, this response, which we afforded to the plaintiffs in large measure to allow them an opportunity to explain the inexplicable and provide some good cause for this sad and shocking failure to abide by the rules and rulings of the Court, has been met with a stunning silence on this score. The plaintiffs have not provided good cause for their conduct. Indeed, they have chosen not to provide any articulable justification or explanation for their behavior.

It is against this backdrop that we consider the consequences of the plaintiffs' conduct.

## III.   **DISCUSSION**

A trial is a search for the truth. To promote this essential goal the entire structure of the Federal Rules of Civil Procedure compels transparency and fair dealing by parties. The rules also condemn surprise, delay, concealment, and unreasonable non-disclosure by litigants. Judged against these bedrock legal

principles we find the following material non-compliance with the letter, and spirit, of the law by the plaintiffs in their exhibits management practices:

### A.     The Ever-Changing Nature of the Plaintiffs' Exhibit List

We begin with reference to this Court's Local Rule 16.3, which provides that "[o]nly exhibits so listed [on the Court's Exhibit Form at the conference of counsel prior to trial] shall be offered in evidence at the trial, except for good cause shown." L.R. 16.3.  The parties timely filed their pretrial memoranda on January 12, 2016.  In the plaintiffs' pretrial memorandum, they identified 24 documents as the exhibits that they would be using at trial.  As discussed above, this number almost immediately, and without explanation, began to move, and to move wildly, at one point climbing to more than 350 unlabeled exhibits that were unaccompanied by an exhibit list or even an index to aid the defendant in its review.  The list then changed again to remove some exhibits, but then later changed again when some of these exhibits were returned to the plaintiffs' list, which was thereafter supplemented by wholly new exhibits that had not previously been at issue.

As Cabot points out, when this new, far larger list was ultimately provided, it lacked descriptions or indices, thus requiring Cabot to endeavor to analyze and fashion some sort of order to the documents listed only three weeks before the Court was scheduled to begin trial.  Of course, now the plaintiff has further revised

this list, but has done so in a way that is inordinately difficult to understand, and in ways that suggest that the plaintiffs are proceeding as though fact discovery remains open until trial in this case. This scattershot, and frequently changing, approach to trial exhibits is precisely what Local Rule 16.3 is intended to avoid.[5]

Presented with this unjustified and prejudicial failure to comply with the local rules of this court, we observe as other courts have in the past that the sanction of exclusion of evidence is appropriate, and often necessary, to prevent unfair prejudice to those litigants who have conformed their conduct with the rules

---

[5] Cabot maintains that the exhibits listed in the plaintiffs' amended pretrial memorandum that were not previously identified consist of Exhibits 1-26, 28-80, 82-90, 92-111, 113, 116-316, and 319-324. Plaintiffs have not disputed that these exhibits were not previously identified, but have defended this failure on the grounds that the demands of other trial preparation or work got in the way. As sensitive as the Court is to the demands faced by counsel in such circumstances, we are also mindful that Cabot's counsel is also laboring under deadlines and commitments in order to prepare for an imminent and significant trial that has long been scheduled, in litigation that is more than six years old. Moreover, as courts have noted, an overly demanding pretrial schedule typically will not be found to constitute "good cause" to excuse failure to adhere to deadlines. *See Mississippi v. Turner*, 498 U.S. 1306, 1306 (1991) ("[C]ounsel's overextended caseload is not 'good cause shown' unless it is the result of events unforeseen and uncontrollable by both counsel and client. That is not so here."); *Kleckner v. Glover Trucking Corp.*, 103 F.R.D. 553, 555 (M.D. Pa. 1984) ("Glover has not pointed to any authority for the proposition that counsel's neglect should be considered excusable because counsel was busy and, in any event, we agree with those cases that hold to the contrary."). Furthermore, we emphasize that were we condone the plaintiffs' dilatory and ever-changing approach to disclosing trial exhibits, we would be placing Cabot in the position of having to prepare for a trial and the introduction of hundreds of exhibits without having had any meaningful notice regarding what, exactly, the plaintiffs intended to introduce. Such an approach does not merely disregard the Local Rules; it is contrary to federal practice generally, and is manifestly unfair to all parties.

and the animating principles of fairness which guide those rules.  *See Sabol v. Allstate Prop. & Cas. Ins. Co.*, 309 F.R.D. 282, 283 (M.D. Pa. 2015); *Pennar Software Corp. v. Fortune 500 Sys., Ltd.*, No. CIVA 1:02CV0413, 2006 WL 2376237, at *1 (M.D. Pa. Aug. 15, 2006) *aff'd*, 267 F. App'x 115 (3d Cir. 2008).

**B.    The Plaintiffs' Failure to Disclose 174 Documents During Discovery, Prior to Listing Them as Trial Exhibits**

Cabot also notes that approximately one-half of the exhibits listed as part of the plaintiffs' amended pretrial memorandum were never produced at any time during discovery in this action.  The plaintiff has not responded directly to this serious charge, and it is one that potentially has profound consequences in a case with trial little more than one week away. Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).  The rule is, by its terms mandatory. *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995) ("Rule 37 is written in mandatory terms, and is designed to provide a strong inducement for disclosure of Rule 26(a) material."); *see also Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996) ("The sanction of exclusion is thus automatic and mandatory unless the party to be sanctioned can show that is

violation of Rule 26(a) was either justified or harmless."). In addition to or in lieu of this sanction, Rule 37(c)(1) states that the Court may, on motion, impose other appropriate sanctions, including those listed in Rule 37(b)(2)(A). *Id.* "The non-producing party shoulders the burden of proving substantial justification for its conduct or that the failure to produce was harmless." *Tolerico v. Home Depot,* 205 F.R.D. 169, 175 (M.D.Pa.2002). Plaintiffs have failed to meet either of these conditions.

The Third Circuit has not directly addressed the "substantial justification" standard. *See Grider v. Keystone Health Plan Central, Inc.,* 580 F.3d 119, 140 n. 23 (3d Cir.2009). However, district courts in this circuit have defined "substantial justification" as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with this disclosure request." *Tolerico,* 205 F.R.D. at 175. As this suggests, the burden of proving that failure to disclose was substantially justified rests with the party who failed to disclose. *See Klatch-Maynard v. Sugarloaf Twp.*, No. 3:06-CV-0845, 2011 WL 2006424, at *5 (M.D. Pa. May 23, 2011) (finding that burden unsatisfied, and finding "plaintiffs' flagrant disregard to the Court's discovery order, the prejudice to the defendants, and the need for an orderly trial process in this protracted litigation weigh in favor of excluding" the evidence that had not been produced).

In response to Cabot's motion, the plaintiffs have done two things.  First, they have again revised their exhibit list yet another time, and reduced its number to 188, though the Court is without any real sense of what documents are included on that list based on the descriptions alone.  Second, they have argued that even if they failed to meet their obligation to make timely production in response to discovery requests or Rule 26 disclosures; and even if they failed to meet their obligation for timely identifying trial exhibits over the past six years of litigation, they should nevertheless be excused for such shortcomings because Cabot would not suffer any real prejudice and because the failings were not due to bad faith.

Having reviewed their brief, we find that the plaintiffs have not come forward with any compelling argument to explain how their longstanding failure to disclose documents was "substantially justified," and the Court is unable to make such an inference where nearly one-half of the documents on the plaintiffs' exhibit list had never been produced before being identified less than a month before trial, even though discovery called for this production as early as August 2010.

Likewise, the Court is at a loss as to how it could conclude that the plaintiffs' untimely disclosure of hundreds of exhibits and thousands of pages of documents is "harmless" to Cabot.  A party's misconduct or failure to adhere to trial deadlines is "harmless if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced."

*Tolerico*, 205 F.R.D. at 176 (citation omitted).  Not only have the plaintiffs failed to persuade the Court that their late disclosures and untimely identification of trial exhibits is merely harmless or non-prejudicial to Cabot, but it is virtually impossible for the Court to make such a conclusion *sua sponte* based upon review of the lengthy brief that Cabot prepared outlining the vast array of documents and topics covered by the exhibits that Cabot would now need to prepare to defend against barely a week out from trial.[6]

The Court was surprised and troubled to learn that as of January 27, 2016, less than one month before trial in this long-standing legal dispute was set for trial, that the plaintiffs had never produced more than 170 exhibits on their amended exhibit list, which now totaled more than 350 documents (some of which were voluminous).  Incredibly, these exhibits appear to be documents that should have been produced in initial or supplemental responses to discovery requests that Cabot propounded in August 2010.  (Doc. 678, Ex. E.)  What is even more difficult to fathom is that the plaintiffs have offered no compelling justification for their failure to make these disclosures, or to supplement their production, at any earlier

---

[6]  Furthermore, the Court has difficulty understanding how it reasonably could be expected to make this assessment based upon the exhibits that have been identified, their bare descriptions, and the fact that they have changed in number from 30 to 24 to 351 to 323 to 188, with little guidance as to the changes made by each iteration.

point in this case.[7]   The Court cannot pretend to be blind to the fact that these exhibits were brought to the defendant's attention on the eve of trial – not at some earlier time over the past six years of litigation where the risk of prejudice to Cabot might conceivably have been addressed through means other than wholesale exclusion.   Yet, the plaintiffs' apparent disregard of this fundamental obligation, and the disclosure of this fact just days before the Court is preparing to oversee jury selection and the commencement of trial that has been the subject to numerous scheduling changes and adjustments, including the recent rescheduling of trial to February 22, 2016, leaves the Court with little choice than to agree with Cabot that the plaintiffs' failure to timely disclose and produce evidence was either substantially justified or non-prejudicial.

Because the plaintiffs have not satisfied their burden of proving substantial justification or harmlessness, the Court is vested with discretion to exclude the exhibits that were never previously disclosed during pre-trial litigation pursuant to Rule 37(c)(1).   *Klatch-Maynard,* 2011 WL 2006424, at *3.   In determining

---

[7]   Of course, these observations apply only to those documents that were in the plaintiffs' possession during the discovery period.   We recently learned that the plaintiffs have also persisted in continuing to take samples and make video recordings and other documentary evidence years after the discovery cutoff, including as recently as January and February 2016, mere weeks before trial, sometimes with no notice to the defendant or even plaintiffs' own lawyer until after testing had been performed. Such evidence is plainly prejudicial to Cabot, and suggests that the plaintiffs believe that they may continue to develop new evidence up to the commencement of trial, when it may be foisted upon the defendant who presumably would be expected to defend against it with virtually no notice.   This is clearly improper.

whether evidence should be excluded for a party's failure to comply with its discovery obligations, courts are enjoined to consider the following factors:  (1) the prejudice or surprise of the party against whom the evidence would be used; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against allowing the use of undisclosed evidence would disrupt the orderly and efficient trial of the case; and (4) bad faith or willfulness in failing to comply with the Court's orders.  *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), overruled on other grounds, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir.1985).  The Court should also consider the importance of the excluded testimony.  *Konstantopoulous v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).

The first factor clearly predominates in Cabot's favor; the risk of prejudice to the defendant by permitting the introduction of so many documents that were never previously disclosed is readily apparent.  Quite simply, the late disclosure of so much material on the eve of trial presents a risk of great prejudice to Cabot's ability to prepare this case for trial which is, again, barely a week away.  *Id.* at 721.  In *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 792 (3d Cir. 1994) ("*Paoli II*"), the Third Circuit reversed a trial court's decision to exclude expert testimony as a sanction for violating Rule 26(b) because the risk of prejudice was found to be "extremely minimal."  However, in making this ruling, the court of appeals found

that the failure to make timely disclosure was only "a slight deviation from pre-trial notice requirements, and admitting the witness was likely to cause only a slight prejudice to the defendants, who were already aware of the basic substance of the witness' testimony." *Paoli II*, 35 F.3d at 792.

In marked contrast, we are confronted in this case with a far-reaching failure of discovery, the plaintiffs' recent identification of 174 exhibits that were apparently never disclosed until after the plaintiffs filed their initial pre-trial memorandum. Where a party is faced with such untimely identification of voluminous evidence and documents that should have been produced, and where that untimely identification occurs almost immediately before trial, the Third Circuit has found that the exclusion of the late-disclosed evidence is a proper exercise of the court's broad discretion. *See Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 301 (3d Cir. 1991) (upholding exclusion of expert testimony where the plaintiff had failed to identify any experts in response to interrogatories, and then years later designated a new expert witness in a pre-trial statement, finding that the plaintiff had "failed to satisfy the obligations imposed upon him by the rules of discovery and cannot now be heard to complaint that the district court erred by failing to admit expert testimony."). Here, we find that the untimely disclosure of documents that the plaintiff would now propose to introduce at trial is unduly prejudicial to Cabot.

In considering the next factor, the ability to cure the prejudice, the Court struggles to see a clear path.  This litigation has been pending for more than six years and has been the subject of numerous enlargements of discovery and pre-trial deadlines.  The Court originally worked closely with the parties to schedule this matter for trial in late 2015, and then continued that schedule to February 22, 2016.  This process involved a coordinated effort by the Court and the parties, particularly given the likely duration of the trial and the involvement of dozens of witnesses.  Additionally, the Court is preparing to summon 65 members of the community to be empaneled as potential jurors for this trial.  Even were the Court to find that the case could theoretically be reopened for a period to allow Cabot to prepare itself to defend against the most recent disclosure of material, we find that such a course is unreasonable at this juncture, and unfair to all parties.

With respect to the third factor, the extent to which allowing the newly disclosed evidence would disrupt the orderly and efficient trial of this case, the Court finds that it would.  Indeed, the risk of prejudice and disruption is manifest, where so many exhibits apparently represent documents that should have been, but were not, disclosed during the years of litigation in this case where trial is scheduled to commence in just over a week.  The rapid-fire manner in which the plaintiffs' exhibit list has changed in the course of just two weeks is itself indicative of a disorderly process that risks spilling into the trial.

The fourth *Meyers* factor directs the Court to consider the existence of bad faith or willfulness in the plaintiffs' failure to comply with the Court's prior discovery orders and the parties' obligations under the Rules of Civil Procedure. We are sensitive to the significant challenges faced by trial counsel in this matter, and particularly because the plaintiffs themselves have insisted in putting their counsel in a virtually untenable position of having to explain why her clients persist in seeking to create new evidence for use at trial just weeks before it is to commence. For that last reason especially, we regrettably must nevertheless find that the level of disregard of pre-trial rulings and the well-established rules governing discovery and civil practice in federal court evinces a willful failure to comply. The defendant propounded discovery requests in August 2010, and fact discovery ended in the summer of 2013. It was reopened for limited purposes, at the plaintiffs' request, and again closed in August 2015, and yet the plaintiffs have offered no substantial justification for their inability to comply with the Court's orders and their discovery obligations. The Third Circuit has held that the exclusion of evidence is "not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by a proponent of the evidence." *Meyers*, 559 F.2d at 904. Unfortunately, on the apparently undisputed facts surrounding the plaintiffs' most recent disclosure of exhibits, and the frequent manner in which that disclosure has shifted in just the past week, the Court is left

unable to find that the failure to make timely disclosure is anything other than willful or undertaken with flagrant disregard for the prior orders of this Court. *See In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999) ("Trial Plaintiffs' counsel can hardly complain that they had inadequate time to provide the desired reports, nor can they claim that the exclusion of the late reports in response to their practice of continually ignoring court orders caught them by surprise.  Counsel's failure to comply with the deadlines . . . is inexcusable.").

Lastly, the Court must consider the importance of the excluded evidence. Here, the plaintiffs have done little to aid the Court's assessment of this factor, since the most recent iteration of the exhibit list, while shorter in length, fails to identify whether the exhibit list includes documents or other evidence not previously disclosed, does not clearly explain what the exhibits actually are, or how they are intended to be used to prove the plaintiffs' remaining claims.  The Court is thus tasked, with trial only days away, with trying to determine the importance of the excluded evidence, and yet finds itself unable to do so.   In contrast, the Court has little trouble perceiving the impossible position that the defendant finds itself in, with an entirely new exhibit list that contains evidence not previously disclosed, and even evidence that was developed as recently as late January 2016, including well testing that was performed with no notice to the defendant until after the fact.

The Court underscores that it recognizes that the exclusion of evidence of a violation of a discovery order is an "extreme sanction." *Id.* Yet, under the unprecedented circumstances of this particular litigation, and the manner in which the plaintiffs have identified exhibits and evidence for use at trial by disclosing them for the first time weeks before trial, such sanction is warranted.

### C.     The Creation of New Evidence Weeks Before Trial

Finally, Cabot specially moves to exclude new water sampling and video evidence that the plaintiffs' have identified on their exhibit list. This evidence is problematic for a host of reasons, and will not be allowed.

On February 5, 2016, the plaintiffs furnished Cabot with a revised exhibit list that included five wholly new exhibits, four of which relate to water sampling that the plaintiffs had taken as recently as January 11, 2016.[8] This sampling thus occurred just over a month before trial was to commence, without notice to Cabot and, it seems, without even notice to the plaintiffs' counsel, who was then placed in the impossible position of having to vouch for the admissibility of this late-created evidence at trial.

Cabot has maintained, without dispute, that it had no notice of this testing;

---

[8] Relatedly, on February 2, 2016, the plaintiffs identified as a new witness, Zac Hildebrand, who was apparently involved in the water sampling and analysis thereof. The plaintiffs provided this notice to Cabot 20 days before trial by way of a phone call.

was unable to attend the testing; and was unable to take split samples of the water being sampled on the date and time in question.  Plaintiffs would now have Cabot defend against these recent samples after receiving the results from the plaintiffs three weeks before trial in a case that is over six years old.  The Court cannot permit the use of this evidence, since to do so would create obvious unfairness to Cabot.

Furthermore, the sampling of the Ely water was taken years after fact discovery closed, and months after expert discovery expired.  (Doc. 373, 604.) This evidence is substantially untimely, and Cabot should not be put to endeavoring to review and analyze this latest testing evidence, and to provide them to its experts for review, while otherwise preparing for a significant trial.  The January 2016 testing (or any testing that may have been done after this time), and any other video or documentary evidence relating to this belated and unnoticed testing is precluded from being introduced at trial.

In closing, we make an observation that should be self-evident to all but which bears repeating:  "The hallmarks of discovery in federal court are, and should be, openness, transparency, and candor.  Gamesmanship, ambush, surprise, and concealment have no place in federal practice." *Styer v. Frito-Lay, Inc.*, No. 1:13-CV-833, 2015 WL 1243423, at *5 (M.D. Pa. Mar. 18, 2015).  Here, presented with this sad spectacle of wholesale surprise on the eve of trial involving hundreds

of exhibits and thousands of pages of material, and an inexplicable failure to engage in even minimal transparency over months and years of litigation, we must ensure that the rules are fairly and evenly applied to all.  That fair application of the law to the facts created by the plaintiffs' own regrettable choices in this litigation–choices which have included multiple and material episodes of concealment of information by individual plaintiffs from opposing counsel, the court and even their own counsel–now calls for the imposition of the sanctions required by law.

An appropriate order follows.

## IV.   **ORDER**

For the foregoing reasons, the defendant's motion to exclude exhibits, (Doc. 678.) is GRANTED and the plaintiffs' belated exhibits are EXCLUDED, except for those exhibits that were identified in the plaintiffs' pretrial memorandum and those late-disclosed exhibits as to which no objection has been lodged by the defendant.

On or before February 15, 2016, the plaintiffs shall tender an exhibit list which complies with this Order to the defendant and the Court.

The Court shall convene a telephonic status conference with counsel on **February 16, 2016 at 10:30 a.m.** to discuss the course of this trial in light of this

ruling.    The defendant is requested to make logistical arrangements for this conference call.

So ordered this 12th day of February 2016.

***S/Martin C.  Carlson***
Martin C. Carlson
United States Magistrate Judge