IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NOLEN SCOTT ELY, et al.,** | : | **Civil No. 3:09-CV-2284** |
| | : | |
| **Plaintiffs** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **CABOT OIL & GAS CORP.,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |
| | : | |

## MEMORANDUM

### I.   INTRODUCTION

Trial in this action commenced on Monday, February 22, 2016, more than

six years after the action was first filed in November 2009.  It is expected to take

approximately two weeks to try.  In the lead-up to trial, the Court addressed a bevy

of motions that the parties filed seeking a variety of relief, including a motion by

the defendant to exclude witnesses and evidence that the plaintiffs did not

previously or timely disclose during the pretrial phase of this litigation.

With respect to the defendant's motion to exclude exhibits, after a careful

analysis of the entire history of the litigation, and the sweeping scope and nature of

the belated disclosures, the Court issued a lengthy opinion finding that the belated,

erratic and seemingly ever-changing manner in which the plaintiffs had identified, revised, and refashioned their exhibits for use at trial was an inexplicable violation of this Court's prior orders and case-management guidelines, as well as the Local Rules.  We further found that this was done without adequate cause or showing that the untimely disclosure would be anything other than gravely prejudicial to the defendant, who was now being faced with a shifting array of potential exhibits that the plaintiffs proposed to introduce at trial, where the defendants had in many cases never even seen the documents at any point over the course of six years.  For that reason, the Court regrettably found itself constrained to rule that the plaintiffs would be limited to using at trial those 24 exhibits that they had initially and timely identified for the defendant, as well as any other exhibits to which there was no objection.[1]  (Doc. 685.)

Prior to the commencement of trial, on February 16, 2016, the plaintiffs filed a "Notice" in which they moved the Court for reconsideration of its ruling granting

---

[1]     The Court separately ruled on the defendant's motion to exclude witnesses who had also not been timely identified.  With respect to this motion, the Court issued an order granting the motion in part to exclude the testimony of John Hanger, the former Secretary of the Department of Environmental Protection, but otherwise denying the motion to the extent it sought to preclude testimony from neighbors and other late-identified witnesses whose importance became apparent to the plaintiffs only after the Court ruled on the motion *in limine*, and whose existence was not genuinely a surprise to Cabot, therefore, minimizing potential prejudice.  (Doc. 695.)

the defendant's motion to exclude the late-produced exhibits, particularly with respect to the decision to exclude the plaintiffs from introducing evidence of water test results allegedly obtained as recently as January 2016.  (Doc. 688.)  The Court took this matter under advisement and addressed it briefly with the parties prior to the commencement of trial on February 22, 2016.

The Court has examined its prior ruling, and although the Court well appreciates the significance of that ruling in this case, the Court perceives no basis to change or modify that ruling, which was at the time the product of very careful and considered judgment after taking into account all of the relevant factors in this case.

## II.   <u>DISCUSSION</u>

A motion for reconsideration is a limited tool, and will be granted sparingly. Its purpose is to correct manifest errors of law or fact or to allow the presentation of newly discovered evidence.  *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985).  Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment:  (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.  *Max's*

*Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River*

*Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995)).  A motion

for reconsideration is appropriately filed in instances where the court has "patently

misunderstood a party, or has made a decision outside the adversarial issues

presented to the court by the parties, or has made an error not of reasoning but of

apprehension."  *Rohrbach v. AT & T Nassau Metals Corp.,* 902 F.Supp. 523, 527

(M.D. Pa. 1995), *vacated in part on other grounds on reconsideration,* 915 F.Supp.

712 (M.D. Pa. 1996) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,*

99 F.R.D. 99, 101 (E.D. Va. 1983)).  A motion for reconsideration may not be used

as a means to reargue unsuccessful theories, or to argue new or additional facts or

issues that were not presented to the court in the context of the matter previously

decided.   *Drysdale v. Woerth,* 153 F.Supp.2d 678, 682 (E.D. Pa. 2001).

Furthermore, "[b]ecause federal courts have a strong interest in the finality of

judgments, motions for reconsideration should be granted sparingly."  *Continental*

*Cas. Co. v. Diversified Indus., Inc.,* 884 F.Supp. 937, 943 (E.D. Pa. 1995).

    With these standards and guidelines in mind, the Court has reviewed the

plaintiffs' motion for reconsideration and finds that there is an insufficient basis to

set aside or modify its ruling excluding the plaintiffs' trial exhibits other than the

24 exhibits that were timely exchanged and any additional exhibits to which there

had been no objection.   The plaintiffs have not shown that there has been an intervening change in the law, they have not highlighted additional or new evidence that was not previously available, and they have not shown a need to correct a clear error of law.   Instead, the plaintiffs argue that they faced particular hardship in preparing for trial, and that the Court's ruling is manifestly unjust.

The Court commends the plaintiffs' counsel for her candor in explaining the personal difficulties that she faced in the weeks leading up to trial, including a bout of the flu that was particularly disruptive to her trial preparation and communication with defendant's counsel.   We also recognize that, in some significant measure, the plaintiffs' counsel has been put in a difficult position by her own clients who have insisted upon producing evidence that was not disclosed to their own attorney in a belated, haphazard and erratic fashion.   In the face of instances where the plaintiffs have surprised their own counsel by producing items of previously undisclosed evidence immediately prior to trial in violation of the rules and this Court's orders, plaintiffs' counsel has shown commendable loyalty to her clients, who have placed their attorney in a very difficult posture.

Although the Court sympathizes with counsel and the challenges that she no doubt faced in the lead-up to trial, and although the Court respects and appreciates

counsel's considerable effort throughout this litigation, this does not address the core of the problem that the Court was faced with when the defendant filed its motion:  the discovery that the plaintiffs had manifestly failed in their discovery obligations as well as their obligations under the Local Rules and the orders of the Court with respect to the production of their trial exhibits in a manner that was obviously and extraordinarily prejudicial.

Specifically, the Court learned that the plaintiffs had initially identified 30 potential trial exhibits; then reduced that list to 24 exhibits that they intended to use at trial; then amended that list to identify on the morning of the pretrial conference more than 350 exhibits, many of which have apparently never been produced in the course of this litigation; then further amended the list to 323 exhibits in a haphazard fashion which saw previously excluded exhibits reinserted and newly created exhibits added to this list; before most recently settling upon a 188 exhibit list which appears plainly subject to further revision and amendment.  For reasons fully set forth and described in the Court's memorandum opinion, the Court found that the circumstances compelled a ruling that the plaintiffs would be limited to the 24 exhibits that they initially listed for the defendant.

The plaintiffs argue, passionately, that the Court's opinion should at least be revised to permit them to permit the introduction of exhibits and evidence taken from water sampling that was allegedly taken from the plaintiffs' water wells in January 2016.   This testing and sampling was conducted by the plaintiffs in a secrecy so complete that their own counsel was informed of the testing only after-the-fact.   The evidence which the plaintiffs seek to introduce is, therefore, the very paradigm of what the law, rules and orders which govern discovery in federal court prohibit—a last minute surprise exhibit, prepared under circumstances which create a grave and unjustified prejudice to the opposing party.

In making this argument, the plaintiffs emphasize that their claims in this case are for permanent injury to property, and recent water samples have been taken to confirm that the injury to their water supply is not something that occurred during an isolated discovery period prescribed by the Court, but is instead something that is of an ongoing and permanent nature.   The Court has endeavored to explain to the parties and counsel that it understands and appreciates the nature of the plaintiffs' claims, and for that reason will permit testimony from the parties regarding the current state of the plaintiffs' water supplies.   However, the Court has also taken pains to explain that there must be some limits to the development of discovery and exhibits and other physical and demonstrative exhibits that can be

used at trial, and these limitations have been part of this case for years, and are well known by the parties.

The rules and time limitations apply equally to the parties in this action, and are intended to allow them to develop relevant factual and opinion evidence while ensuring that parties are not ambushed with new evidence that continues to be developed – often without any notice to the opposing party – in the days before trial.  Although the plaintiffs argue that they should at least be permitted to introduce new water testing data taken just weeks before trial started, this is perhaps the most problematic of all the late-filed exhibits that they would propose to use at trial. The defendants were not invited to the testing, had no previous notice of the testing, and would now be forced to analyze and defend against the late-disclosed test results on the eve of trial.  The unfairness of this is obvious, and such evidence will not be introduced at trial, for the reasons set forth herein and in the Court's prior decision.

The plaintiffs' motion for reconsideration is otherwise animated by their argument that the Court's ruling limiting their exhibits to the 24 that they originally exchanged with the defendant represents a manifest injustice and is deeply prejudicial to their claims.  The Court has carefully considered this argument, and

indeed gave the potential for "injustice" substantial consideration when it fashioned its ruling in this matter.  It cannot be emphasized too strongly that the Court recognized the gravity of its decision to exclude the late-filed exhibits.  As evidenced in the Court's decision, the circumstances that caused Cabot to file its motion to exclude the late-disclosed exhibits were unfortunate and indeed were difficult to comprehend in a case that had been litigated with skill by all counsel for more than six years.  The confusion was compounded by an exhibit list that took new shape with every turn, and which continued to include scores of documents and exhibits that had never previously been shared.  The disorder that marked the plaintiffs' exhibit list, and the rapidly changing nature of that list in the weeks and days leading toward trial compelled the Court to make the ruling it did, and to limit the plaintiffs' exhibits to the 24 that were timely identified, and those to which no objections had been lodged.  Further, plaintiffs have never provided the Court with other fair, reasonable alternatives to the course we were compelled to follow.  Moreover, that course expressly permitted the plaintiffs to amply supplement their original exhibit list through the inclusion of other non-objectionable exhibits, thus minimizing any hardship on the plaintiffs.  That this ruling may imposed a hardship upon the plaintiffs' to some degree does not cause the Court to find that its ruling represents a manifest injustice; to the contrary, the

Court finds that its ruling was necessary and compelled under the circumstances, and that to rule otherwise would have been deeply prejudicial to the defendant, who would have been put to the task of defending against documents, data, and exhibits that were never previously identified or, in many cases, even produced until days before trial.

## III.   <u>ORDER</u>

For these reasons, the plaintiffs' motion for reconsideration is DENIED.

So ordered this 24th day of February 2016.

*/s/  Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge